**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No._____-Civ   **07-21403**

ANTONIO HERNANDEZ, Individually and
on behalf of all others similarly situated,

     Plaintiff,

v.

INTERNET GAMING ENTERTAINMENT, LTD.,
a foreign corporation, and

IGE U.S. LLC.,
a Delaware corporation,

     Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CIV-COHN

**Class Action Complaint**

MAY 31 2007

MAGISTRATE JUDGE
SNOW

Plaintiff, ANTONIO HERNANDEZ, individually, and on behalf of all others similarly situated ("Mr. Hernandez"), by and through undersigned counsel, hereby sues Defendants, INTERNET GAMING ENTERTAINMENT, LTD. and IGE U.S. LLC. (collectively, "IGE" or "Defendants"), and alleges as follows:

## I.    Preliminary Statement

1.    This case involves IGE's calculated decision to reap substantial profits by knowingly interfering with and substantially impairing the intended use and enjoyment associated with consumer agreements between Blizzard Entertainment and subscribers to its virtual world called *World of Warcraft*® ("Subscribers").

2.    Specifically, over the past several years IGE has received tens of millions, if not hundreds of millions, of dollars by selling *World of Warcraft*® virtual property or currency

Dockets.Justia.com

(commonly referred to as "gold") generated by cheap labor in third world countries. The process of generating virtual assets and then selling them through eBay or other industry websites is known as "gold farming," "real money trade" or "RMT."

3.    IGE's gold farming activities not only substantially diminish the enjoyment and satisfaction consumers obtain by earning, through the expenditure of vast amounts of time and energy, virtual assets within *World of Warcraft®*, they also violate the express terms of agreements Subscribers enter into to participate in *World of Warcraft®*. Indeed, the express terms of Blizzard Entertainment's agreements with its Subscribers for *World of Warcraft®* specifically prohibit the sale of any *World of Warcraft®* virtual assets or property.

4.    Through this lawsuit, Mr. Hernandez, individually and on behalf of all other similarly situated consumers, seeks both money damages and to enjoin IGE's gold farming activities.

## II.    Parties

5.    Plaintiff, Mr. Hernandez, is presently, and at all times material hereto was a resident of Orlando, Florida. Blizzard Entertainment is a corporation that owns and operates a virtual world called *World of Warcraft®*. During the relevant time period, Mr. Hernandez: (1) was a paying subscriber to Blizzard Entertainment's *World of Warcraft®*; (2) spent hundreds of hours online in *World of Warcraft®*; (3) spent in excess of fifty dollars purchasing *World of Warcraft®* software; (4) spent in excess of fifty dollars purchasing Blizzard Entertainment's Burning Crusade expansion software; and (5) spent fifteen dollars per month in subscription fees to participate in *World of Warcraft®*.

6.   Defendant, INTERNET GAMING ENTERTAINMENT, LTD., is a foreign corporation with its principal place of business in Hong Kong, China, with offices in Miami Beach, Florida and Beverly Hills, California.   INTERNET GAMING ENTERTAINMENT, LTD. is a global company engaged in the business of generating and selling virtual assets.

7.   Defendant, IGE U.S. LLC., is a Delaware corporation with its principal place of business at 105 N.W. 43rd Street, Boca Raton, Florida, 33431.   IGE U.S. LLC. is a management service provider engaged in the business of generating and selling virtual assets.   IGE U.S. LLC. is an affiliated company of Defendant, INTERNET GAMING ENTERTAINMENT, LTD.

## III.   Jurisdiction and Venue

8.   This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(a) and 1332(d), because the amount in controversy exceeds $5 million exclusive of interest and costs, and more than two-thirds of the members of the putative Class are citizens of states different from that of Defendants.

9.   This case has been filed in the Miami Division of this District because a substantial part of the acts or omissions giving rise to the claims in this action occurred in this judicial District, and Defendants may be found within this judicial District.   Venue is proper pursuant to 28 U.S.C. § 1391.   Indeed, one of Defendants' three primary offices is located at Euclid Avenue, Suite 222, Miami Beach, Florida, 33139.

10.   Moreover, Defendants implemented their sales scheme and conspiracy in this District, as well as nationwide, through their Miami Beach office and Boca Raton office, and through their employees, agents, and others who reside and/or transact business in this District. Further, Defendants' scheme, as alleged herein, affected Class Members who reside or transact

3

business throughout the United States, including within this District.  Further, Defendants have submitted themselves to the jurisdiction of this Court by committing a tortious act within this State and this judicial District.

## IV.    Facts

### A.    Overview of Blizzard Entertainment's Virtual World Called *World of Warcraft®*

11.    Virtual Worlds, which are also referred to as "massively populated persistent worlds," "synthetic worlds," and "massively multiplayer online games," are online computer generated environments that a large number of consumers can access simultaneously.  During the last ten (10) years, virtual worlds have grown from a relatively obscure internet phenomena into a multi-billion dollar industry with over twenty (20) million consumers across the globe participating on a regular basis and more than 150 active virtual worlds in operation.

12.    Similar to the predictions made in the 1990s about the growth of the World Wide Web, in 2007 experts predict virtual worlds will continue to grow dramatically in the near future.  One prominent research group recently projected that "80 percent of active internet users (and Fortune 500 enterprises)" will participate in virtual worlds by the end of 2011.

13.    In order to participate in a virtual world, like *World of Warcraft®*, a consumer must purchase the virtual world software, sign up for an account, select a username and password and then begin paying a monthly subscription fee to the provider.  These consumers are referred to as "Subscribers."

14.    In addition to the items above, in order to become a *World of Warcraft®* subscriber, a consumer must agree to be bound by the terms of Blizzard Entertainment's End

User License Agreement ("EULA") and Terms of Use Agreement ("ToU"), copies of which are attached hereto as Exhibits "A" and "B."

15.    Once the consumer completes the process above, he or she selects an "avatar," which is the 3-D body or "character" that represents the consumer in the virtual world. The consumer controls their avatar through their keyboard to interact with the environment. Through their avatar, consumers can move throughout the virtual world, communicate with other players, and engage in a host of activities depending on the design of the particular virtual world.

16.    An important aspect of virtual worlds is the social interaction between participants. Communities of subscribers typically develop inside a virtual world, with subscribers forming complex social relationships with each other and larger groups.

17.    Virtual worlds also have their own economies which generally include the buying and selling of virtual goods through the use of in-game virtual currency.

18.    Central to the design and operation of all major virtual worlds like *World of Warcraft*® is a property system that has all the familiar real world features, such as exclusive ownership, persistence of rights and a currency system to support trade. As in the real world, property or resources are limited and scarce in virtual worlds.

19.    The currency in *World of Warcraft*® is the virtual gold coin simply referred to as "gold." With this gold, a Subscriber can purchase almost anything he or she needs, including skills, food, water, transportation, clothing and equipment. A Subscriber earns gold by performing tasks or by collecting or making goods that are then sold to other subscribers or virtual vendors.

20.    A virtual auction house inside *World of Warcraft*® is used by Subscribers to buy and sell items. This virtual auction house works much the same as eBay. To sell an item, a

Subscriber sets a minimum bid and posts the item on an auction board that can be viewed by all Subscribers. Once a specified time period expires, the highest bidder wins the item and pays for it with gold. Once payment is received through *World of Warcraft's®* internal e-mail system, the item is likewise sent to the winner's in-world mail box.

21.   As with real world economies, the cost of goods fluctuates based on: (1) supply and demand; and (2) the supply of *World of Warcraft®* gold.

22.   While not necessarily the case in all virtual worlds, in order to ensure the integrity of *World of Warcraft's®* virtual world, Blizzard Entertainment's EULA and ToU expressly prohibit the sale of virtual assets for real money. This prohibition protects the integrity of *World of Warcraft®*, ensures that the competitive playing field within *World of Warcraft®* is level, and makes certain that the time, energy and effort expanded by Subscribers is not diminished by others who use real money to purchase scarce and limited virtual resources.

23.   Specifically, Blizzard Entertainment's ToU agreement with its Subscribers states that:

> [Y]ou may not sell items for "real" money or otherwise exchange items for value outside of the [virtual world].

## B.   IGE's Illicit Gold Sales Scheme

24.   Despite the fact that gold farming within *World of Warcraft®* is expressly prohibited by Blizzard Entertainment's EULA and ToU, Defendants engage in the business of selling *World of Warcraft®* gold for real money.

25.   A typical transaction with Defendants for the sale and purchase of gold within *World of Warcraft®* works like this:

a.   The buyer visits Defendants' website, www.IGE.com. Then the buyer is directed to a page on Defendants' website where he or she selects the particular server (called a "realm" in *World of Warcraft*®) where the buyer's avatar is located.

b.   The buyer then selects the amount of gold they wish to buy; there is a fixed price in real dollars for various amounts of gold listed on the website. Buyers are given the option of purchasing as little as 50 gold, to as much as 11,000 gold per order. For example, on the *World of Warcraft's*® Durotan server, the current price of 11,000 *World of Warcraft*® gold is $1,491.60 real dollars.

c.   Once the buyer selects the amount of gold he or she wishes to buy, he or she must select the method of payment. Defendants' website gives a few options; the buyer can pay by credit card or PayPal.

d.   After selecting the method of payment, and entering the appropriate payment information (i.e., name, address and credit card number), the buyer must type in the name of the avatar to whom the gold should be delivered. Once the buyer gives Defendants this information, the buyer is given a receipt and told that they will receive their gold within a few hours.

e.   Within the specified time period, Defendants deliver the newly purchased virtual gold to the buyer's avatar through *World of Warcraft's*® in-game mail system. To receive the gold, the buyer simply opens up the piece of

mail delivered from an avatar controlled by Defendants and opens the attached virtual envelope containing the gold.

26.    Since Blizzard Entertainment released *World of Warcraft®* on November 27, 2004, Defendants have sold massive quantities of *World of Warcraft®* gold for millions of dollars.

27.    Defendants engage in the illicit scheme of selling *World of Warcraft®* gold obtained through the efforts of hundreds of employees who work at the direction and control of IGE. These employees, individual and entities, are commonly referred to as gold farmers ("IGE gold farmers"). IGE gold farmers are often citizens of developing third world countries who spend up to 14 hours per day, or more, logged into *World of Warcraft®* collecting resources and *World of Warcraft®* gold. IGE gold farmers log into *World of Warcraft®* through accounts that are paid for, or controlled, directly or indirectly, by Defendants. At the direction of Defendants, IGE gold farmers then deliver gold through the *World of Warcraft®* mail system to Subscribers who have paid real money as described above. IGE gold farmers are co-conspirators with Defendants in this illicit sales scheme.

## C.    IGE's Conspiracy

28.    In addition to IGE's direct sale of *World of Warcraft®* gold through its website, IGE has entered into agreements with other individuals or entities not directly employed by IGE ("Co-conspirators"), to:

a.    generate, or "farm" for, *World of Warcraft®* gold which IGE then sells to Subscribers for real money;

b.    promote and market the sale of *World of Warcraft®* gold owned or under the control of IGE through chat spam, virtual junk mail, pay per click campaigns, and search engine marketing;

c.    obtain labor to generate, or "farm" for, *World of Warcraft®* gold which IGE then sells to Subscribers for real money;

d.    distribute *World of Warcraft®* gold to Subscribers; and

e.    sell *World of Warcraft®* gold to Subscribers for real money.

29.    All the aforementioned agreements were made in furtherance of a conspiracy to sell *World of Warcraft®* gold in direct violation of:  (1) Blizzard Entertainment's EULA; (2) Blizzard Entertainment's ToU; (3) Florida Statutory provisions; (4) consumer protection statutes of the remaining 49 states, District of Columbia and Puerto Rico; and (5) other common law.

### D.    Damages and Impact Caused by IGE's Illicit Sales Scheme and Conspiracy

30.    The volume of gold IGE sells in *World of Warcraft®* is so large that is causes substantial economic damages to Subscribers, above and beyond their purchase price and subscription fees, including:

a.    **Time.**  IGE gold farmers strip out scarce and limited virtual world resources and materials. *World of Warcraft®* is designed to have limited resources and materials such as virtual metal ore, plants, leather and other items ("materials). Subscribers harvest, or "farm" materials and sell them to earn virtual gold. Farming materials is one of the primary sources of revenue in the *World of Warcraft®* economy.  IGE gold farmers systematically harvest these materials on a massive basis. The result is a

shortage of materials for Subscribers unwilling to buy gold from IGE, making it vastly more time consuming for such Subscribers to earn the gold they need to participate. This loss of time, conservatively, amounts to hundreds of thousands of hours of Subscriber time. The economic damages for this loss of time is in the millions of dollars.

b.    **Devaluation of Currency.** Because of IGE's infusion of gold, virtual currency being held by honest Subscribers is constantly devalued. The devaluation of this virtual currency has an economic value in real dollars as reflected on Defendants' website. This devaluation of Plaintiff and the Class's gold, which was caused by Defendants' sale of gold in *World of Warcraft*®, is conservatively, in the millions of dollars.

31.    A virtual world like *World of Warcraft*® derives utility from the fact that it is a fantasy world. Subscribers pay to participate in *World of Warcraft*® to experience a fantasy. When Defendants engage in RMT, it destroys the enjoyment and fantasy Subscribers pay for. Some examples of the ways that the Subscriber experience is destroyed include, but is not limited to, the following:

a.    **Chat Spamming.** Defendants, through IGE gold farmers and other co-conspirators within their direct or indirect control, constantly "spam" advertisements for their illicit sales scheme. Subscribers routinely receive un-invited messages through the *World of Warcraft*® "chat" channel and mail system advertising the sale of gold for real dollars. During the last few months the amount of chat spam has increased substantially to the point where Subscribers often receive spam message advertising *World of*

*Warcraft®* gold five or six times every hour. This "chat spam" destroys the fantasy experience world that Subscribers paid for by purchasing the software and paying monthly subscription fees.

b.    **Junk Mail.** Defendants, through IGE gold farmers and other co-conspirators within their direct or indirect control, routinely send junk mail advertisements to Subscribers advertising the sale of gold for real dollars. This junk mail takes up space in the Subscribers mail boxes and requires Subscribers to waste time sorting through it. This junk mail interrupts and pollutes the experience of a fantasy Subscribers paid for by purchasing the software and paying monthly subscription fees.

c.    **Less Time for Content.** Subscribers, like Plaintiff, have a limited amount of time in a given week available to participate in *World of Warcraft®*. Because of the additional time required to collect materials and earn currency as the result of material shortages cause by IGE gold farmers, Subscribers have less time available for other content in the virtual world. The inability to experience other content because of the lack of time is a substantial interruption of the experience Subscribers paid for by purchasing the software and paying monthly subscription fees.

d.    **Arena PvP Team Rankings.** Honest Subscribers, like Plaintiff, who do not purchase gold from IGE are at a significant disadvantage in competitive Arena Player v. Player ("PvP") contests. Typically, in PvP contests the Subscriber with comparatively more gold or assets is better prepared and equipped to compete. This competitive advantage has the

11

effect of causing honest Subscribers to have a lower rank, on average, in the Arena rankings than Defendants' clients. This also impairs the honest Subscribers' opportunity to qualify for Arena tournaments where Subscribers compete for real money prizes. This is a substantial impairment of the *World of Warcraft*® experience that Plaintiff and other honest Subscribers paid for by purchasing the software and paying monthly subscription fees.

e.    **Honest Subscribers Competitively Disadvantaged.** Honest Subscribers in *World of Warcraft*® who do not buy gold from Defendants are at a competitive disadvantage to Defendants' clients who buy gold. Honest Subscribers are held hostage by this dilemma: they must either continue to experience *World of Warcraft*® at an unfair competitive disadvantage or violate the EULA and the ToU by purchasing gold from the Defendants and risk losing their account. This dilemma and the resulting competitive disadvantage for Subscribers who do not buy gold from Defendants is a pollution and interruption of the fantasy Subscribers paid for by purchasing software and paying monthly subscription fees.

## V.    Class Action Allegations

32.    Pursuant to Rule 23 of the *Federal Rules of Civil Procedure*, Plaintiff brings this action on behalf of himself and a Class, defined as follows:

> All individuals in the United States and its territories who, for purposes other than resale, purchased Blizzard Entertainment's *World of Warcraft*® software and paid subscription fees at any time from November 27, 2004 until present.

Excluded from the Class are (a) Defendants and any entities in which any Defendant has a controlling interest, their legal representatives, officers, directors, assignees and successors; and (b) any co-conspirators, including any Subscribers who sold *World of Warcraft*® gold to IGE; and (c) Subscribers who purchased *World of Warcraft*® gold from Defendants for real money. Also excluded from the Class are any judges or justices to whom this action is assigned, as well as any relative of such judge(s) or justice(s) within the third degree of relationship, and the spouse of any such person.

33.    Plaintiff contends that this suit is properly maintainable as a class action pursuant to Rules 23(b)(1), (b)(3), and (b)(3) of the *Federal Rules of Civil Procedure*.

### A.    Numerosity

34.    The Class consists of numerous individuals and entities throughout the United States, making individual joinder impractical, in satisfaction of Rule 23(a)(1). Plaintiff is unable to provide an approximation of the number of potential class members, but notes that there are approximately 2 million subscribers to *World of Warcraft*® in North America. The disposition of the claims of the Class members in a single class action will provide substantial benefits to all parties and to the Court.

### B.    Typicality

35.    The claims of the representative Plaintiff are typical of the claims of the Class, as required by Rule 23(a)(3), in that Mr. Hernandez, like all Class members, purchased Blizzard Entertainment's software and paid for subscription to *World of Warcraft*®. Like all Class Members, Mr. Hernandez has been damaged by Defendants' misconduct, in that, among other things, he lost the benefit that he paid for when he purchased Blizzard Entertainment's software and paid for his subscription to *World of Warcraft*®.

### C.    Common Questions of Law and Fact

36.    The factual and legal basis of Defendants' illegal sales scheme is common to all members of the Class and represents a common thread of misconduct resulting in injury to Plaintiff and all members of the Class.

37.    Questions of law and fact are common to Plaintiff and the Class abound in this case, and those questions predominate over any questions affecting individual Class members, within the meaning of Rule 23(a)(2) and (b)(3).  These common questions of law and fact include, but are not limited to, the following:

(a)    Whether Defendants sold *World of Warcraft*® gold;

(b)    Whether Defendants engaged in a conspiracy with other to sell *World of Warcraft*® gold;

(c)    Whether Defendants engaged in an unfair and deceptive practice of selling *World of Warcraft*® gold as alleged herein;

(d)    Whether Defendants violated Florida's or any other state's consumer protection statute;

(e)    Whether Defendants' unfair and deceptive practices, or other violations of other state's consumer protection statutes, proximately caused damages to Plaintiff and members of the Class, including both money damages and irreparable harm for which there is no adequate remedy at law;

(f)    Whether Plaintiff and other members of the Class had a business relationship with Blizzard Entertainment through their subscriptions with Blizzard Entertainment ("Business Relationship");

(g)    Whether Defendants had knowledge of the Business Relationship;

(h)    Whether Defendants intentionally and unjustifiable interfered with the Business Relationship through their sales of *World of Warcraft*® gold, and conspiracy to sell *World of Warcraft*® gold, as alleged herein;

(i)    Whether Defendants' intentional and unjustifiable interference with the Business Relationship proximately caused damages to Plaintiff and members of the Class, including both money damages and irreparable harm with no adequate remedy at law;

14

(j)     Whether Defendants are liable under state conspiracy and/or state concert of action and/or state aiding and abetting/facilitating laws;

(k)     Whether Plaintiff and members of the Class are entitled to compensatory damages, and, if so, the nature of such damages;

(l)     Whether Plaintiff and members of the Class are entitled to punitive damages, treble damages or exemplary damages and, if so, the nature of such damages;

(m)     Whether Plaintiff and the Class are entitled equitable relief including an injunction; and

(n)     Whether Plaintiff and members of the Class are entitled to an award of reasonable attorneys' fees, prejudgment interest, post-judgment interest and cost of suit.

## D.    Adequacy

38.     Plaintiff will fairly and adequately represent and protect the interest of the Class, as required by Rule 23(a)(4). Plaintiff has retained counsel with substantial experience and expertise. Plaintiff and his counsel are committed to the vigorous prosecution of this action on behalf of the Class and have the financial resources to do so. Neither Plaintiff nor counsel has any interest adverse to those of the Class.

## E.    Superiority

39.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy under Rule 23(b)(3). Absent a class action, most members of the Class likely would find the cost of litigating their claims to be prohibitive, and will have no effective remedy at law. The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves resources of the courts and the litigants, and promotes consistency and efficiency of adjudication.

40.    The prosecution of separate actions by or against individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class. The adjudications would establish incompatible standards of conduct for the Defendants which would, as a practical matter, be dispositive of the interests of the other class members not parties to the adjudications or would substantially impair or impede their ability to protect their interests.

41.    Defendants also have acted or refused to act on grounds generally applicable to all members of the Class, thereby making appropriate declaratory relief with respect to the Class as a whole.

## VI.    Causes of Action

### CLAIM I
### Violation of Florida's Deceptive
### And Unfair Trade Practices Act

42.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

43.    Plaintiff brings this claim based upon Florida's Deceptive and Unfair Trade Practices Act (the "Act") found in Chapter 501 of the Florida Statutes.

44.    **Plaintiff and the Class are Consumers Under the Act.** Plaintiff and members of the Class are "consumer[s]" and/or "interested part[ies] or persons" within the meaning of §501.203(6), (7), *Florida Statutes* (2006).

45.    **Trade or Commerce.** In distributing, marketing and selling *World of Warcraft®* gold through eBay and its website for real money, Defendants are engaging in "trade or commerce" within the meaning of §501.203(8), *Florida Statutes* (2006).

46. **Willful Violation.** Defendants' conduct as set forth herein was "willful" and constitutes a "violation" under the Act. See §501.2075, *Florida Statutes* (2006); and §501.203(3), *Florida Statutes* (2006).

47. **Unfair Acts or Practices.** As defined by §501.204, Defendants' conduct is unlawful as it constitutes, "unfair methods of competition," "unconscionable acts or practices," and/or "unfair or deceptive acts or practices in the conduct of any trade or commerce." See §501.204, *Florida Statutes* (2006).

48. **Equitable Relief.** Plaintiff, individually and as representative of members of the Class, seeks the entry of declaratory judgment enjoining Defendants' unlawful conduct and mandating corrective measures pursuant to Florida Statute Section 501.211, *Florida Statutes* (2006).

49. **Money Damages.** Plaintiff, individually and as representative of the members of the Class, further requests this Court require Defendants to repay monies acquired by the distribution, marketing and sale of *World of Warcraft®* gold during the time Defendants were engaging in unlawful conduct, and statutory damages as prescribed by Section 501.211(2) and 501.2075, *Florida Statutes* (2006).

**WHEREFORE**, Plaintiff, on behalf of himself and the Class, respectfully seeks the relief set forth below.


## CLAIM II
### Violation of Consumer Protection Statutes
### Of Remaining 49 States, District of Columbia and Puerto Rico

50. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

51.    **Plaintiff and the Class are Consumers Under the Other State Statutes.**

Plaintiff and the Class are individual consumers who purchased and paid for Blizzard Entertainment's *World of Warcraft®* software and paid subscription fees during the relevant time period. All 49 of the remaining states (a separate Count having been pled above for the Plaintiff's state of residence, Florida), the District of Columbia and Puerto Rice have enacted statutes to protect consumers against unfair, unconscionable, deceptive or fraudulent business practices, unfair competition and false advertising. Most states allow consumers a private right of action under these statutes.

52.    **Unfair Acts or Practices.**  IGE violated Blizzard Entertainment's EULA and ToU through the sale and conspiracy to sell *World of Warcraft®* gold. This conduct has been to the substantial detriment of Plaintiff and the Class. This conduct constitutes unlawful, unfair, unconscionable, deceptive and fraudulent business practices within the meaning of consumer protection statutes of the remaining 49 states, the District of Columbia and Puerto Rico.

53.    **Damages.**  Defendants directly and proximately caused Plaintiff and the Class to suffer damages by, as described above, impairing the benefit that Plaintiff and the Class have paid for, and impairing Plaintiff and the Class's ability as paying subscribers to participate in *World of Warcraft®*. As a direct and proximate result of Defendants' conduct, Plaintiff and the Class have suffered damages in an amount to be determined at trial, and are entitled to compensatory damages, treble damages, injunctive relief, attorneys' fees and costs of suit, and any other damages provided under these statutes.

**WHEREFORE**, Plaintiff, on behalf of himself and the Class, respectfully seek the relief set forth below.

## CLAIM III
### Unfair Trade Practices Acts Conspiracy

54.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

55.    **Conspiracy Between Two or More Parties.**  Beginning at least as early as November 27, 2004, and continuing thereafter through the present time, Defendants, its gold farmers, and co-conspirators, as described above, engaged in a continuing conspiracy and/or concerted action to violate federal and state consumer protection laws by selling, and conspiring to sell, *World of Warcraft*® gold in violation of said statutes and Blizzard Entertainment's EULA and ToU.  In the absence of Defendants' conspiracy and/or concerted action, the benefits that Plaintiff and the Class have paid for would not have been impaired, nor would their ability to participate in *World of Warcraft*® have been affected.

56.    **Unlawful Acts by Unlawful Means and Overt Acts.**  Pursuant to their conspiracy and/or concerted action alleged herein, Defendants, its gold farmers, and co-conspirators engaged in numerous overt acts in furtherance of the conspiracy, encompassing a wide range of activities, the purpose and effect of which was to violate consumer protection statutes and Blizzard Entertainment's EULA and ToU agreements to the disadvantage of Plaintiff and the Class.  These activities have been set forth in great detail above and throughout this Complaint, and have been incorporated by reference herein, including , but not limited to the sale and promotion of the sale of *World of Warcraft*® gold.  These acts constitute unlawful, unfair, unconscionable, deceptive and fraudulent business practices within the meaning of Florida's Unfair and Deceptive Practices Act as alleged above, and the consumer protection statutes of the remaining 49 states, the District of Columbia and Puerto Rico.

57.   **Damages.**   Defendants' conspiracy and concerted actions have directly and proximately caused the damages to Plaintiff and the Class.  As a direct and proximate result of Defendants' conspiracies and/or concerted actions perpetrated upon Plaintiff and the Class, Defendants are jointly and severally liable to Plaintiff and the Class for all damages Plaintiff and the Class have sustained, plus exemplary damages and, punitive damages, as well as the cost of suit and reasonable attorneys' fees.

**WHEREFORE**, Plaintiff, on behalf of himself and the Class, respectfully seeks the relief set forth below.

## CLAIM IV
### Breach of Third Party Beneficiary Contract

58.   Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

59.   **Valid contract.**   Defendants and their co-conspirators entered into a valid contract with Blizzard Entertainment by creating *World of Warcraft*® accounts and agreeing to the EULA and the ToU.

60.   **Plaintiff not a party.**   Plaintiff is not a party to the contract between Defendants and Blizzard Entertainment.

61.   **Plaintiff and Class are intended beneficiaries.**   Defendants and Blizzard Entertainment intended that the contract directly benefits Plaintiff and the Class.  Both the EULA and ToU prohibit real money trade and the sale of *World of Warcraft*® gold for the benefit of all subscribers like Plaintiff and the Class.

62.    **The contract is breached.** Defendants' and their co-conspirators breached the contract with Blizzard Entertainment by selling and conspiring to sell *World of Warcraft®* gold.

63.    **Damages.** Plaintiff and the Class have suffered damages, which were directly and proximately caused by Defendants' sale and conspiracy to sell *World of Warcraft®* gold for real money. Such damages include both money damages and irreparable harm with no adequate remedy at law.

WHEREFORE, Plaintiff, on behalf of himself and the Class, respectfully seeks the relief set forth below.


## CLAIM V
### Breach of Third-Party Beneficiary Conspiracy

64.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

65.    **Conspiracy between two or more parties.** Beginning at least as early as November 27, 2004, and continuing thereafter through the present time, Defendants, its gold farmers, and co-conspirators, as described above, engaged in a continuing conspiracy and/or concerted action to promote and sell *World of Warcraft®* gold for real money through eBay and its website.

66.    **Unlawful acts by unlawful means and overt acts.** Pursuant to their conspiracy and/or concerted action alleged herein, Defendants and their co-conspirators engaged in a wide range of activities the purpose and effect of which was to violate Blizzard Entertainment's EULA and ToU to the disadvantage of Plaintiff and the Class. These activities have been set forth in great detail above and throughout this Complaint, and have been incorporated by reference herein, including, but not limited to the sale and promotion of the sale of *World of*

21

*Warcraft®* gold.  These acts constitute a breach of third-party beneficiary contract with Blizzard Entertainment.

67.    **Damages.**  Defendants' conspiracy and concerted actions have directly and proximately caused Plaintiff's damages.  As a direct and proximate result of Defendants conspiracies and/or concerted actions perpetrated upon Plaintiff, Defendants are jointly and severally liable to Plaintiff for all damages Plaintiff and the Class have sustained, plus exemplary damages and, punitive damages, as well as the cost of suit and reasonable attorneys' fees.  The conspiracy and concerted actions have also caused and proximately caused Plaintiff to suffer irreparable harm with no adequate remedy at law.

**WHEREFORE**, Plaintiff, on behalf of himself and the Class, respectfully seeks the relief set forth below.

**CLAIM VI**
**Tortuous Interference with Business Relationship**

68.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

69.    **Business Relationship.**  Plaintiff and members of the Class have a business relationship with Blizzard Entertainment.  This relationship exists through Plaintiff's and the members of the Class' monthly subscriptions with Blizzard Entertainment to participate in *World of Warcraft®*, and through their EULA and the ToU.

70.    **Knowledge of the Relationship.**  Defendants had knowledge of Plaintiff's relationship with Blizzard Entertainment.  IGE knows that millions of subscribers, including Plaintiff and members of the Class, subscribes to and participates in *World of Warcraft®*.  IGE

also has knowledge and constructive knowledge that millions of subscribers, including Plaintiff and members of the Class, agreed to Blizzard Entertainment's EULA and the ToU.

71.    **Intentional and Unjustifiable Interference.**    Defendants intentionally and unjustifiably interfered with the relationship between Plaintiff and Blizzard Entertainment, by selling and conspiring to sell *World of Warcraft®* gold in violation of the EULA and ToU as more fully described above.

72.    **Damages.**  Defendant, IGE's interference with Plaintiff's and members of the Class' business relationship has caused and proximately cause him to suffer damages, including the money Plaintiff and the Class paid to purchase Blizzard Entertainment's software and for subscription fees.  Such damages include both money damages and irreparable harm with no adequate remedy at law.

**WHEREFORE**, Plaintiff, on behalf of himself and the Class, respectfully seeks the relief set forth below.

## CLAIM VII
### Tortuous Interference with Business Relationship Conspiracy

73.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

74.    **Conspiracy between two or more parties.**  Beginning at least as early as November 27, 2004, and continuing thereafter through the present time, Defendants, its gold farmers, and co-conspirators, as described above, engaged in a continuing conspiracy and/or concerted action to sell and promote the sale of *World of Warcraft®* gold for real money through eBay and its website.

75.    **Unlawful acts by unlawful means and overt acts.**  Pursuant to their conspiracy and/or concerted action alleged herein, Defendants, its gold farmers and co-conspirators engaged in a wide range of activities the purpose and effect of which was to violate Blizzard Entertainment's EULA and ToU to the disadvantage of Plaintiff and the Class.  These activities have been set forth in great detail above and throughout this Complaint, and have been incorporated by reference herein, including, but not limited to the sale of *World of Warcraft®* gold.  These acts constitute a tortuous interference with Plaintiff's business relationship with Blizzard Entertainment.

76.    **Damages.**  Defendants' conspiracy and concerted actions have directly and proximately caused Plaintiff's damages.   As a direct and proximate result of Defendants' conspiracies and/or concerted actions perpetrated upon Plaintiff, Defendants are jointly and severally liable to Plaintiff for all damages Plaintiff and the Class have sustained, plus exemplary damages and, punitive damages, as well as the cost of suit and reasonable attorneys' fees.  The conspiracy and concerted actions have also caused and proximately caused Plaintiff to suffer irreparable harm with no adequate remedy at law.

**WHEREFORE**, Plaintiff, on behalf of himself and the Class, respectfully seeks the relief set forth below.

## VIII.   Demand for Relief

**WHEREFORE**, Plaintiff and the Class demand judgment against Defendants in each claim for relief, jointly and severally, and as follows:

24

78.     Compensatory damages, treble damages, injunctive relief, and any other damages permitted by law, such amounts to be determined at trial, plus Plaintiff's costs in this suit and reasonable attorneys' fees;

79.     Awarding Plaintiff and the Class other appropriate equitable relief, including, but not limited to, disgorgement of all profits obtained from their wrongful conduct and declaratory relief;

80.     Awarding Plaintiff and the Class prejudgment and post-judgment interest at the maximum rate allowed by law;

81.     Awarding Plaintiff and the Class their costs and expenses in this litigation, including expert fees, and reasonable attorneys' fees;

82.     Awarding Plaintiff and the Class such other and further relief as may be just and proper under the circumstances.


## IX.    Demand for Jury Trial

Pursuant to *Federal Rules of Civil Procedure* 38(b), Plaintiff demands a trial by jury on all issues so triable.

Dated: May __30__, 2007.

Respectfully submitted,

C. RICHARD NEWSOME, ESQUIRE
Florida Bar No.: 827258
Email: newsome@productsliability.net
NEWSOME LAW FIRM
20 N. Orange Ave., Suite 800
Orlando, Florida 32801
Telephone: (407) 648-5977
Facsimile: (407) 648-5282
Attorney for Plaintiff

25





 Online Privacy

**Policy** | **Legal Documents** | **Policies**

©2004-2007 Blizzard Entertainment, Inc. All rights reserved.

WORLD OF WARCRAFT TERMS OF USE

# WORLD OF WARCRAFT®

### TERMS OF USE AGREEMENT

Last Updated January 11, 2007

YOU SHOULD CAREFULLY READ THE FOLLOWING WORLD OF WARCRAFT TERMS OF USE AGREEMENT (THE "TERMS OF USE" OR "AGREEMENT"). IF YOU DO NOT AGREE WITH ALL OF THE TERMS OF THIS AGREEMENT, YOU MUST CLICK "REJECT." IF YOU REJECT THIS AGREEMENT WITHIN THIRTY (30) DAYS AFTER FIRST PURCHASING THE WORLD OF WARCRAFT SOFTWARE, YOU MAY CALL (800)757-7707 TO REQUEST A FULL REFUND OF THE PURCHASE PRICE. ONCE YOU AGREE TO THE TERMS OF USE AND THE END USER LICENSE AGREEMENT (EULA), YOU WILL NO LONGER BE ELIGIBLE FOR A REFUND.

Welcome to Blizzard Entertainment, Inc.'s ("Blizzard") "World of Warcraft®" or "World of Warcraft®: The Burning Crusade™" (the "Game"). The Game includes two components: (a) the software program along with any accompanying materials or documentation (collectively, the "Program"), and (b) Blizzard's proprietary World of Warcraft online service (the "Service"). All use of the Service is governed by the terms and conditions contained in this Agreement, including any future revisions. Any use of the Service not in accordance with the Terms of Use is expressly prohibited.

## EXHIBIT A

http://www.worldofwarcraft.com/legal/termsofuse.html                    5/15/2007

1. **Eligibility.**

   You represent that you are an adult in your country of residence. You agree to these Terms of Use on behalf of yourself and, at your discretion, for one (1) minor child for whom you are a parent or guardian and whom you have authorized to use the account you create on the Service.

2. **Ownership.**

   All rights and title in and to the Program and the Service (including without limitation any user accounts, titles, computer code, themes, objects, characters, character names, stories, dialogue, catch phrases, locations, concepts, artwork, animations, sounds, musical compositions, audio-visual effects, methods of operation, moral rights, any related documentation, "applets" incorporated into the Program, transcripts of the chat rooms, character profile information, recordings of games played on the Program, and the Program client and server software) are owned by Blizzard or its licensors. The Program and the Service are protected by United States and international laws. The Program and the Service may contain certain licensed materials, and Blizzard's licensors may enforce their rights in the event of any violation of this Agreement.

3. **Establishing an Account.**

   You may establish one (1) user account (the "Account") on the Service for each Authentication Key you receive from Blizzard. To establish an Account, you will be required to provide Blizzard with certain personal information and the Authentication Key provided to you by Blizzard. Your failure to supply accurate information to Blizzard when requested, or to update that information as it changes, shall constitute a material breach of this Agreement.

   During the registration process, you will be required to select a username and a password that are unique to the Account (collectively referred to hereunder as "Login Information"). You may not share the Account or the Login Information with anyone other than as expressly set forth herein.

   Notwithstanding anything to the contrary herein, you acknowledge and agree that you shall have no ownership or other property interest in the Account, and you further acknowledge and agree that all rights in and to the Account are and shall forever be owned by and inure to the benefit of Blizzard.

4. **Limitations on Your Use of the Service.**

   A.  Only Blizzard or its licensees have the right to host the Game. You may not host or provide matchmaking services for the Game, or intercept, emulate or redirect the proprietary communication protocols used by Blizzard in connection with the Program, regardless of the method used to do so. Such prohibited methods may include, but are not limited to, protocol emulation, reverse engineering, modifying the Program, adding unauthorized components to the Program, or using a packet sniffer while the Program is running.

B.   You agree that you will not (i) modify or cause to be modified any files that are a part of the Program or the Service; (ii) create or use cheats, bots, "mods", and/or hacks, or any other third-party software designed to modify the World of Warcraft experience; or (iii) use any third-party software that intercepts, "mines", or otherwise collects information from or through the Program or the Service. Notwithstanding the foregoing, you may update the Program with authorized patches and updates distributed by Blizzard, and Blizzard may, at its sole and absolute discretion, allow the use of certain third party user interfaces.

C.   You may not disrupt or assist in the disruption of (i) any computer used to support the Service (each a "Server"); or (ii) any other player's Game experience. ANY ATTEMPT BY YOU TO DISRUPT THE SERVICE OR UNDERMINE THE LEGITIMATE OPERATION OF THE PROGRAM MAY BE A VIOLATION OF CRIMINAL AND CIVIL LAWS. You agree that you will not violate any applicable law or regulation in connection with your use of the Program or the Service.

D.   Blizzard reserves the exclusive right to create derivative works based on the Program. You may not create derivative works based on the Program without Blizzard's prior written consent.

5.   **Rules of Conduct.**

As with all things, your use of the Program is governed by certain rules of conduct. These rules of conduct (the "Rules of Conduct"), maintained and enforced exclusively by Blizzard, must be adhered to by all users of the Service. It is your responsibility to know, understand and abide by these Rules of Conduct. The following rules are not meant to be exhaustive, and Blizzard reserves the right to determine which conduct it considers to be outside the spirit of the Game and to take such disciplinary measures as it sees fit up to and including termination and deletion of the Account. Blizzard reserves the right to modify these Rules of Conduct at any time.

A.   *Rules Related to Usernames and Guild Designations.*

Each user will either select a character name or allow the Program to automatically select a character name at random. Additionally, users may form "guilds" and such guilds will be required to choose a name for the guild. When you choose a character name, create a guild, or otherwise create a label that can be seen by other players using the Program, you must abide by the following guidelines as well as the rules of common decency. If Blizzard finds such a label to be offensive or improper, it may, in its sole and absolute discretion, change the name, remove the label and corresponding chat room, and/or suspend or terminate your use of the Program.

In particular, you may not use any name:

1.   Belonging to another person with the intent to impersonate that person, including without limitation a "Game Master" or any other employee or agent of Blizzard;

2.  That incorporates vulgar language or which are otherwise offensive, defamatory, obscene, hateful, or racially, ethnically or otherwise objectionable;

3.  Subject to the rights of any other person or entity without written authorization from that person or entity;

4.  That belongs to a popular culture figure, celebrity, or media personality;

5.  That is, contains, or is substantially similar to a trademark or service mark, whether registered or not;

6.  Belonging to any religious figure or deity;

7.  Taken from Blizzard's Warcraft products, including character names from the Warcraft series of novels;

8.  Related to drugs, sex, alcohol, or criminal activity;

9.  Comprised of partial or complete sentence (e.g., "Inyourface", "Welovebeef", etc);

10. Comprised of gibberish (e.g., "Asdfasdf", "Jjxccm", "Hvlldrm");

11. Referring to pop culture icons or personas (e.g. " "Britneyspears", "Austinpowers", "Batman")

12. That utilizes "Leet" or "Dudespeak" (e.g., "Roflcopter", "xxnewbxx", "Roxxoryou")

13. That incorporates titles. For purposes of this subsection, "titles" shall include without limitation 'rank' titles (e.g. , "CorporalTed," or "GeneralVlad"), monarchistic or fantasy titles (e.g., "KingMike", "LordSanchez"), and religious titles (e.g., "ThePope," or "Reverend Al").

You may not use a misspelling or an alternative spelling to circumvent the name restrictions listed above, nor can you have a "first" and "last" name that, when combined, violate the above name restrictions.

B.  *Rules Related to "Chat" and Interaction With Other Users.*

Communicating with other Users and Blizzard representatives is an integral part of the Program and is referred to in this document as "Chat." You understand that Blizzard may record your chat sessions and you consent to such monitoring or logging. Your Chat sessions may be subject to monitoring, logging, review, modification, disclosure, and/or deletion by Blizzard without notice to you. Additionally, you hereby acknowledge that Blizzard is under no obligation to monitor Chat, and you engage in Chat at your own risk. When engaging in Chat in the Program, or otherwise utilizing the Program, you may not:

1.  Transmit or post any content or language which, in the sole and absolute discretion of Blizzard, is deemed to be offensive, including without limitation content or language that is unlawful, harmful, threatening, abusive, harassing, defamatory, vulgar, obscene, hateful, sexually explicit, or racially, ethnically or otherwise objectionable, nor may you use a misspelling or an alternative spelling to circumvent the content and language restrictions listed above;

2.  Carry out any action with a disruptive effect, such as intentionally causing the Chat screen to scroll faster than other users are able to read, or setting up macros with large amounts of text that, when used, can have a disruptive effect on the normal flow of Chat;

3.  Disrupt the normal flow of dialogue in Chat or otherwise act in a manner that negatively affects other users including without limitation posting commercial solicitations and/or advertisements for goods and services available outside of the World of Warcraft universe;

4.  Sending repeated unsolicited or unwelcome messages to a single user or repeatedly posting similar messages in a Chat area, including but not limited to continuous advertisements to sell goods or services;

5.  Communicate or post any user's personal information in the Program, or on websites or forums related to the Program, except that a user may communicate his or her own personal information in a private message directed to a single user;

6.  Use bots or other automated techniques to collect information from the Program or any forum or website owned or administered by Blizzard;

7.  Harass, threaten, stalk, embarrass or cause distress, unwanted attention or discomfort to any user of the Program;

8.  Cheat or utilize "exploits" while playing the Program in any way, including without limitation modification of the Program's files;

9.  Participate in any action that, in the sole and absolute opinion of Blizzard, results or may result in an authorized user of the Program being "scammed" or defrauded out of gold, weapons, armor, or any other items that user has earned through authorized game play in the Program;

10. Communicate directly with players who are playing characters aligned with the opposite faction (e.g. Horde communicating with Alliance or vice versa); or

11. Impersonate any real person, including without limitation any "game master" or any other Blizzard agent or employee, nor may you communicate in the Game in any way designed to

make others believe that your message constitutes a server message or was otherwise posted by any Blizzard agent or employee.

C.  *Rules Related to Game Play*

Game play is what World of Warcraft is all about, and Blizzard strictly enforces the rules that govern game play. Blizzard considers most conduct to be part of the Game, and not harassment, so player-killing the enemies of your race and/or alliance, including gravestone and/or corpse camping, is considered a part of the Game. Because the Program is a "player vs. player" game, you should always remember to protect yourself in areas where the members of hostile races can attack you, rather than contacting Blizzard's in-game customer service representatives for help when you have been killed by an enemy of your race. Nonetheless, certain acts go beyond what is "fair" and are considered serious violations of these Terms of Use. Those acts include, but are not necessarily limited to, the following:

1.  Using or exploiting errors in design, features which have not been documented, and/or "program bugs" to gain access that is otherwise not available, or to obtain a competitive advantage over other players;

2.  Conduct prohibited by the EULA or these Terms of Use, including without limitation that conduct prohibited by Section 2(C); and

3.  Anything that Blizzard considers contrary to the "essence" of the Program.

6.  **Security of Login Information.**

You are responsible for maintaining the confidentiality of your Login Information, and you will be responsible for all uses of your Login Information, whether or not authorized by you. In the event that you become aware of or reasonably suspect any breach of security, including without limitation any loss, theft, or unauthorized disclosure of your Login Information, you must immediately notify Blizzard by emailing wowaccountadmin@blizzard.com.

7.  **Blizzard's Absolute Right to Suspend, Terminate and/or Delete the Account.**

BLIZZARD MAY SUSPEND, TERMINATE, MODIFY, OR DELETE THE ACCOUNT AT ANY TIME WITH ANY REASON OR NO REASON, WITH OR WITHOUT NOTICE. For purposes of explanation and not limitation, most account suspensions, terminations and/or deletions are the result of violations of this Terms of Use or the EULA.

8.  **Ownership/Selling of the Account or Virtual Items.**

Blizzard does not recognize the transfer of Accounts. You may not purchase, sell, gift or trade any Account, or offer to purchase, sell, gift or trade any Account, and any such attempt shall be null and void.

Blizzard owns, has licensed, or otherwise has rights to all of the content that appears in the Program. You agree that you have no right or title in or to any such content, including the virtual goods or currency appearing or originating in the Game, or any other attributes associated with the Account or stored on the Service. Blizzard does not recognize any virtual property transfers executed outside of the Game or the purported sale, gift or trade in the "real world" of anything related to the Game. Accordingly, you may not sell items for "real" money or otherwise exchange items for value outside of the Game.

9. ## Changes to the Terms of Use Agreement or the Program.

Blizzard reserves the right, at its sole and absolute discretion, to change, modify, add to, supplement or delete any of the terms and conditions of this Agreement at any time, including without limitation access policies, the availability of any feature of the Program, hours of availability, content, data, software or equipment needed to access the Program, effective with or without prior notice; provided, however, that material changes (as determined in Blizzard's sole and absolute discretion) will be disclosed as follows: Blizzard will provide you with notification of any such changes to the Program through a patch process, or by email, postal mail, website posting, pop-up screen, or in-game notice. If any future changes to this Agreement are unacceptable to you or cause you to no longer be in compliance with this Agreement, you must terminate, and immediately stop using, the Program and the Account. Your continued use of the Program following any revision to this Agreement constitute your complete and irrevocable acceptance of any and all such changes. Blizzard may change, modify, suspend, or discontinue any aspect of the Program at any time. Blizzard may also impose limits on certain features or restrict your access to parts or all of the Program without notice or liability.

10. ## Termination.

This Agreement is effective until terminated. You may terminate this Agreement by terminating the Account and deleting the Program. In the event that you terminate or breach this Agreement, you will forfeit your right to any and all payments you may have made for pre-purchased game access to World of Warcraft. You agree and acknowledge that you are not entitled to any refund for any amounts which were pre-paid on behalf of the Account prior to any termination of this Agreement. Blizzard may terminate this Agreement with or without notice by terminating your Account. The provisions of Sections 2, 4 and Sections 6-17 shall survive any termination of this Agreement.

11. ## Warranty Disclaimer

THE PROGRAM IS PROVIDED "AS IS" AND BLIZZARD DOES NOT WARRANT THAT THE PROGRAM WILL BE UNINTERRUPTED OR ERROR-FREE, THAT DEFECTS WILL BE CORRECTED, OR THAT THE PROGRAM OR THE SERVICE ARE FREE OF VIRUSES OR OTHER HARMFUL COMPONENTS. BLIZZARD EXPRESSLY DISCLAIMS ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING WITHOUT LIMITATION THE WARRANTIES OF MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE OR USE, AND NON-INFRINGEMENT.

12. ## Limitation of Liability

NEITHER BLIZZARD NOR ITS PARENT, SUBSIDIARIES, LICENSORS OR AFFILIATES SHALL BE LIABLE IN ANY WAY FOR DAMAGE OR LOSS OF ANY KIND RESULTING FROM (A) THE USE OF OR INABILITY TO USE THE PROGRAM OR SERVICE INCLUDING WITHOUT LIMITATION LOSS OF GOODWILL, WORK STOPPAGE, COMPUTER FAILURE OR MALFUNCTION; (B) THE LOSS OR DAMAGE TO PLAYER CHARACTERS, ACCOUNTS, STATISTICS, INVENTORIES, USER PROFILE INFORMATION STORED BY WORLD OF WARCRAFT; OR (C) INTERRUPTIONS OF SERVICE INCLUDING WITHOUT LIMITATION ISP DISRUPTIONS, SOFTWARE OR HARDWARE FAILURES OR ANY OTHER EVENT WHICH MAY RESULT IN A LOSS OF DATA OR DISRUPTION OF SERVICE. IN NO EVENT WILL BLIZZARD BE LIABLE TO YOU OR ANYONE ELSE FOR ANY DIRECT, INDIRECT, INCIDENTAL, SPECIAL, EXEMPLARY OR CONSEQUENTIAL DAMAGES.

13. **Force Majeure**

Blizzard shall not be liable for any delay or failure to perform resulting from causes outside the reasonable control of Blizzard, including without limitation any failure to perform hereunder due to unforeseen circumstances or cause beyond Blizzard's control such as acts of God, war, terrorism, riots, embargoes, acts of civil or military authorities, fire, floods, accidents, strikes, or shortages of transportation facilities, fuel, energy, labor or materials.

14. **Acknowledgments.**

You hereby acknowledge and agree that:

A.  WHEN RUNNING, THE PROGRAM MAY MONITOR YOUR COMPUTER'S RANDOM ACCESS MEMORY (RAM) AND/OR CPU PROCESSES FOR UNAUTHORIZED THIRD PARTY PROGRAMS RUNNING CONCURRENTLY WITH WORLD OF WARCRAFT. AN "UNAUTHORIZED THIRD PARTY PROGRAM" AS USED HEREIN SHALL BE DEFINED AS ANY THIRD PARTY SOFTWARE, INCLUDING WITHOUT LIMITATION ANY "ADDON" OR "MOD," THAT IN BLIZZARD'S SOLE DETERMINATION: (i) ENABLES OR FACILITATES CHEATING OF ANY TYPE; (ii) ALLOWS USERS TO MODIFY OR HACK THE WORLD OF WARCRAFT INTERFACE, ENVIRONMENT, AND/OR EXPERIENCE IN ANY WAY NOT EXPRESSLY AUTHORIZED BY BLIZZARD; OR (iii) INTERCEPTS, "MINES," OR OTHERWISE COLLECTS INFORMATION FROM OR THROUGH THE PROGRAM. IN THE EVENT THAT THE PROGRAM DETECTS AN UNAUTHORIZED THIRD PARTY PROGRAM, BLIZZARD MAY (a) COMMUNICATE INFORMATION BACK TO BLIZZARD, INCLUDING WITHOUT LIMITATION YOUR ACCOUNT NAME, DETAILS ABOUT THE UNAUTHORIZED THIRD PARTY PROGRAM DETECTED, AND THE TIME AND DATE THE UNAUTHORIZED THIRD PARTY PROGRAM WAS DETECTED; AND/OR (b) EXERCISE ANY OR ALL OF ITS RIGHTS UNDER SECTION 6 OF THIS AGREEMENT, WITH OR WITHOUT PRIOR NOTICE TO THE USER.

B.  WHEN THE PROGRAM IS RUNNING, BLIZZARD MAY OBTAIN CERTAIN IDENTIFICATION INFORMATION ABOUT YOUR COMPUTER AND ITS OPERATING SYSTEM, INCLUDING

WITHOUT LIMITATION YOUR HARD DRIVES, CENTRAL PROCESSING UNIT, IP ADDRESS (ES) AND OPERATING SYSTEM(S), FOR PURPOSES OF IMPROVING THE PROGRAM AND/OR THE SERVICE, AND TO POLICE AND ENFORCE THE PROVISIONS OF THIS AGREEMENT AND THE EULA.

C.  Blizzard may, with or without notice to you, disclose your Internet Protocol (IP) address(es), personal information, and information about you and your activities in response to a written request by law enforcement, a court order or other legal process. Blizzard may use or disclose your personal information if Blizzard believes that doing so may protect your safety or the safety of others.

D.  BLIZZARD MAY RECORD YOUR CHAT SESSIONS AND OTHER ELECTRONIC COMMUNICATION TRANSMITTED OR RECEIVED THROUGH THE GAME AND YOU CONSENT TO SUCH MONITORING OR LOGGING.

E.  You are wholly responsible for the cost of all telephone and Internet access charges along with all necessary equipment, servicing, repair or correction incurred in maintaining connectivity to the Servers.

## 15. Equitable Remedies.

In the event that you breach this Agreement, you hereby agree that Blizzard would be irreparably damaged if this Agreement were not specifically enforced, and therefore you agree that Blizzard shall be entitled, without bond, other security, or proof of damages, to appropriate equitable remedies with respect to breaches of this Agreement, in addition to such other remedies as Blizzard may otherwise have available to it under applicable laws. In the event any litigation is brought by either party in connection with this Agreement, the prevailing party in such litigation shall be entitled to recover from the other party all the costs, attorneys' fees and other expenses incurred by such prevailing party in the litigation.

## 16. Dispute Resolution and Governing Law

A.  Informal Negotiations. To expedite resolution and control the cost of any dispute, controversy or claim related to this Agreement ("Dispute"), you and Blizzard agree to first attempt to negotiate any Dispute (except those Disputes expressly provided below) informally for at least thirty (30) days before initiating any arbitration or court proceeding. Such informal negotiations commence upon written notice from one person to the other. Blizzard will send its notice to your billing address and email you a copy to the email address you have provided to us. You will send your notice to Blizzard Entertainment, Inc., P.O. Box 18979, Irvine CA 92623, ATTN: Legal Department.

B.  Binding Arbitration. If you and Blizzard are unable to resolve a Dispute through informal negotiations, either you or Blizzard may elect to have the Dispute (except those Disputes expressly excluded below) finally and exclusively resolved by binding arbitration. Any election to arbitrate by

one party shall be final and binding on the other. YOU UNDERSTAND THAT ABSENT THIS
PROVISION, YOU WOULD HAVE THE RIGHT TO SUE IN COURT AND HAVE A JURY TRIAL.
The arbitration shall be commenced and conducted under the Commercial Arbitration Rules of the
American Arbitration Association ("AAA") and, where appropriate, the AAA's Supplementary
Procedures for Consumer Related Disputes ("AAA Consumer Rules"), both of which are available
that the AAA website www.adr.org. The determination of whether a Dispute is subject to arbitration
shall be governed by the Federal Arbitration Act and determined by a court rather than an
arbitrator. Your arbitration fees and your share of arbitrator compensation shall be governed by the
AAA Rules and, where appropriate, limited by the AAA Consumer Rules. If such costs are
determined by the arbitrator to be excessive, Blizzard will pay all arbitration fees and expenses.
The arbitration may be conducted in person, through the submission of documents, by phone or
online. The arbitrator will make a decision in writing, but need not provide a statement of reasons
unless requested by a party. The arbitrator must follow applicable law, and any award may be
challenged if the arbitrator fails to do so. Except as otherwise provided in this Agreement, you and
Blizzard may litigate in court to compel arbitration, stay proceeding pending arbitration, or to
confirm, modify, vacate or enter judgment on the award entered by the arbitrator.

C.  <u>Restrictions.</u> You and Blizzard agree that any arbitration shall be limited to the Dispute between
Blizzard and you individually. To the full extent permitted by law, (1) no arbitration shall be joined
with any other; (2) there is no right or authority for any Dispute to be arbitrated on a class-action
basis or to utilize class action procedures; and (3) there is no right or authority for any Dispute to be
brought in a purported representative capacity on behalf of the general public or any other persons.

D.  <u>Exceptions to Informal Negotiations and Arbitration.</u> You and Blizzard agree that the following
Disputes are not subject to the above provisions concerning informal negotiations and binding
arbitration: (1) any Disputes seeking to enforce or protect, or concerning the validity of, any of your
or Blizzard's intellectual property rights; (2) any Dispute related to, or arising from, allegations of
theft, piracy, invasion of privacy or unauthorized use; and (3) any claim for injunctive relief.

E.  <u>Location.</u> If you are a resident of the United States, any arbitration will take place at any reasonable
location within the United States convenient for you. For residents outside the United States, any
arbitration shall be initiated in the County of Los Angeles, State of California, United States of
America. Any Dispute not subject to arbitration (other than claims proceeding in any small claims
court), or where no election to arbitrate has been made, shall be decided by a court of competent
jurisdiction within the County of Los Angeles, State of California, United States of America, and you
and Blizzard agree to submit to the personal jurisdiction of that court.

F.  <u>Governing Law.</u> Except as expressly provided otherwise, this Agreement shall be is governed by,
and will be construed under, the Laws of the United States of America and the law of the State of
Delaware, without regard to choice of law principles. The application of the United Nations

Convention on Contracts for the International Sale of Goods is expressly excluded. For our customers who access the Service from Canada, Australia, Singapore, or New Zealand, other laws may apply if you choose not to agree to arbitrate as set forth above, and in such an event, shall affect this Agreement only to the extent required by such jurisdiction. In such a case, this Agreement shall be interpreted to give maximum effect to the terms and conditions hereof. If you access the Service from New Zealand, and are a resident of New Zealand, The New Zealand Consumer Guarantees Act of 1993 ("Act") may apply to the Game and/or the Service as supplied by Blizzard to you. If the Act applies, then notwithstanding any other provision in this Agreement, you may have rights or remedies as set out in the Act which may apply in addition to, or, to the extent that they are inconsistent, instead of, the rights or remedies set out in this Agreement. Those who choose to access the Service from locations outside of the United States, Canada, Australia, Singapore, or New Zealand do so on their own initiative contrary to the terms of this Agreement, and are responsible for compliance with local laws if and to the extent local laws are applicable.

G. Severability. You and Blizzard agree that if any portion Section 16 is found illegal or unenforceable (except any portion of 16(d)), that portion shall be severed and the remainder of the Section shall be given full force and effect. If Section 16(d) is found to be illegal or unenforceable then neither you nor Blizzard will elect to arbitrate any Dispute falling within that portion of Section 16(d) found to be illegal or unenforceable and such Dispute shall be decided by a court of competent jurisdiction within the County of Los Angeles, State of California, United States of America, and you and Blizzard agree to submit to the personal jurisdiction of that court.

17. **Miscellaneous.**

If any provision of this Agreement shall be unlawful, void, or for any reason unenforceable, then that provision shall be deemed severable from this Agreement and shall not affect the validity and enforceability of any remaining provisions. This Terms of Use Agreement is the complete and exclusive statement of the agreement between you and Blizzard concerning the Service, and this Agreement supersedes any prior or contemporaneous agreement, either oral or written, and any other communications with regard thereto between you and Blizzard; provided, however that this Agreement is in addition to, and does not replace or supplant, the EULA. This Agreement may only be modified as set forth herein. The section headings used herein are for reference only and shall not be read to have any legal effect.

I HEREBY ACKNOWLEDGE THAT I HAVE READ AND UNDERSTAND THE FOREGOING TERMS OF USE AGREEMENT AND AGREE THAT MY USE OF THE PROGRAM AND/OR THE SERVICE IS AN ACKNOWLEDGMENT OF MY AGREEMENT TO BE BOUND BY THE TERMS AND CONDITIONS OF THIS TERMS OF USE AGREEMENT.

Copyright 2006 Blizzard Entertainment, Inc. All rights reserved. The Burning Crusade is a trademark, and World of Warcraft, Warcraft and Blizzard are trademarks or registered trademarks of Blizzard Entertainment, Inc. in the

United States and/or other countries.

WORLD OF WARCRAFT END USER LICENSE AGREEMENT 

**Last Updated February 2, 2007**

# WORLD OF WARCRAFT® END USER LICENSE AGREEMENT

## IMPORTANT! PLEASE READ CAREFULLY.

**BY INSTALLING, COPYING, OR OTHERWISE USING THE GAME (DEFINED BELOW), YOU AGREE TO BE BOUND BY THE TERMS OF THIS AGREEMENT. IF YOU DO NOT AGREE TO THE TERMS OF THIS AGREEMENT, YOU ARE NOT PERMITTED TO INSTALL, COPY, OR USE THE GAME. IF YOU REJECT THE TERMS OF THIS AGREEMENT WITHIN THIRTY (30) DAYS AFTER PURCHASING THE GAME, YOU MAY CALL (800)757-7707 TO REQUEST A FULL REFUND OF THE PURCHASE PRICE.**

This software program, and any files that are delivered to you by Blizzard Entertainment, Inc. (via on-line transmission or otherwise) to "patch," update, or otherwise modify the software program, as well as any printed materials and any on-line or electronic documentation (the "Manual"), and any and all copies and derivative works of such software program and Manual (collectively, with the "Game Client" defined below, the "Game") is the copyrighted work of Blizzard Entertainment, Inc. or its licensors (collectively referred to herein as ï¿½Blizzardï¿½). Any and all uses of the Game are governed by the terms of this End User License Agreement ("License Agreement" or "Agreement"). The Game may only be played by obtaining from Blizzard access to the World of Warcraft massively multi-player on-line role-playing game service (the "Service"), which is subject to a separate Terms of Use agreement (the "Terms of Use"). If your purchase of the Game included a period of "free access" to the Service, the Terms of Use agreement also governs your access to the Service during the period of "free access." The Game is distributed solely for use by authorized end users according to the terms of the License Agreement. Any use, reproduction, modification or distribution of the Game not expressly authorized by the terms of the License Agreement is expressly prohibited.

1. Grant of a Limited Use License. If you agree to this License Agreement, computer software (hereafter referred to as the "Game Client") will be installed onto your hardware. If your hardware meets the minimum requirements, the installation of the Game Client will enable you to play the Game by accessing your account with the Service (your "Account"). Subject to your agreement to and continuing compliance with this License Agreement, Blizzard hereby grants, and you hereby accept, a limited, non-exclusive license to (a) install the Game Client on one or more computers owned by you or under your legitimate control, and (b) use the Game Client in conjunction with the Service for your non-commercial entertainment purposes only. All use of the Game Client is subject to this License Agreement and to the Terms of Use agreement, both of which you must accept before you can use your Account to play the Game.

2. Service and Terms of Use. As mentioned above, you must accept the Terms of Use in order to access the Service to play the Game. The Terms of Use agreement governs all aspects of game play. You may view the

**EXHIBIT B**

Terms of Use by visiting the following website: http://www.worldofwarcraft.com/legal/termsofuse.shtml. If you do not agree with the Terms of Use, then (a) you may not register for an Account to play the Game, and (b) you may call (800)757-7707 within thirty (30) days after the original purchase to arrange to return the Game and to request a full refund of the purchase price. Once you accept the License Agreement and the Terms of Use, you will no longer be eligible for a refund.

3. Ownership.

A. All title, ownership rights and intellectual property rights in and to the Game and all copies thereof (including without limitation any titles, computer code, themes, objects, characters, character names, stories, dialog, catch phrases, locations, concepts, artwork, character inventories, structural or landscape designs, animations, sounds, musical compositions and recordings, audio-visual effects, storylines, character likenesses, methods of operation, moral rights, and any related documentation) are owned or licensed by Blizzard. The Game is protected by the copyright laws of the United States, international treaties and conventions, and other laws. The Game may contain materials licensed by third parties, and the licensors of those materials may enforce their rights in the event of any violation of this License Agreement.

B. You may permanently transfer all of your rights and obligations under the License Agreement to another by physically transferring the original media (e.g., the CD-ROM or DVD you purchased), all original packaging, and all Manuals or other documentation distributed with the Game; provided, however, that you permanently delete all copies and installations of the Game in your possession or control, and that the recipient agrees to the terms of this License Agreement. The transferor (i.e., you), and not Blizzard, agrees to be solely responsible for any taxes, fees, charges, duties, withholdings, assessments, and the like, together with any interest, penalties, and additions imposed in connection with such transfer.

4. Responsibilities of End User.

A. Subject to the license granted hereunder, you may not, in whole or in part, copy, photocopy, reproduce, translate, reverse engineer, derive source code from, modify, disassemble, decompile, or create derivative works based on the Game, or remove any proprietary notices or labels on the Game. Failure to comply with the restrictions and limitations contained in this Section 4 shall result in the immediate, automatic termination of the license granted hereunder and may subject you to civil and/or criminal liability. Notwithstanding the foregoing, you may make one (1) copy of the Game Client and the Manuals for archival purposes only.

B. You agree that you shall not, under any circumstances,

(i) sell, grant a security interest in or transfer reproductions of the Game to other parties in any way not expressly authorized herein, nor shall you rent, lease or license the Game to others;

(ii) exploit the Game or any of its parts, including without limitation the Game Client, for any commercial purpose, including without limitation use at a cyber cafe, computer gaming center or any other location-based site without the express written consent of Blizzard;

(iii) host, provide or develop matchmaking services for the Game or intercept, emulate or redirect the communication protocols used by Blizzard in any way, including without limitation through protocol emulation, tunneling, packet sniffing, modifying or adding components to the Game, use of a utility program or any other techniques now known or hereafter developed, for any purpose, including without limitation unauthorized

network play over the Internet, network play utilizing commercial or non-commercial gaming networks, or as part of content aggregation networks; or

(iv) facilitate, create or maintain any unauthorized connection to the Game or the Service, including without limitation any connection to any unauthorized server that emulates, or attempts to emulate, the Service. All connections to the Game and/or the Service, whether created by the Game Client or by other tools and utilities, may only be made through methods and means expressly approved by Blizzard. Under no circumstances may you connect, or create tools that allow you or others to connect, to the Game's proprietary interface other than those expressly provided by Blizzard for public use.

5. Consent to Monitor. WHEN RUNNING, THE GAME MAY MONITOR YOUR COMPUTER'S RANDOM ACCESS MEMORY (RAM) FOR UNAUTHORIZED THIRD PARTY PROGRAMS RUNNING CONCURRENTLY WITH THE GAME. AN ï¿½UNAUTHORIZED THIRD PARTY PROGRAMï¿½ AS USED HEREIN SHALL BE DEFINED AS ANY THIRD PARTY SOFTWARE, INCLUDING WITHOUT LIMITATION ANY ï¿½ADDON,ï¿½ ï¿½MOD,ï¿½ ï¿½HACK,ï¿½ ï¿½TRAINER,ï¿½ OR ï¿½CHEAT,ï¿½ THAT IN BLIZZARD'S SOLE DETERMINATION: (i) ENABLES OR FACILITATES CHEATING OF ANY TYPE; (ii) ALLOWS USERS TO MODIFY OR HACK THE GAME INTERFACE, ENVIRONMENT, AND/OR EXPERIENCE IN ANY WAY NOT EXPRESSLY AUTHORIZED BY BLIZZARD; OR (iii) INTERCEPTS, ï¿½MINES,ï¿½ OR OTHERWISE COLLECTS INFORMATION FROM OR THROUGH THE GAME. IN THE EVENT THAT THE GAME DETECTS AN UNAUTHORIZED THIRD PARTY PROGRAM, THE GAME MAY (a) COMMUNICATE INFORMATION BACK TO BLIZZARD, INCLUDING WITHOUT LIMITATION YOUR ACCOUNT NAME, DETAILS ABOUT THE UNAUTHORIZED THIRD PARTY PROGRAM DETECTED, AND THE TIME AND DATE THE UNAUTHORIZED THIRD PARTY PROGRAM WAS DETECTED; AND/OR (b) EXERCISE ANY OR ALL OF ITS RIGHTS UNDER THIS AGREEMENT, WITH OR WITHOUT PRIOR NOTICE TO THE USER.

6. Termination. This License Agreement is effective until terminated. You may terminate the License Agreement at any time by (i) permanently destroying all copies of the Game in your possession or control; (ii) removing the Game Client from your hard drive; and (iii) notifying Blizzard of your intention to terminate this License Agreement. Blizzard may terminate this Agreement at any time for any reason or no reason. In such event, you must immediately and permanently destroy all copies of the Game in your possession and control and remove the Game Client from your hard drive. Upon termination of this Agreement for any reason, all licenses granted herein shall immediately terminate.

7. Export Controls. The Game may not be re-exported, downloaded or otherwise exported into (or to a national or resident of) any country to which the U.S. has embargoed goods, or to anyone on the U.S. Treasury Department's list of Specially Designated Nationals or the U.S. Commerce Department's Table of Denial Orders. You represent and warrant that you are not located in, under the control of, or a national or resident of any such country or on any such list.

8. Patches and Updates. Blizzard may deploy or provide patches, updates and modifications to the Game that must be installed for the user to continue to play the Game. Blizzard may update the Game remotely, including, without limitation, the Game Client residing on the user's machine, without the knowledge or consent of the user, and you hereby grant to Blizzard your consent to deploy and apply such patches, updates and modifications.

9. Duration of the "On-line" Component of the Game. This Game is an 'on-line' game that must be played over the Internet through the Service as provided by Blizzard. You understand and agree that the Service is provided

by Blizzard at its discretion and may be terminated or otherwise discontinued by Blizzard pursuant to the Terms of Use.

10. Limited Warranty. THE GAME (INLUDING WITHOUT LIMITATION THE GAME CLIENT AND MANUAL(S)) IS PROVIDED "AS IS" WITHOUT WARRANTY OF ANY KIND, EITHER EXPRESS OR IMPLIED, INCLUDING WITHOUT LIMITATION ANY IMPLIED WARRANTIES OF CONDITION, UNINTERRUPTED USE, MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, OR NONINFRINGEMENT. The entire risk arising out of use or performance of the Game (including without limitation the Game Client and Manual(s)) remains with the user. Notwithstanding the foregoing, Blizzard warrants up to and including 90 days from the date of your purchase of the Game that the media containing the Game Client shall be free from defects in material and workmanship. In the event that such media proves to be defective during that time period, and upon presentation to Blizzard of proof of purchase of the defective media, Blizzard will at its option (a) correct any defect, (b) provide you with a similar product of similar value, or (b) refund your money. THE FOREGOING IS YOUR SOLE AND EXCLUSIVE REMEDY FOR THE EXPRESS WARRANTY SET FORTH IN THIS SECTION. Some states do not allow the exclusion or limitation of implied warranties, so the above limitations may not apply to you.

11. Limitation of Liability, Indemnity. NEITHER BLIZZARD NOR ITS PARENT, SUBSIDIARIES OR AFFILIATES SHALL BE LIABLE IN ANY WAY FOR ANY LOSS OR DAMAGE OF ANY KIND ARISING OUT OF THE GAME OR ANY USE OF THE GAME, INCLUDING WITHOUT LIMITATION LOSS OF DATA, LOSS OF GOODWILL, WORK STOPPAGE, COMPUTER FAILURE OR MALFUNCTION, OR ANY AND ALL OTHER DAMAGES OR LOSSES. FURTHER, NEITHER BLIZZARD NOR ITS PARENT, SUBSIDIARIES OR AFFILIATES SHALL BE LIABLE IN ANY WAY FOR ANY LOSS OR DAMAGE TO PLAYER CHARACTERS, VIRTUAL GOODS (E.G., ARMOR, POTIONS, WEAPONS, ETC.) OR CURRENCY, ACCOUNTS, STATISTICS, OR USER STANDINGS, RANKS, OR PROFILE INFORMATION STORED BY THE GAME AND/OR THE SERVICE. BLIZZARD SHALL NOT BE RESPONSIBLE FOR ANY INTERRUPTIONS OF SERVICE, INCLUDING WITHOUT LIMITATION ISP DISRUPTIONS, SOFTWARE OR HARDWARE FAILURES, OR ANY OTHER EVENT WHICH MAY RESULT IN A LOSS OF DATA OR DISRUPTION OF SERVICE. IN NO EVENT WILL BLIZZARD BE LIABLE TO YOU FOR ANY INDIRECT, INCIDENTAL, SPECIAL, EXEMPLARY OR CONSEQUENTIAL DAMAGES. In no event shall Blizzard's liability, whether arising in contract, tort, strict liability or otherwise, exceed (in the aggregate) the total fees paid by you to Blizzard during the six (6) months prior to the time such claim arose. You hereby agree to defend, indemnify and hold Blizzard harmless from and against any claim, liability, loss, injury, damage, cost or expense (including reasonable attorneys' fees) incurred by Blizzard arising out of or from your use of the Game. Some states do not allow the exclusion or limitation of incidental or consequential damages, so the above limitations may not apply to you.

12. Equitable Remedies. You hereby agree that Blizzard would be irreparably damaged if the terms of this License Agreement were not specifically enforced, and therefore you agree that Blizzard shall be entitled, without bond, other security, or proof of damages, to appropriate equitable remedies with respect to breaches of this License Agreement, in addition to such other remedies as Blizzard may otherwise have available to it under applicable laws. In the event any litigation is brought by either party in connection with this License Agreement, the prevailing party in such litigation shall be entitled to recover from the other party all the costs, attorneys' fees and other expenses incurred by such prevailing party in the litigation.

13. Changes to the Agreement. Blizzard reserves the right, at its sole discretion, to change, modify, add to, supplement or delete any of the terms and conditions of this License Agreement when Blizzard upgrades the Game Client, effective upon prior notice as follows: Blizzard will post notification of any such changes to this

License Agreement on the World of Warcraft website and will post the revised version of this License Agreement in this location, and may provide such other notice as Blizzard may elect in its sole discretion. If any future changes to this License Agreement are unacceptable to you or cause you to no longer be in compliance with this License Agreement, you may terminate this License Agreement in accordance with Section 5 herein. Your installation and use of any updates or modifications to the Game or your continued use of the Game following notice of changes to this Agreement will demonstrate your acceptance of any and all such changes. Blizzard may change, modify, suspend, or discontinue any aspect of the Game at any time. Blizzard may also impose limits on certain features or restrict your access to parts or all of the Game without notice or liability. You have no interest, monetary or otherwise, in any feature or content contained in the Game.

14. Dispute Resolution and Governing Law

a. Informal Negotiations. To expedite resolution and control the cost of any dispute, controversy or claim related to this License Agreement (ï¿½Disputeï¿½), you and Blizzard agree to first attempt to negotiate any Dispute (except those Disputes expressly provided below) informally for at least 30 days before initiating any arbitration or court proceeding. Such informal negotiations commence upon written notice from one person to the other. Blizzard will send its notice to your billing address and email you a copy to the email address you have provided to us. You will send your notice to Blizzard Entertainment, Inc., P.O. Box 18979, Irvine CA 92623, attn: Legal Department.

b. Binding Arbitration. If you and Blizzard are unable to resolve a Dispute through informal negotiations, either you or Blizzard may elect to have the Dispute (except those Disputes expressly excluded below) finally and exclusively resolved by binding arbitration. Any election to arbitrate by one party shall be final and binding on the other. YOU UNDERSTAND THAT ABSENT THIS PROVISION, YOU WOULD HAVE THE RIGHT TO SUE IN COURT AND HAVE A JURY TRIAL. The arbitration shall be commenced and conducted under the Commercial Arbitration Rules of the American Arbitration Association (ï¿½AAAï¿½) and, where appropriate, the AAAï¿½s Supplementary Procedures for Consumer Related Disputes (ï¿½AAA Consumer Rulesï¿½), both of which are available that the AAA website www.adr.org. The determination of whether a Dispute is subject to arbitration shall be governed by the Federal Arbitration Act and determined by a court rather than an arbitrator. Your arbitration fees and your share of arbitrator compensation shall be governed by the AAA Rules and, where appropriate, limited by the AAA Consumer Rules. If such costs are determined by the arbitrator to be excessive, Blizzard will pay all arbitration fees and expenses. The arbitration may be conducted in person, through the submission of documents, by phone or online. The arbitrator will make a decision in writing, but need not provide a statement of reasons unless requested by a party. The arbitrator must follow applicable law, and any award may be challenged if the arbitrator fails to do so. Except as otherwise provided in this License Agreement, you and Blizzard may litigate in court to compel arbitration, stay proceeding pending arbitration, or to confirm, modify, vacate or enter judgment on the award entered by the arbitrator.

c. Restrictions. You and Blizzard agree that any arbitration shall be limited to the Dispute between Blizzard and you individually. To the full extent permitted by law, (1) no arbitration shall be joined with any other; (2) there is no right or authority for any Dispute to be arbitrated on a class-action basis or to utilize class action procedures; and (3) there is no right or authority for any Dispute to be brought in a purported representative capacity on behalf of the general public or any other persons.

d. Exceptions to Informal Negotiations and Arbitration. You and Blizzard agree that the following Disputes are not subject to the above provisions concerning informal negotiations and binding arbitration: (1) any Disputes seeking to enforce or protect, or concerning the validity of, any of your or Blizzardï¿½s intellectual property

rights; (2) any Dispute related to, or arising from, allegations of theft, piracy, invasion of privacy or unauthorized use; and (3) any claim for injunctive relief.

e. Location. If you are a resident of the United States, any arbitration will take place at any reasonable location convenient for you. For residents outside the United States, any arbitration shall be initiated in the County of Los Angeles, State of California, United States of America. Any Dispute not subject to arbitration (other than claims proceeding in any small claims court), or where no election to arbitrate has been made, shall be decided by a court of competent jurisdiction within the County of Los Angeles, State of California, United States of America, and you and Blizzard agree to submit to the personal jurisdiction of that court.

f. Governing Law. Except as expressly provided otherwise, this License Agreement shall be is governed by, and will be construed under, the Laws of the United States of America and the law of the State of Delaware, without regard to choice of law principles. The application of the United Nations Convention on Contracts for the International Sale of Goods is expressly excluded. For our customers who purchased a license to the Game in, and are a resident of, Canada, Australia, Singapore, or New Zealand, other laws may apply if choose not to agree to arbitrate as set forth above, and in such an event, shall affect this Agreement only to the extent required by such jurisdiction. In such a case, this Agreement shall be interpreted to give maximum effect to the terms and conditions hereof. If you purchased your license to the Game in New Zealand, and are a resident of New Zealand, The New Zealand Consumer Guarantees Act of 1993 ("Act") may apply to the Game and/or the Service as supplied by Blizzard to you. If the Act applies, then notwithstanding any other provision in this License Agreement, you may have rights or remedies as set out in the Act which may apply in addition to, or, to the extent that they are inconsistent, instead of, the rights or remedies set out in this License Agreement. Those who choose to access the Service from locations outside of the United States, Canada, Australia, Singapore, or New Zealand do so on their own initiative and are responsible for compliance with local laws if and to the extent local laws are applicable.

g. Severability. You and Blizzard agree that if any portion Section 14 is found illegal or unenforceable (except any portion of 14(d)) that portion shall be severed and the remainder of the Section shall be given full force and effect. If Section 14(d) is found to be illegal or unenforceable then neither you nor Blizzard will elect to arbitrate any Dispute falling within that portion of Section 14(d) found to be illegal or unenforceable and such Dispute shall be decided by a court of competent jurisdiction within the County of Los Angeles, State of California, United States of America, and you and Blizzard agree to submit to the personal jurisdiction of that court.

15. Miscellaneous. This License Agreement constitutes and contains the entire agreement between the parties with respect to the subject matter hereof and supersedes any prior oral or written agreements, provided, however, that this Agreement shall coexist with, and shall not supersede, the Terms of Use. To the extent that the provisions of this Agreement conflict with the provisions of the Terms of Use, the conflicting provisions in the Terms of Use shall govern.

I hereby acknowledge that I have read and understand the foregoing License Agreement and agree that by clicking ï¿½Acceptï¿½ or installing the Game Client I am acknowledging my agreement to be bound by the terms and conditions of this License Agreement.

© 2003-2006 Blizzard Entertainment, Inc. All rights reserved. The Burning Crusade is a trademark, and Warcraft, World of Warcraft, and Blizzard Entertainment are registered trademarks of Blizzard Entertainment, Inc.

≈JS 44 (Rev. 11/05)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)    **NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.**

## I. (a) PLAINTIFFS

Antonio Hernandez, Individually and on behalf of all others similarly situated,

**DEFENDANTS**

Internet Gaming Entertainment, Ltd. and IGE U.S. LLC

**07 - 21403**

(b) County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)

C. Richard Newsome, Newsome Law Firm, 20 N. Orange Ave., Suite 800, Orlando, Florida 32801, Ph. (407) 648-5977

Attorneys (If Known)

CIV-COHN

(d) Check County Where Action Arose: ☑ MIAMI- DADE   ☐ MONROE   ☐ BROWARD   ☐ PALM BEACH   ☐ MARTIN   ☐ ST. LUCIE   ☐ INDIAN RIVER   ☐ OKEECHOBEE HIGHLANDS

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff
☑ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☑ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☑ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☑ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☑ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Re-filed (see VI below)
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. RELATED/RE-FILED CASE(S).

(See instructions second page):

a) Re-filed Case ☐ YES ☑ NO   b) Related Cases ☐ YES ☑ NO

JUDGE _____   DOCKET NUMBER _____

## VII. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (**Do not cite jurisdictional statutes unless diversity**):

LENGTH OF TRIAL via _10_ days estimated (for both sides to try entire case)

## VIII. REQUESTED IN COMPLAINT:

☑ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $ _____   CHECK YES only if demanded in complaint:
JURY DEMAND: ☑ Yes ☐ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE

SIGNATURE OF ATTORNEY OF RECORD

DATE 5/30/07

**FOR OFFICE USE ONLY**

AMOUNT _____   RECEIPT # 960587 IFP _____

05/31/07