# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 07-21403-Civ-COHN/SNOW

| | |
|---|---|
| ANTONIO HERNANDEZ, Individually and<br>on behalf of all others similarly situated, | ) )<br>) |
| Plaintiff, | )<br>) |
| v. | )<br>) |
| INTERNET GAMING ENTERTAINMENT, LTD.,<br>a foreign corporation, and | ) )<br>) |
| IGE U.S. LLC.,<br>a Delaware corporation, | )<br>)<br>) |
| Defendants. | )<br>) |

**Amended Class Action Complaint**

Plaintiff, ANTONIO HERNANDEZ, individually, and on behalf of all others similarly situated ("Mr. Hernandez"), by and through undersigned counsel, hereby sues Defendants, INTERNET GAMING ENTERTAINMENT, LTD. and IGE U.S. LLC. (collectively, "IGE" or "Defendants"), and alleges as follows:

## I.    Preliminary Statement

1.    This case involves IGE's calculated decision to reap substantial profits by knowingly interfering with, and substantially impairing and diminishing the intended use and enjoyment associated with consumer agreements between Blizzard Entertainment and subscribers to its virtual world called World of Warcraft® (hereinafter "Subscribers" or "Consumer-Subscribers").

2.    Specifically, over the past several years IGE has received tens of millions, if not hundreds of millions, of dollars by selling *World of Warcraft®* virtual property or currency (commonly referred to as "gold") generated by cheap labor in third world countries. The process of

1

Dockets.Justia.com

generating virtual assets and then selling them through eBay or other industry websites is known as "gold farming," "real money trade" or "RMT."

3.      IGE's gold farming activities not only substantially impair and diminish the use, enjoyment and satisfaction Consumer-Subscribers obtain by earning, through the expenditure of vast amounts of time and energy, virtual assets within *World of Warcraft*®, they also violate the express terms of agreements Subscribers enter into to participate in *World of Warcraft*®. Indeed, the express terms of Blizzard Entertainment's agreements with its Subscribers for *World of Warcraft*® specifically prohibit the sale or other commercial activity related to the sale of any *World of Warcraft*® virtual assets or property.

4.      Through this lawsuit, Mr. Hernandez, both individually and on behalf of all other similarly situated Subscribers, seeks declaratory and injunctive relief, as well as damages, based on IGE's gold farming activities.

II.    **Parties**

5.      Plaintiff, Mr. Hernandez, is an individual who presently, and at all times material hereto, was a resident of Orlando, Florida. Blizzard Entertainment, Inc. is a Delaware corporation and a premier publisher of entertainment software, including the franchise that owns and operates a virtual world called *World of Warcraft*®. During the relevant time period, Mr. Hernandez: (1) was a paying subscriber to Blizzard Entertainment's *World of Warcraft*®; (2) spent hundreds of hours online in *World of Warcraft*®; (3) spent in excess of fifty dollars purchasing *World of Warcraft*® software; (4) spent in excess of fifty dollars purchasing Blizzard Entertainment's Burning Crusade expansion software; and (5) spent fifteen dollars per month in subscription fees to participate in *World of Warcraft*®.

2

6.      Defendant, INTERNET GAMING ENTERTAINMENT, LTD., is a foreign corporation with its principal place of business in Hong Kong, China, with offices in Miami Beach, Florida and Beverly Hills, California.   INTERNET GAMING ENTERTAINMENT, LTD. is a global company engaged in the business of generating and selling virtual assets.

7.      Defendant, IGE U.S. LLC., is a Delaware corporation with its principal place of business at 105 N.W. 43rd Street, Boca Raton, Florida, 33431.  IGE U.S. LLC. holds itself out to the world as a management service provider engaged in the business of generating and selling virtual assets.   IGE U.S. LLC. is an affiliated company of Defendant, INTERNET GAMING ENTERTAINMENT, LTD.

## III.    Jurisdiction and Venue

8.      This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(a) and 1332(d), because the amount in controversy exceeds $5 million exclusive of interest and costs, and more than two-thirds of the members of the putative Class are citizens of states different from that of Defendants.

9.      This case has been filed in the Miami Division of this District because a substantial part of the acts or omissions giving rise to the claims in this action occurred in this judicial District, and Defendants may be found within this judicial District.  Venue is proper pursuant to 28 U.S.C. § 1391.  Indeed, one of Defendants' three primary offices is located at 635 Euclid Avenue, Suite 222, Miami Beach, Florida, 33139.

10.     Moreover, Defendants, through their employees, agents, and other representatives who reside and/or transact business in this District, implemented their fraudulent marketing and sales scheme and conspiracy in this District, and nationwide, through their Miami Beach and Boca Raton

offices. Additionally, Defendants' activities affected Class Members who reside or transact business throughout the United States including this District.

11.    Further, Defendants submitted themselves to the jurisdiction of this Court by committing tortious acts within this state and judicial District.

## IV.    Facts

### A.    Overview of Blizzard Entertainment's Virtual World Called *World of Warcraft*®

12.    Virtual Worlds, which are also referred to as "massively populated persistent worlds," "synthetic worlds," and "massively multiplayer online role playing games"("MMORPGs"), are online computer-generated environments that a large number of consumers can access simultaneously. During the last ten (10) years, virtual worlds have grown from a relatively obscure internet phenomena into a multi-billion dollar industry with over twenty (20) million subscribers across the globe participating on a regular basis in more than 150 active virtual worlds.

13.    Similar to the predictions made in the 1990s about the growth of the World Wide Web, 2007 expert predictions are that virtual worlds will continue to grow dramatically in the future. One prominent research group recently projected that "80 percent of active internet users (and Fortune 500 enterprises)" will participate in virtual worlds by the end of 2011.

14.    In order to participate in a virtual world, like *World of Warcraft*®, a consumer must purchase the virtual world software and a license to use same, sign up for an account, select a username and password, and then begin paying a monthly subscription fee to the provider/publisher. These consumers are referred to herein as "Subscribers" or "Consumer-Subscribers."

15.    In addition to the items above, in order to become a *World of Warcraft*® Subscriber, a consumer must agree to be bound by the terms of Blizzard Entertainment's End User License

4

Agreement ("EULA") and Terms of Use Agreement ("ToU"), copies of which are attached hereto as Exhibits "A" and "B." The terms of the EULA must be accepted before a Subscriber can install the *World of Warcraft*® proprietary software on his or her personal computer, and the terms of the ToU must be accepted before a Subscriber can create an account and access the *World of Warcraft*® virtual world.

16.     Once the Subscriber completes the process above, he or she selects an "avatar," which is the 3-D body or "character" that represents the Subscriber in the virtual world.  The Subscriber controls their avatar through their keyboard to interact with the environment.  Through their avatar, Subscribers can move throughout the virtual world, communicate with other Subscribers and engage in a host of activities depending on the design of the particular virtual world.

17.     An important aspect of virtual worlds is the social interaction between Subscribers. Communities of Subscribers typically develop inside a virtual world, with Subscribers forming complex social relationships with each other and larger groups.

18.     Virtual worlds also have their own economies which generally include the buying and selling of virtual goods through the use of in-game virtual currency.

19.     Central to the design and operation of all major virtual worlds, *World of Warcraft*® has a property system with all the familiar real-world features, such as exclusive ownership, persistence of rights and a currency system to support trade.  As in the real world, property and resources are limited in virtual worlds.

20.     The currency in *World of Warcraft*® is the virtual gold coin simply referred to as "gold."  With this gold, a Subscriber can purchase almost anything he or she needs, including skills,

food, water, transportation, clothing and equipment. A Subscriber earns gold by performing tasks or by collecting or making goods that are then sold to other Subscribers or virtual vendors.

21.    A virtual auction house inside *World of Warcraft*® is used by Subscribers to buy and sell items. This virtual auction house works much the same as eBay. To sell an item, a Subscriber sets a minimum bid and posts the item on an auction board that can be viewed by all Subscribers. Once a specified time period expires, the highest bidder wins the item and pays for it with gold. Once payment is received through *World of Warcraft's*® internal e-mail system, the item is likewise sent to the winner's *World of Warcraft*® in-world mail box.

22.    As with real world economies, the cost of goods fluctuates based on: (1) supply and demand; and (2) the supply of *World of Warcraft*® gold.

23.    While not necessarily the case in all virtual worlds, in order to ensure the integrity of *World of Warcraft's*® virtual world, Blizzard Entertainment's EULA and ToU expressly prohibit the sale of virtual assets for real money. This prohibition protects the integrity of *World of Warcraft*®, ensures that the competitive playing field within *World of Warcraft*® is level, and makes certain that the time, energy and effort expanded by Subscribers is not negatively impacted by others who use real money to purchase scarce and limited virtual resources.

24.    Specifically, Blizzard Entertainment's ToU agreement with its Subscribers states that:

> [Y]ou may not sell items for "real" money or otherwise exchange items for value outside of the [virtual world].

(*See* Exhibit "B" at p. 8)

**B.    IGE's Illicit Gold Marketing and Sales Scheme**

25.    Despite the fact that gold farming within *World of Warcraft*® is expressly prohibited by Blizzard Entertainment's EULA and ToU, Defendants, by and through their employees, agents

and affiliates, engage in the business of generating, marketing, distributing and selling *World of Warcraft*® gold for real money (the "Scheme").

26.    Under the Scheme, a typical transaction with Defendants for the sale and purchase of gold within *World of Warcraft*® works something like this:

a.    The buyer visits Defendants' website, www.IGE.com.  The buyer is then directed to a page on Defendants' website where he or she selects the particular server (called a "realm" in *World of Warcraft*®) where the buyer's avatar is located.

b.    The buyer then selects the amount of gold they wish to buy; there is a fixed price in real dollars for various amounts of gold listed on the IGE website. Buyers are given the option of purchasing as little as 50 gold, to as much as 24,000 gold per order.  For example, on the *World of Warcraft's*® Durotan server, the current price of 24,000 *World of Warcraft*® gold is $2,399.82.

c.    Once the buyer selects the amount of gold he or she wishes to buy, he or she must select the method of payment.  Defendants' website gives several options for payment, including paying by credit card or PayPal.

d.    After selecting the method of payment and entering the appropriate payment information (i.e., name, address and credit card account number), the buyer must type in the name of the avatar to whom the gold should be delivered. Once the buyer gives Defendants this information, the buyer is given a receipt and told they will receive their gold within a few hours.

     e.     Within the specified time period, Defendants deliver the newly purchased virtual gold to the buyer's avatar through *World of Warcraft's*® in-game mail system. To receive the gold, the buyer simply opens up the piece of mail delivered from an avatar controlled by Defendants and opens the attached virtual envelope containing the gold.

27.     Since Blizzard Entertainment released *World of Warcraft*® on November 27, 2004, Defendants have sold massive quantities of *World of Warcraft*® gold for hundreds of millions of dollars.

28.     Defendants engage in the fraudulent scheme and conspiracy to generate, market, distribute and sell *World of Warcraft*® gold through the efforts of hundreds of employees, agents and affiliates who work at the direction and control of, and/or for the benefit of, IGE. These employees, agents and affiliates, are commonly referred to as gold farmers ("IGE gold farmers"). IGE gold farmers are often citizens of developing third world countries who spend up to 14 hours per day, or more, logged into *World of Warcraft*® collecting resources and *World of Warcraft*® gold. IGE gold farmers log into *World of Warcraft*® through accounts paid for, and/or controlled, in whole or in part, directly or indirectly, by Defendants. At the direction of Defendants, through channels of distribution designed, established, maintained and/or controlled by Defendants, IGE gold farmers then deliver gold through the *World of Warcraft*® mail system to Subscribers who have paid real money as described above. IGE gold farmers are co-conspirators with Defendants in this fraudulent marketing and sales scheme.

8

### C.    IGE's Conspiracy

29.    In addition to IGE's direct sale of *World of Warcraft*® gold through its website, IGE has entered into agreements with other individuals and/or entities not directly employed by IGE ("co-conspirators"), to:

> a.    generate, or "farm" for, *World of Warcraft*® gold which IGE then sells to Subscribers for real money;
>
> b.    promote and market the sale of *World of Warcraft*® gold owned or under the control of IGE through chat spam, virtual junk mail, pay per click campaigns, and search engine marketing;
>
> c.    obtain labor to generate, or "farm" for, *World of Warcraft*® gold which IGE then sells to Subscribers for real money;
>
> d.    distribute *World of Warcraft*® gold to Subscribers;
>
> e.    sell *World of Warcraft*® gold to Subscribers for real money; and
>
> f.    collect the proceeds from the sale of *World of Warcraft*® gold to Subscribers.

30.    All the aforementioned agreements were made in furtherance of a fraudulent scheme and conspiracy to generate, market, distribute and sell *World of Warcraft*® gold in direct violation of: (1) Blizzard Entertainment's EULA; (2) Blizzard Entertainment's ToU; (3) Florida Statutory provisions; (4) consumer protection statutes of the remaining 49 states, the District of Columbia and Puerto Rico; and (5) other common law.

### D.    Irreparable Harm and Impact Caused by IGE's Illicit Marketing and Sales Scheme and Conspiracy

31.    The volume of gold IGE sells in *World of Warcraft*® is so large that it causes irreparable harm to Subscribers by impairing and diminishing their use and enjoyment of the *World*

*of Warcraft®* virtual world. Defendants' conduct also causes substantial economic harm, above and beyond the purchase price paid by Subscribers for the software and subscription fees, including:

a. **Lost Time.** IGE gold farmers strip out already scarce and limited virtual world resources and materials. *World of Warcraft®* is designed to have limited resources and materials, such as virtual metal ore, plants, leather and other items ("materials"). Subscribers must harvest, or "farm," materials and sell them to earn virtual gold. "Farming" materials is one of the primary sources of revenue in the *World of Warcraft®* economy. IGE gold farmers, however, systematically harvest these materials on a massive commercial scale. The result is a shortage of materials for Subscribers who comply with the Blizzard agreements by not buying gold from IGE, making it vastly more time consuming for such Subscribers to earn the gold needed to participate. This loss of time, conservatively, amounts to hundreds of thousands of hours of Subscriber time and causes the irreparable harm of driving Subscribers away from *World of Warcraft®*. The economic harm incurred by this loss of time is in the millions of dollars.

b. **Devaluation of Currency.** Because of IGE's infusion of gold from its unlawful "gold farming" activities, virtual currency held by Subscribers is constantly devalued. The devaluation of virtual currency has an economic value in real dollars, as reflected on Defendants' website. This devaluation of the *World of Warcraft®* gold currency, which is caused by Defendants' sale of gold in *World of Warcraft®*, is in the millions of dollars.

10

32.     A virtual world like *World of Warcraft*® derives utility and benefit from the fact that it creates a fantasy world experience.  Subscribers are willing to pay a substantial portion of their discretionary income for entertainment to participate in the *World of Warcraft*® fantasy.  When Defendants engage in RMT, it impairs and diminishes the use, enjoyment and the fantasy experience Subscribers pay for.  Such harm is irreparable and there is no adequate remedy at law to address it.  Some examples of the ways the Subscriber experience is impaired and diminished include, but are not limited to, the following:

a.     **Chat Spamming.**  Defendants, through IGE gold farmers and other co-conspirators within their direct or indirect control, constantly "spam" advertisements to promote their illicit Scheme.  Subscribers are routinely sent un-invited messages by Defendants and their agents through the *World of Warcraft*® "chat" channel and mail system advertising the sale of gold for real dollars.  During the last few months the amount of chat spam has increased substantially to the point where Subscribers can receive spam messages advertising *World of Warcraft*® gold five or six times every hour.  This "chat spam" destroys the fantasy experience Subscribers pay for and has caused Subscribers to surrender their subscriptions.

b.     **Junk Mail.**  Defendants, by and through their agents, employees, affiliates, IGE gold farmers and other co-conspirators within their direct or indirect control, routinely send junk mail advertisements to Subscribers advertising the sale of gold for real dollars.  This junk mail takes up space in the Subscribers' mail boxes and causes them to waste time sorting through it.

11

This junk mail impairs, interrupts and pollutes the use and enjoyment of the *World of Warcraft*® fantasy experience Subscribers pay for and has caused Subscribers to surrender their subscriptions.

c.    **Less Time for Content.**  Subscribers, like Plaintiff, have a limited amount of time in a given week available to participate in *World of Warcraft*®.  Because of the additional time required to collect materials and earn currency as the result of material shortages caused by Defendants, IGE gold farmers and their co-conspirators, Subscribers have less time to participate in, and experience other content in the virtual world.  This other content consists of, among other things, raids, instances, quests, battlegrounds, arena contests and world PvP.  The inability to experience such other content is caused by the additional time Subscribers expend as a result of Defendants' actions.

d.    **Competitively Disadvantaged.**  Subscribers who do not buy gold are at a competitive disadvantage to Subscribers who purchase gold from Defendants ("Gold-Buying Subscribers") in certain aspects of *World of Warcraft*®, including, Arena competitions.  These Subscribers who do not purchase gold from Defendants are held hostage by this dilemma: they must either continue to experience *World of Warcraft*® at an unfair competitive disadvantage or violate the EULA and the ToU by purchasing gold from the Defendants.  This dilemma, and the resulting competitive disadvantage for Subscribers who do not buy gold from Defendants, impairs and diminishes the *World of*

12

*Warcraft*® experience Subscribers pay for by purchasing software and paying

monthly subscription fees.

**V.**   **Class Action Allegations**

33.   Pursuant to Rule 23 of the *Federal Rules of Civil Procedure*, Plaintiff brings this

action on behalf of himself, a Class, and a Sub-Class defined as follows:

**Subscriber Class**

> All persons in the United States and its territories who, for purposes other than resale, purchased Blizzard Entertainment's *World of Warcraft*® software and paid subscription fees at any time from November 27, 2004 until the present.

**Gold-Buying Subscribers Sub-Class**

> All persons in the United States and its territories who, for purposes other than resale, purchased Blizzard Entertainment's *World of Warcraft*® software and paid subscription fees at any time from November 27, 2004 until the present, and who bought any *World of Warcraft*® gold for real money.

Excluded from the Class are (a) Defendants and any entities in which any Defendant has a

controlling interest, their legal representatives, officers, directors, assignees and successors; and (b)

any co-conspirators, including any Subscribers who sold *World of Warcraft*® gold to IGE. Also

excluded from the Class are any judges or justices to whom this action is assigned, as well as any

relative of such judge(s) or justice(s) within the third degree of relationship, and the spouse of any

such person, as well as any attorneys of record in this case.

34.   Plaintiff contends that this suit is properly maintainable as a class action pursuant to

Rules 23(b)(1), (b)(2), and (b)(3) of the *Federal Rules of Civil Procedure*.

## A.     Numerosity

35.     The Class consists of numerous individuals throughout the United States, thereby making individual joinder impractical, in satisfaction of Rule 23(a)(1).  Plaintiff is unable to provide an approximation of the number of potential class members, but notes that there are approximately 2 million subscribers to *World of Warcraft*® in North America.  The disposition of the claims of the Class members in a single class action will provide substantial benefits to all parties and to the Court.

## B.     Typicality

36.     The claims of the representative Plaintiff are typical of the claims of the Class, as required by Rule 23(a)(3), in that Mr. Hernandez, like all Class members, purchased Blizzard Entertainment's software and paid for subscriptions to *World of Warcraft*®.  Like all Class Members, Mr. Hernandez has been damaged by Defendants' misconduct, in that, among other things, his use and enjoyment of *World of Warcraft*® has been impaired and diminished.  He has thus lost the benefit of that which he paid for when he purchased Blizzard Entertainment's software and paid his monthly subscriptions to *World of Warcraft*®.

## C.     Common Questions of Law and Fact

37.     The factual and legal basis for Defendants' fraudulent marketing and sales scheme and conspiracy is common to all members of the Class and represents a common thread of misconduct resulting in injury to Plaintiff and all members of the Class.

38.     Questions of law and fact are common to Plaintiff and the Class abound in this case, and those questions predominate over any questions affecting individual Class members, within the meaning of Rule 23(a)(2) and (b)(3).  These common questions of law and fact include, but are not limited to, the following:

(a)    Whether Defendants, by and through their employees, agents and affiliates, generated *World of Warcraft®* gold for re-sale with real money;

(b)    Whether Defendants, by and through their employees, agents and affiliates, marketed *World of Warcraft®* gold for re-sale with real money;

(c)    Whether Defendants, by and through their employees, agents and affiliates, distributed *World of Warcraft®* gold for re-sale with real money;

(d)    Whether Defendants, by and through their employees, agents and affiliates, sold *World of Warcraft®* gold for real money;

(e)    Whether Defendants engaged in a conspiracy with others to generate, market, distribute and/or sell *World of Warcraft®* gold;

(f)    Whether Defendants engaged in unfair and deceptive acts or practices of generating, marketing, distributing and/or selling *World of Warcraft®* gold as alleged herein;

(g)    Whether Defendants violated Florida's or any other state's consumer protection statutes;

(h)    Whether Defendants' unfair and deceptive acts or practices, or other violations of other state's consumer protection statutes, proximately caused harm to Plaintiff and the Class;

(i)    Whether Plaintiff and the Class have been injured by Defendants' conduct, including both money damages and irreparable harm, for which there is no adequate remedy at law;

(j)    Whether Plaintiff and other members of the Class had a business relationship

15

with Blizzard Entertainment through their subscriptions for *World of Warcraft*® ("Business Relationship");

(k)    Whether Defendants had actual or constructive knowledge of the Business Relationship;

(l)    Whether Defendants intentionally and unjustifiably interfered with the Business Relationship through their generation, marketing, distribution and sales of *World of Warcraft*® gold, and their conspiracy to sell *World of Warcraft*® gold, as alleged herein;

(m)    Whether Defendants' intentional and unjustified interference with the Business Relationship proximately caused injury to Plaintiff and members of the Class, including both money damages and irreparable harm with no adequate remedy at law;

(n)    Whether Defendants are liable under state conspiracy and/or state concert of action and/or state aiding and abetting/facilitating laws;

(o)    Whether Plaintiff and the Class are entitled to declaratory and injunctive relief, or other equitable remedy for Defendants' conduct, including an injunction;

(p)    Whether Plaintiff and members of the Class are entitled to compensatory damages, and, if so, the nature of such damages;

(q)    Whether Plaintiff and members of the Class are entitled to punitive damages, treble damages or exemplary damages and, if so, the nature of such damages;

(r)    Whether Plaintiff and members of the Class are entitled to an award of

16

reasonable attorneys' fees, prejudgment interest, post-judgment interest and cost of suit.

**D.     Adequacy**

39.     Plaintiff will fairly and adequately represent and protect the interests of the Class, as required by Rule 23(a)(4). Plaintiff has retained counsel with substantial experience and expertise. Plaintiff and his counsel are committed to the vigorous prosecution of this action on behalf of the Class and have the financial resources to do so. Neither Plaintiff nor his counsel has any interest adverse to the interests of the Class.

**E.     Class Certification under Rules 23(b)(1) and (b)(2)**

40.     The prosecution of separate actions by or against individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class. The adjudications would establish incompatible standards of conduct for the Defendants which would, as a practical matter, be dispositive of the interests of the other class members not parties to the adjudications or would substantially impair or impede their ability to protect their interests. Class certification under Rule 23(b)(1) is therefore appropriate.

41.     Defendants also have acted or refused to act on grounds generally applicable to all members of the Class, thereby making appropriate declaratory and injunctive relief with respect to the Class as a whole and class certification under Rule 23(b)(2).

**F.     Superiority**

42.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy under Rule 23(b)(3). Absent a class action, most members of the Class likely would find the cost of litigating their claims to be prohibitive, and will have no effective

17

remedy at law. The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves resources of the courts and the litigants, and promotes consistency and efficiency of adjudication.

## VI.    Causes of Action

### CLAIM I
**Breach of Third Party Beneficiary Contract**

43.    Plaintiff incorporates by reference thereto paragraphs 1-42 as if fully set forth herein.

44.    **Valid contract.** Defendants and their co-conspirators entered into valid contracts with Blizzard Entertainment by creating *World of Warcraft*® accounts and agreeing to the EULA and the ToU. Both the EULA and ToU are standard contracts agreed to by all Subscribers.

45.    **Plaintiff not a party.** Plaintiff is not a party to the contracts between Defendants and Blizzard Entertainment.

46.    **Plaintiff and Class are intended beneficiaries.** Defendants and Blizzard Entertainment intended that their contracts directly benefit Plaintiff and the Class. Both the EULA and ToU prohibit real money trade and the generation, marketing, distribution and sale of *World of Warcraft*® gold for real money, and this prohibition was for the benefit of all Subscribers, including Plaintiff and the Class.

47.    **The contract is breached.** Defendants and their co-conspirators breached their contracts with Blizzard Entertainment by generating, marketing, distributing and selling *World of Warcraft*® gold, and conspiring to do the same.

48.    **Damages.** Plaintiff and the Class have suffered irreparable harm and damages, both of which were directly and proximately caused by Defendants' breach of the aforesaid contracts through their fraudulent scheme and conspiracy alleged herein. Such irreparable harm includes the

inability to use and enjoy the *World of Warcraft®* virtual world consistent with the express terms of the EULA and ToU, for which there is no adequate remedy at law. Such money damages include compensatory, exemplary and punitive damages.

**WHEREFORE**, Plaintiff, on behalf of himself and the Class, respectfully seeks the relief set forth below.

## CLAIM II
### Conspiracy to Breach Third-Party Beneficiary Contract

49.     Plaintiff incorporates by reference thereto paragraphs 1-42 as if fully set forth herein.

50.     **Conspiracy between two or more parties.**  Beginning at least as early as November 27, 2004, and continuing thereafter through the present time, Defendants and their co-conspirators, as described above, engaged in an ongoing fraudulent scheme and conspiracy and/or concerted action to generate, market, distribute and sell *World of Warcraft®* gold for real money.

51.     **Unlawful acts by unlawful means and overt acts.**  Pursuant to their scheme and conspiracy alleged herein, Defendants and their co-conspirators engaged in a wide range of activities which violated Blizzard Entertainment's EULA and ToU to the disadvantage of Plaintiff and the Class. These activities have been set forth above and throughout this Amended Complaint, and have been incorporated by reference herein, including, but not limited to the generation, marketing, distribution and sale of *World of Warcraft®* gold.  These acts constitute a breach of third-party beneficiary contract with Blizzard Entertainment alleged above.

52.     **Damages.**  Defendants' conspiracy and concerted actions have directly and proximately caused irreparable harm and damages to Plaintiff and the Class.  As a direct and proximate result of Defendants' fraudulent scheme and conspiracy perpetrated upon Plaintiff and the Class, Defendants are jointly and severally liable to Plaintiff and the Class for all harm suffered and

damages sustained, including exemplary damages, punitive damages, as well as the cost of suit and reasonable attorneys' fees.

**WHEREFORE**, Plaintiff, on behalf of himself and the Class, respectfully seeks the relief set forth below.

**CLAIM III**
**Violation of the Computer Fraud and Abuse Act**
**(18 U.S.C.A. § 1030)**

53.    Plaintiff incorporates by reference thereto paragraphs 1-42 as if fully set forth herein.

54.    Blizzard Entertainment's *World of Warcraft*® servers and Plaintiff's and the Class' personal computers are "protected computers" as defined in the Computer Fraud and Abuse Act (18 U.S.C. § 1030), through which electronic messages are received, stored and disseminated in interstate and/or foreign commerce or communication.

55.    The *World of Warcraft*® ToU specifically prohibits transmitting commercial solicitations for goods or services outside the *World of Warcraft*® universe and sending repeated unsolicited chat messages.

56.    The *World of Warcraft*® EULA specifically prohibits any commercial use of the *World of Warcraft*® virtual world, including RMT and the sale of *World of Warcraft*® gold for real money.

57.    By virtue of their use of *World of Warcraft*® accounts, Defendants and their co-conspirators were on notice of and agreed to the ToU and EULA.

58.    Defendants and their co-conspirators have knowingly and repeatedly transmitted and/or caused to be transmitted millions of unsolicited commercial messages without authorization. Defendants have also engaged in the Scheme to sell *World of Warcraft*® gold as described above.

Defendants knew or should have known that these actions would impair the operation of Blizzard's protected computers, as well as the operation of Plaintiff's and the Class' protected computers, and degrade the quality of the *World of Warcraft®* virtual experience.

59.     Defendants knowingly and intentionally accessed Plaintiff's and the Class' protected computers without authorization and with the intent to defraud as a result of such conduct, furthered the intended fraud, obtained something of value, and caused damages to Plaintiff and the Class in violation of 18 U.S.C § 1030(a)(4).

60.     Defendants knowingly and intentionally, caused, through the means of a computer used in interstate commerce, the transmission of information to Plaintiff's and the Class' protected computers and, as a result of such conduct, caused damage without authorization to said protected computers in violation of 18 U.S.C. § 1030(a)(5)(A)(i).

61.     Defendants knowingly and intentionally accessed Plaintiff's and the Class' protected computers without authorization, and as a result of such conduct recklessly caused damage to said protected computer, in violation of 18 U.S.C. § 1030(a)(5)(A)(ii).

62.     As a direct and proximate result of Defendants' actions, Plaintiffs have suffered harm in an amount to be determined at trial, but, in any event, not less than $5,000 in a one-year period.

63.     Plaintiffs seek compensatory damages under 18 U.S.C. § 1030(g) in an amount within the conscious of the jury.

64.     As a direct and proximate result of Defendants' actions, Plaintiff and the Class have suffered and continue to suffer irreparable harm for which there is no adequate remedy at law, and which will continue unless Defendants' actions are enjoined.

21

**WHEREFORE**, Plaintiff, on behalf of himself and the Class, respectfully seeks the relief set forth below.

## CLAIM IV
### Violation of Florida's Deceptive And Unfair Trade Practices Act

65.    Plaintiff incorporates by reference thereto paragraphs 1-42 as if fully set forth herein.

66.    Plaintiff brings this claim based upon Florida's Deceptive and Unfair Trade Practices Act (the "Act") found in Chapter 501 of the Florida Statutes.

67.    **Plaintiff and the Class are Consumers Under the Act.**  Plaintiff and members of the Class are "consumer[s]" and/or "interested part[ies] or persons" within the meaning of Section 501.203(6), (7), *Florida Statutes* (2006).

68.    **Trade or Commerce**.  In generating, marketing, distributing, and selling *World of Warcraft*® gold, through eBay, its proprietary websites and other avenues for real money, Defendants are engaging in "trade or commerce" within the meaning of Section 501.203(8), *Florida Statutes* (2006).

69.    **Willful Violation.**  Defendants' conduct as set forth herein was "willful" and constitutes a "violation" under the Act.  *See* §§501.2075 and 501.203(3), *Florida Statutes* (2006).

70.    **Unfair Acts or Practices.**  As defined by Section 501.204, Defendants' conduct is unlawful as it constitutes, "unfair methods of competition," "unconscionable acts or practices," and/or "unfair or deceptive acts or practices in the conduct of any trade or commerce."  *See* §501.204, *Florida Statutes* (2006).

71.    **Equitable Relief.**  Plaintiff, individually and as a representative of members of the Class, seeks the entry of a judgment declaring Defendants' conduct unlawful and enjoining

22

Defendants' unlawful conduct in the future and mandating corrective measures pursuant to Florida

Statute Section 501.211, *Florida Statutes* (2006).

72.  **Money Damages.**  Because Defendants' conduct has proximately caused harm to

Plaintiff and the Class, as set forth above, Plaintiff, individually and as representative of the

members of the Class, further requests this Court require Defendants to pay statutory damages as

prescribed by Section 501.211(2) and 501.2075, *Florida Statutes* (2006).

**WHEREFORE**, Plaintiff, on behalf of himself and the Class, respectfully seeks the relief set

forth below.

### CLAIM V
### Violation of Consumer Protection Statutes
### Of Remaining 49 States, District of Columbia and Puerto Rico

73.  Plaintiff incorporates by reference thereto paragraphs 1-42 as if fully set forth herein.

74.  **Plaintiff and the Class are Consumers Under Other State Statutes.**  Plaintiff and

the Class are individual consumers who purchased and paid for Blizzard Entertainment's *World of*

*Warcraft*® software and paid subscription fees during the relevant time period.  All 49 of the

remaining states (a separate Count having been pled above for the Plaintiff's state of residence,

Florida), the District of Columbia and Puerto Rico have enacted statutes to protect consumers against

unfair, unconscionable, deceptive or fraudulent business practices, unfair competition and false

advertising.  Most states allow consumers a private right of action under these statutes.

75.  **Unfair Acts or Practices.**  Defendants violated Blizzard Entertainment's EULA and

ToU through the fraudulent scheme and conspiracy alleged herein.  This conduct constitutes

unlawful, unfair, unconscionable, deceptive and fraudulent business practices within the meaning of

consumer protection statutes of the remaining 49 states, the District of Columbia and Puerto Rico. This scheme and conspiracy has caused substantial detriment to Plaintiff and the Class.

76.   **Irreparable Harm and Damages.**  Defendants directly and proximately caused Plaintiff and the Class to suffer irreparable harm and damages, as described above, by impairing and diminishing the use and enjoyment that Plaintiff and the Class have paid for.  As a direct and proximate result of Defendants' conduct, Plaintiff and the Class have suffered irreparable harm and damages in an amount to be determined at trial, and are entitled to declaratory and injunctive relief, damages, including compensatory and treble damages, attorneys' fees and costs of suit, and any other damages provided under these statutes.

**WHEREFORE**, Plaintiff, on behalf of himself and the Class, respectfully seeks the relief set forth below.

**CLAIM VI**
**Conspiracy**

77.   Plaintiff incorporates by reference thereto paragraphs 1-42 as if fully set forth herein.

78.   **Conspiracy Between Two or More Parties.**  Beginning at least as early as November 27, 2004, and continuing thereafter through the present time, Defendants, IGE gold farmers, and their co-conspirators, as described above, engaged in a continuing conspiracy and/or concerted action to generate, market, distribute and sell *World of Warcraft®* gold in violation of federal law and state law and Blizzard Entertainment's EULA and ToU.  In the absence of Defendants' conspiracy and/or concerted action, the use and benefits Plaintiff and the Class paid for would not have been impaired, nor would their ability to participate in *World of Warcraft®* have been negatively affected.

24

79. **Unlawful Acts by Unlawful Means and Overt Acts.** Pursuant to their common plan, design, scheme, conspiracy and/or concerted action as alleged herein, Defendants and their co-conspirators engaged in numerous overt acts in furtherance of the conspiracy, encompassing a wide range of activities, the purpose and effect of which was to violate Blizzard Entertainment's EULA and ToU agreements, and the law, to the disadvantage of Plaintiff and the Class. These activities have been set forth in detail above, and throughout this Amended Complaint, and have been incorporated by reference herein, including but not limited to the generation, marketing, distribution and sale of *World of Warcraft®* gold. These acts and/or practices constitute unlawful, unfair, unconscionable, deceptive and fraudulent business practices within the meaning of Florida's Unfair and Deceptive Practices Act as alleged above, and the consumer protection statutes of the remaining 49 states, the District of Columbia and Puerto Rico.

80. **Irreparable Harm and Damages.** Defendants' conspiracy and concerted actions have directly and proximately caused irreparable harm and damages to Plaintiff and the Class alleged above. As a direct and proximate result of Defendants' conspiracies and/or concerted actions perpetrated upon Plaintiff and the Class, Defendants are jointly and severally liable to Plaintiff and the Class for all injury and harm Plaintiff and the Class have sustained, plus the cost of suit and reasonable attorneys' fees.

**WHEREFORE**, Plaintiff, on behalf of himself and the Class, respectfully seeks the relief set forth below.

## CLAIM VII
### Tortious Interference with Business Relationship

81. Plaintiff incorporates by reference thereto all preceding paragraphs as if fully set forth herein.

25

82.    **Business Relationship.**    Plaintiff and members of the Class have a business relationship with Blizzard Entertainment.    This relationship exists through Plaintiff's and the members of the Class' monthly subscriptions with Blizzard Entertainment to participate in *World of Warcraft*®, and through their acceptance of the terms of the EULA and the ToU.

83.    **Knowledge of the Relationship.**    Defendants had actual or constructive knowledge of Plaintiff's relationship with Blizzard Entertainment.    IGE is aware that millions of Subscribers, including Plaintiff and members of the Class, subscribe to and participate in *World of Warcraft*®. IGE also has actual or constructive knowledge that millions of Subscribers, including Plaintiff and members of the Class, have agreed to Blizzard Entertainment's EULA and the ToU.

84.    **Intentional and Unjustifiable Interference.**    Defendants intentionally and unjustifiably interfered with the relationship between Plaintiff (and the Class) and Blizzard Entertainment by engaging in a fraudulent scheme and conspiracy respecting the sale of *World of Warcraft*® gold in violation of the EULA and ToU as more fully described above.

85.    **Damages.**    Defendants' interference with Plaintiff's and members of the Class' business relationship has caused and proximately caused irreparable harm and damages, including the money Plaintiff and the Class paid to purchase Blizzard Entertainment's software and for subscription fees.

**WHEREFORE**, Plaintiff, on behalf of himself and the Class, respectfully seeks the relief set forth below.

**CLAIM VIII**
**Conspiracy to Engage in Tortious Interference With**
**Business Relationship**

86.    Plaintiff incorporates by reference thereto paragraphs 1-42 as if fully set forth herein.

87.    **Conspiracy between two or more parties.**  Beginning at least as early as November 27, 2004, and continuing thereafter through the present time, Defendants and their co-conspirators, as described above, engaged in an ongoing fraudulent scheme and continuing conspiracy to generate, market, distribute and sell *World of Warcraft*® gold for real money through eBay and its website.

88.    **Unlawful acts by unlawful means and overt acts.**  Pursuant to their scheme and conspiracy alleged herein, Defendants and their co-conspirators agreed to and in fact engaged in a wide range of activities, the purpose and effect of which was to violate Blizzard Entertainment's EULA and ToU to the disadvantage of Plaintiff and the Class.  These activities have been set forth in detail above and throughout this Amended Complaint, and have been incorporated by reference herein, including, but not limited to the generation, marketing, distribution and sale of *World of Warcraft*® gold.  These acts constitute tortious interference with Plaintiff's business relationship with Blizzard Entertainment.

89.    As part of the common design, scheme and conspiracy agreed to by Defendants and their co-conspirators, they agreed to engage in the aforesaid tortious interference.  The aforesaid acts and/or practices were in furtherance thereof.

90.    **Damages.**  Defendants' fraudulent scheme and conspiracy have directly and proximately caused irreparable harm and damages to Plaintiff and the Class.  As a direct and proximate result of Defendants' scheme and conspiracy perpetrated upon Plaintiff and the Class, Defendants are jointly and severally liable to Plaintiff for all damages Plaintiff and the Class for all injury sustained.

**WHEREFORE**, Plaintiff, on behalf of himself and the Class, respectfully seeks the relief set forth below.

## CLAIM IX
### Trespass to Chattel

91.    Plaintiff incorporates by reference thereto paragraphs 1-42 as if fully set forth herein.

92.    Plaintiff and members of the Class are the owners of personal computers, servers, computer systems and associated hardware that have been interfered with by Defendants and their co-conspirators.

93.    The *World of Warcraft*® ToU specifically prohibits transmitting commercial solicitations for goods or services outside the *World of Warcraft*® universe and sending unsolicited chat messages.

94.    The *World of Warcraft*® EULA specifically prohibits any commercial use of the *World of Warcraft*® game.

95.    At all relevant times, Defendants and/or their agents and co-conspirators intentionally and without consent used, trespassed on, and interfered with Plaintiff's and the Class' property rights by engaging in the business of generating, marketing, distributing and selling *World of Warcraft*® gold for real money and the corresponding "spam" advertisements to promote for this illicit sales scheme, thereby wrongfully exercising dominion over Plaintiffs' property and depriving Plaintiff and members of the Class the legitimate use and enjoyment of their computer systems.

96.    In doing so, the Defendants and their co-conspirators intentionally intermeddled with, damaged and deprived Plaintiff and members of the Class of their computer systems, or a portion thereof.

97.    As a direct result of Defendants' and its co-conspirators' actions, Plaintiff and members of the Class have suffered and continue to suffer irreparable harm resulting in the loss of their personal time and the impairment and diminution of their use and enjoyment of the *World of*

*Warcraft®* virtual world as well as the devaluation of the Class' in-game currency, for which there is no adequate remedy at law.

**WHEREFORE**, Plaintiff, on behalf of himself and the Class, respectfully seeks the relief set forth below.

## VII. **Demand for Relief**

**WHEREFORE**, Plaintiff and the Class demand judgment against Defendants in each claim for relief, jointly and severally, and as follows:

a. Declaring the acts and practices of Defendants unlawful;

b. Enjoining Defendants from engaging in such unlawful acts and practices in the future;

c. Awarding compensatory damages, treble damages, and any other damages permitted by law, in such amounts as will be determined at trial, plus Plaintiff's costs of suit and reasonable attorneys' fees;

d. Awarding Plaintiff and the Class other appropriate equitable relief, including, but not limited to, disgorgement of all profits obtained from Defendants' wrongful conduct and declaratory relief;

e. Awarding Plaintiff and the Class pre-judgment and post-judgment interest at the maximum rate allowed by law;

f. Awarding Plaintiff and the Class their costs and expenses in this litigation, including expert fees, and reasonable attorneys' fees;

g. Awarding Plaintiff and the Class such other and further relief as may be just and proper under the circumstances.

## VIII. <u>Demand for Jury Trial</u>

Pursuant to *Federal Rules of Civil Procedure* 38(b), Plaintiff demands a trial by jury on all issues so triable.

Dated: <u>August 17, 2007</u>

Respectfully submitted,

<u>s/ C. Richard Newsome</u>
C. RICHARD NEWSOME, ESQUIRE
Florida Bar No.:  827258
Email: <u>newsome@newsomelaw.com</u>
Newsome Law Firm
20 N. Orange Ave., Suite 800
Orlando, Florida 32801
Telephone:  (407) 648-5977
Facsimile:  (407) 648-5282

DONALD E. HAVILAND, JR., ESQUIRE
Pennsylvania Bar No.: 66615
Email: <u>haviland@havilandlaw.com</u>
The Haviland Law Firm, LLC
740 S. Third Street, Third Floor
Philadelphia, PA 19147
Telephone: (215) 609-4661
Facsimile: (215) 392-4400

Attorneys for Plaintiff,
Antonio Hernandez and the Class