UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

ANTONIO HERNANDEZ, Individually and
on behalf of all others similarly situated,

       Plaintiff,

v.

INTERNET GAMING ENTERTAINMENT,
LTD., a foreign corporation, and

IGE U.S., LLC., a Delaware corporation,

       Defendants,

Case No. 07-CIV-21403-
COHN/SELTZER

---

## DEFENDANT IGE U.S., LLC'S MOTION TO STAY
## THIS ACTION PENDING ARBITRATION, OR ALTERNATIVELY,
## MOTION TO DISMISS ANY NON-ARBITRABLE CLAIMS FOR IMPROPER VENUE

       Pursuant to Section 3 of the Federal Arbitration Act, 9 U.S.C. § 3, and Federal Rule of

Civil Procedure 12(b)(3), Defendant, IGE U.S., LLC n/k/a Affinity Media Holdings, LLC, ("IGE

US") moves the Court to stay this action pending arbitration of Plaintiff, Antonio Hernandez's

("Plaintiff"), claims, and alternatively, to dismiss for improper venue any non-arbitrable claims

which are not stayed.  In support thereof, IGE US would show the Court as follows:

## I.    FACTUAL BACKGROUND

       On June 1, 2007, Plaintiff filed this action against IGE US, as well as against Defendant

Internet Gaming Entertainment, Ltd. ("Internet Gaming Entertainment"), a Hong Kong

corporation not yet served with process, asserting nine (9) causes of action against Defendants.

All of Plaintiff's claims relate to the online game World of Warcraft, ("WOW"), which is owned

and operated by Blizzard Entertainment, Inc. ("Blizzard"), a non-party to this action.  WOW is

an online computer generated environment that a large number of subscribers can access through

the internet simultaneously. Am. Comp., ¶ 12. Plaintiff alleges that he is a subscriber to WOW, that he has purchased the WOW software from Blizzard and that he pays a monthly subscription fee to Blizzard to play WOW. Id. at ¶ 5. In order to become a subscriber to WOW, a person must agree to be bound by the terms of Blizzard's End User License Agreement ("EULA") and its Terms of Use Agreement ("ToU"). Id. at ¶ 15. Plaintiff is a party, along with Blizzard, to both the ToU and the EULA agreements. Id.

Subscribers play WOW by creating and/or selecting an online character, or "avatar," to represent them in the virtual world of WOW. Id. at ¶ 16. Through their avatar, players can navigate the virtual WOW world, and communicate and interact with other players' avatars. Id. As part of the virtual world, players can, through their avatars, obtain online WOW currency, called "gold." Id. at ¶ 20. Players are then able to use their in-game gold to purchase things their avatar needs in the game, such as skills, food, water, transportation and equipment. Id. Players may obtain gold in the virtual WOW world by performing tasks or by collecting or making goods which they then sell, within the game, to other subscribers or virtual vendors. Id.

Plaintiff alleges that IGE US, along with Internet Gaming Entertainment and other unnamed alleged co-conspirators, have engaged in a "fraudulent scheme and conspiracy to generate, market, distribute and sell *World of Warcraft* gold" for real money outside of the WOW game. Id. at ¶ 28. Plaintiff claims such actions violate a provision in the Blizzard ToU and EULA agreements providing that subscribers to WOW agree they "may not sell items for 'real' money or otherwise exchange items for value outside of the Game." Id. at ¶¶ 25, 30.

Plaintiff also alleges the ToU and EULA prohibit transmitting commercial solicitations for goods and services, prohibit sending repeated unsolicited chat messages, and prohibit any commercial use of the WOW virtual world, and that IGE US has knowingly and repeatedly

transmitted or caused to be transmitted millions of unsolicited commercial messages to Plaintiff and other subscribers in WOW without authorization.  Id. at ¶¶ 55-59.  Plaintiff alleges that IGE US, along with Internet Gaming Entertainment, have agreed to the terms of the Blizzard EULA and ToU agreements through the opening and maintaining of WOW accounts in furtherance of Defendants' allegedly improper efforts to buy and sell WOW gold.  Id. at ¶ 44.

Based on these allegations, Plaintiff, on behalf of himself and two alleged nation-wide classes of plaintiffs consisting of WOW subscribers, asserts causes of action for:  (1) Breach of Third-party Beneficiary Contract (Count I); (2) Conspiracy to Breach Third-party Beneficiary Contract (Count II); (3) Violation of the Computer Fraud and Abuse Act (Count III); (4) Violation of Florida's Deceptive and Unfair Trade Practices Act (Count IV); (5) Violation of Other States Consumer Protection Statutes (Count V); (6) Conspiracy (Count VI); (7) Tortious Interference With Business Relationship (Count VII); (8) Conspiracy to Engage in Tortious Interference With Business Relationship (Count VIII); and (9) Trespass to Chattel (Count IX).

The ToU and EULA agreements, which are attached as exhibits to Plaintiff's Amended Complaint, each contain substantially similar dispute resolution provisions, which provide, in relevant part:

> Dispute Resolution and Governing Law
>
> Informal Negotiations.  To expedite resolution and control the cost of **any dispute, controversy or claim related to this Agreement ("Dispute")**, you and Blizzard agree to first attempt to negotiate any Dispute (except those Disputes expressly provided below) informally for at least thirty (30) days before initiating any arbitration or court proceeding.  Such informal negotiations commence upon written notice from one person to the other.  Blizzard will send its notice to your billing address and email you a copy to the email address you have provided to us.  You will send your notice to Blizzard Entertainment, Inc., P.O. Box 18979, Irvine CA 92623, ATTN: Legal Department.

Binding Arbitration.  If you and Blizzard are unable to resolve a Dispute through informal negotiations, **either you or Blizzard may elect to have the Dispute (except those Disputes expressly excluded below) finally and exclusively resolved by binding arbitration.  Any election to arbitrate by one party shall be final and binding on the other**.  YOU UNDERSTAND THAT ABSENT THIS PROVISION, YOU WOULD HAVE THE RIGHT TO SUE IN COURT AND HAVE A JURY TRIAL.  The arbitration shall be commenced and conducted under the Commercial Arbitration Rules of the American Arbitration Association ("AAA") and, where appropriate, the AAA's Supplementary Procedures for Consumer Related Disputes ("AAA Consumer Rules"), both of which are available at the AAA website www.adr.org.  The determination of whether a Dispute is subject to arbitration shall be governed by the Federal Arbitration Act and determined by a court rather than an arbitrator.  Your arbitration fees and your share of arbitrator compensation shall be governed by the AAA Rules and, where appropriate, limited by the AAA Consumer Rules.  If such costs are determined by the arbitrator to be excessive, Blizzard will pay all arbitration fees and expenses.  The arbitration may be conducted in person, through the submission of documents, by phone or online.  The arbitrator will make a decision in writing, but need not provide a statement of reasons unless requested by a party. The arbitrator must follow applicable law, and any award may be challenged if the arbitrator fails to do so.  Except as otherwise provided in this Agreement, you and Blizzard may litigate in court to compel arbitration, stay proceeding pending arbitration, or to confirm, modify, vacate or enter judgment on the award entered by the arbitrator.

Restrictions. You and Blizzard agree that any arbitration shall be limited to the Dispute between Blizzard and you individually.  To the full extent permitted by law, (1) no arbitration shall be joined with any other; (2) there is no right or authority for any Dispute to be arbitrated on a class-action basis or to utilize class action procedures; and (3) there is no right or authority for any Dispute to be brought in a purported representative capacity on behalf of the general public or any other persons.

Exceptions to Informal Negotiations and Arbitration.  You and Blizzard agree that the following Disputes are not subject to the above provisions concerning informal negotiations and binding arbitration: (1) any Disputes seeking to enforce or protect, or concerning the validity of, any of your or Blizzard's intellectual property rights; (2) any Dispute related to, or arising from, allegations of theft, piracy, invasion of privacy or unauthorized use; and (3) any claim for injunctive relief.

> Location.  If you are a resident of the United States, any arbitration will take place at any reasonable location within the United States convenient for you.  For residents outside the United States, any arbitration shall be initiated in the County of Los Angeles, State of California, United States of America.  **Any Dispute not subject to arbitration (other than claims proceeding in any small claims court), or where no election to arbitrate has been made, shall be decided by a court of competent jurisdiction within the County of Los Angeles, State of California, United States of America, and you and Blizzard agree to submit to the personal jurisdiction of that court.**

Am. Comp., Ex. A, ¶ 14, Ex. B, ¶ 16.  (Bold emphasis added).

Plaintiff asserts that he, and the alleged classes he purports to represent, are third-party beneficiaries of the ToU and EULA agreements between IGE US and Blizzard, and thereby have the right to enforce the provisions of the ToU and EULA agreements.  Am. Comp., ¶ 46.  As an alleged third-party beneficiary, Plaintiff is bound by the terms of these contracts, including the above-quoted dispute resolution provision.  IGE US has elected to arbitrate this dispute in accordance with both the ToU and EULA.  A true and correct copy of IGE US's written notice of this election to Plaintiff is attached hereto as **Exhibit A**.

IGE US files this Motion in order to have this action stayed pending arbitration of Plaintiff's claims in accordance with the ToU and EULA agreements, or alternatively to have any claims determined to be non-arbitrable and not stayed, dismissed for improper venue as contrary to the mandatory forum selection clause in the ToU and EULA.

## II.    Local Rule 7.1(A)(3) Certification

Counsel for IGE US has conferred with counsel for the Plaintiff, who stated that he was not able to consent to the relief requested by this Motion.

### III.    MEMORANDUM OF LAW

#### A.    Plaintiff's Claims Must Be Decided in Arbitration.

##### 1.    The Federal Arbitration Act Applies.

The arbitration provision at issue provides that "[t]he determination of whether a Dispute is subject to arbitration shall be governed by the Federal Arbitration Act and determined by a court rather than an arbitrator."  ToU, ¶ 14, EULA, ¶ 16.  The FAA applies to an arbitration provision in "a contract evidencing a transaction involving commerce."  9 U.S.C. § 2.  The Supreme Court has "interpreted the term 'involving commerce' in the FAA as the functional equivalent of 'affecting commerce'-words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power."  Citizens Bank v. Alafabco, Inc., 539 U.S. 52, 56 (2003) (citation omitted).  The Supreme Court has further explained the phrase "evidencing a transaction" means only that the transaction turns out, in fact, to have involved interstate commerce, "even if the parties did not contemplate an interstate commerce connection."  Allied-Bruce Terminix Cos., Inc. v. Dobson, 513 U.S. 265, 277-81 (1995).

Here, the ToU and EULA agreements plainly apply to and regulate the WOW game, which as alleged by Plaintiff, is played through the internet by numerous individual paying subscribers through computers located across the United States and worldwide.  Both the ToU and EULA agreements apply to these subscribers and regulate their dealings with Blizzard and with each other in the game.  Certainly, then, the ToU and EULA relate to interstate commerce by Blizzard, Plaintiff and the subscribers, and accordingly, the FAA applies to the agreements.

The FAA mandates that written agreements to arbitrate controversies "shall be valid, irrevocable, and enforceable."  9 U.S.C. § 2.  By enacting the FAA, "Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial

6

forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." Southland Corp. v. Keating, 465 U.S. 1, 10 (1984). The FAA "mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985) (emphasis in original).

Pursuant to Section 3 of the FAA, 9 U.S.C. § 3, if "the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . ." Under this provision, an issue is "referable to arbitration," and litigation thereon must be stayed pending such arbitration, where: (i) a valid written agreement to arbitrate exists between the parties; and (ii) an arbitrable issue exists, i.e., the dispute in question falls within the scope of the arbitration agreement. Home Quality Mgmt., Inc. v. Ace American Ins. Co., 381 F. Supp. 2d 1363, 1365 (S.D. Fla. 2005); Pennzoil Exploration & Prod. Co. v. Ramco Energy Ltd., 139 F.3d 1061, 1065 (5th Cir. 1998). Both elements are met in this case.[1]

**2.      The Arbitration Provisions in the EULA and ToU Agreements Between IGE US and Blizzard are Valid and Apply to Plaintiff.**

Plaintiff alleges that he, and the members of the alleged classes, are parties to the ToU and EULA with Blizzard. Am. Comp., ¶¶ 14-15. Thus, Plaintiff, and the purported class members, have already specifically agreed to the dispute resolution and arbitration provisions in

---

[1] Courts also look to whether the right to arbitrate has been waived. See Home Quality Mgmt., Inc., 381 F. Supp. 2d at 1365. "A party may be deemed to have waived its right to arbitrate a dispute when a party seeking arbitration substantially invokes the judicial process to the detriment or prejudice of the other party." Stone v. E.F. Hutton & Co., Inc., 898 F.2d 1542, 1543 (11th Cir. 1990) (internal quotations omitted). Here, there can be no waiver because IGE US promptly filed this Motion and has not otherwise participated in the litigation process in any manner to support a waiver. See Home Quality Mgmt., Inc., 381 F. Supp. 2d at 1367.

the ToU and EULA agreements, albeit with Blizzard. In addition, Plaintiff alleges that IGE US is a party to the ToU and EULA agreements with Blizzard. Id. at ¶ 44. Plaintiff asserts that he, as well as the members of the alleged classes, are intended third-party beneficiaries of the ToU and EULA agreements between IGE US and Blizzard. Id. at ¶ 46. Based on this alleged third-party beneficiary status, Plaintiff brings claims against IGE US in Count I of the Amended Complaint for breach of the ToU and EULA, and in Count II for conspiracy to breach the ToU and EULA agreements.

The FAA creates a presumption in favor of arbitrability and therefore, "any doubts concerning the scope of arbitrable provisions should be resolved in favor of arbitration." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985). "Thus, as with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability." Id.

Although federal law establishes the enforceability of arbitration agreements, state law governs the interpretation and formation of such agreements. Employers Ins. of Wausau v. Bright Metal Specialties, Inc., 251 F.3d 1316, 1322 (11th Cir. 2001). In this case, the ToU and EULA both provide they are to be governed by Delaware law. See ToU, ¶ 16F, EULA, ¶ 14F. Under Delaware law, a third-party beneficiary stands in the shoes of the promisee, and is therefore subject to the terms and conditions of the contract it attempts to enforce. See e.g., NAMA Holdings, LLC v. Related World Market Center, LLC, 922 A.2d 417, 431 (Del. Ch. 2007) ("When the beneficiary accepts the benefits of a contract, it also must accept the burdens expressed in that document.").[2]

---

[2] This principle of law is the same in Florida. See Consolidated Bathurst, Ltd. v. Rederiaktiebolaget Gustaf Erikson, 645 F. Supp. 884, 887 (S.D. Fla. 1986).

For this reason, even a non-signatory third-party beneficiary is bound by the terms of a contract containing an arbitration clause.  See id. (where a contract contains an arbitration clause, a third-party beneficiary is bound by the arbitration provision to the same extent as one of the signatories); see also E.I. Dupont de Nemours and Co. v. Rhone Poulenc Fiber and Resin Intermediates, S.A.S., 269 F.3d 187, 195 (3d Cir. 2001) ("[W]hether seeking to avoid or compel arbitration, a third-party beneficiary has been bound by contract terms where its claim arises out of the underlying contract to which it was an intended third-party beneficiary.").[3]

As third-party beneficiaries,[4] Plaintiff, as well as the other purported class members, are bound by the terms of the contracts they seek to enforce.  This includes the arbitration provisions in the ToU and EULA agreements, which plainly provide that "any dispute, controversy or claim related to" either the ToU or EULA must, if informal negotiations fail, be arbitrated upon the election of a party to the agreements.  IGE US has notified Plaintiff of its election to arbitrate Plaintiff's disputes, and has requested that Plaintiff participate in the required informal negotiations prior to arbitration.  See Exhibit A.  Accordingly, a valid agreement to arbitrate exists between IGE US and Blizzard, which agreement to arbitrate is applicable to Plaintiff and the alleged class members as third-party beneficiaries.  See Interpool Ltd. v. Through Transport Mut. Ins. Ass'n Ltd., 635 F. Supp. 1503, 1505-06 (S.D. Fla. 1985) (granting stay pending

---

[3] Florida law is identical on this point.  See Gottfried, Inc. v. Paulette Koch Real Estate, Inc., 778 So. 2d 1089, 1090 (Fla. 4th DCA 2001) ("[A] third party beneficiary to a contract can be compelled to arbitrate."); Terminix Int'l Co., LP v. Ponzio, 693 So. 2d 104, 109 (Fla. 5th DCA 1997) ("As third party beneficiaries, these additional plaintiffs are bound by the arbitration provision.").

[4] IGE US does not concede that Plaintiff, or the other purported class members, are intended third-party beneficiaries of the ToU and EULA between IGE US and Blizzard, but merely takes Plaintiff's allegations as true for the purposes of this Motion.

arbitration and holding that plaintiffs who asserted claims as third-party beneficiaries of a contract were bound by the arbitration provision in the contract).

### 3.    Plaintiff's Claims are Within the Scope of the Arbitration Clause.

Because the ToU and EULA constitute valid agreements to arbitrate enforceable against Plaintiff and the purported class members, the next step in the FAA analysis is for the Court to determine whether the disputes in question fall within the scope of the arbitration agreement. See Home Quality Mgmt., Inc., 381 F. Supp. 2d at 1365. In deciding this question, any doubts regarding the scope of an arbitration clause should be resolved in favor of arbitration. Mitsubishi Motors Corp., 473 U.S. at 626. A motion for arbitration should not be denied "unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation that could cover the dispute at issue." Wick v. Atlantic Marine, Inc., 605 F.2d 166, 168 (5th Cir. 1979).

The arbitration provision in this case provides that "any dispute, controversy or claim related to" the ToU or EULA agreements, subject to certain exceptions discussed in more detail below, must be arbitrated. This provision, because it applies to any dispute, controversy or claim which is "related to" the agreement, is clearly a broad arbitration clause. See McBro Planning and Dev. Co. v. Triangle Elec. Const. Co., Inc., 741 F.2d 342, 343 (11th Cir. 1984) (finding to be broad an arbitration clause which required any controversy "arising out of or relating to this [contract] or the breach thereof" to be settled by arbitration).

In Telecom Italia, SPA v. Wholesale Telecom Corp., 248 F.3d 1109, 1116 (11th Cir. 2001), the Eleventh Circuit examined the meaning of the phrases "arising out of" and "relate to" in the context of an arbitration provision. The Court held that while "[d]isputes that are not related-with at least some directness-to performance of duties specified by the contract do not

count as disputes 'arising out of' the contract," "where the dispute occurs as a fairly direct result of the performance of contractual duties" then the dispute "can fairly be said to arise out of <u>or</u> relate to the contract in question, and arbitration is required." <u>Id.</u> (emphasis added).  Thus, a dispute can be said to "relate to" a contract if it occurs as the "fairly direct result" of the performance or breach of duties created by the contract.  <u>See id.</u>

In this case, there can be no doubt that Plaintiff's claims for breach of the ToU and EULA agreements in Count I, as well as his claims for conspiracy to breach the ToU and EULA agreements in Count II, are directly "related to" the agreements and therefore must be arbitrated.[5] In addition, Plaintiff's other causes of action also all are based on disputes that have occurred as a "fairly direct result" of the alleged breach or nonperformance of the duties created by the ToU and EULA agreements.

a.    <b>Plaintiff's Statutory Claims are Subject to Arbitration.</b>

Plaintiff asserts statutory claims in Counts III through VI which are also subject to arbitration because the underlying basis for the claims, as for all of Plaintiff's claims, directly relates to the ToU and EULA.  First, in Plaintiff's claim in Count III for alleged violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, ("CFAA"), Plaintiff alleges that Defendants violated the CFAA by transmitting millions of unsolicited messages to Plaintiff's and the proposed class members' computers, and by accessing the Plaintiff's and the purported class members' protected computers "without authorization" for these purposes.  Am. Comp., ¶¶ 58-61.  Plaintiff alleges that these actions were "without authorization" because he alleges that:  (1)

---

[5] Because there can be no conspiracy to breach a contract without the underlying breach, the conspiracy claim in Count II is certainly "related to" the ToU and EULA agreements.  <u>See</u> <u>Czarnecki v. Roller</u>, 726 F. Supp. 832, 840 (S.D. Fla. 1989) ("An act which does not constitute a basis for an action cannot serve the basis for a conspiracy claim.").

the "ToU specifically prohibits transmitting commercial solicitations for goods or services" outside WOW; (2) the "EULA specifically prohibits any commercial use" of the WOW virtual world, including the sale of WOW gold for real money; and (3) that "Defendant and their co-conspirators were on notice of and agreed to the ToU and EULA." Am. Comp., ¶¶ 55-57. These allegations make clear that Plaintiff's CFAA claims arise as a "fairly direct result" of the ToU and EULA agreements, such that they "relate to" the ToU and/or EULA and are within the scope of the arbitration clause. See Telecom Italia, SPA, 248 F.3d at 1116.[6]

The fact that Plaintiff's CFAA claims are statutorily based also does not change this analysis. As the Supreme Court stated in Mitsubishi Motors Corp., 473 U.S. at 626, "[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial forum . . . . Having made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." Thus, "reviewing courts must scrutinize a statute's text and legislative history, and ascertain whether an inherent conflict exists between enforcement of the arbitration agreement and the statute's underlying purposes." Cunningham v. Fleetwood Homes of Georgia, Inc., 253 F.3d 611, 614 (11th Cir. 2001).

---

[6] This result does not change by virtue of the arbitration clause's exception for disputes "related to, or arising from, allegations of theft, piracy, invasion of privacy or unauthorized use." See supra p. 4. First, the Plaintiff's Count III CFAA claim does not allege a claim for theft, piracy or invasion of privacy. See Count III passim. Further, to the extent that the claim alleges "unauthorized" conduct, it alleges "unauthorized" transmission of unsolicited commercial messages to the putative plaintiff class members, Am. Comp., ¶ 58, and "unauthorized" "access[]" to the class members' computers, id. at ¶ 59, and not "unauthorized" or non-licensed use of the Blizzard software in the first instance, of Blizzard's intellectual property rights, or the like.

There is nothing in the CFAA's text or legislative history to indicate any intent to prohibit arbitration of such claims.  See Travelclick, Inc. v. Open Hospitality, Inc., Case No. 1-04-cv-01224, 2004 WL 1687204, at *5 (S.D.N.Y. July 27, 2004) ("Congress did not intend for claims arising out of the Computer Fraud and Abuse Act . . . to be nonarbitrable.").  Thus, Plaintiff's CFAA claim is subject to arbitration.  See George S. May Intern. Co. v. Hostetler, Case No. 1-04-cv-01606, 2004 WL 1197395, at *5 (N.D. Ill. May 28, 2004) ("Arbitrable issues include . . . the factual underpinnings of the CFAA and copyright infringement counts.").

Plaintiff's claims in Count IV for violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") similarly relate to the alleged breaches of the ToU and EULA agreements.  Specifically, Plaintiff asserts Defendants' alleged actions in "generating, marketing, distributing, and selling" WOW gold for real money in violation of the ToU and EULA constitute the alleged "unfair methods of competition," "unconscionable acts or practices," and/or "unfair or deceptive acts or practices in the conduct of any trade or commerce."  Am. Comp., ¶¶ 68, 70.  Thus, the FDUTPA claim directly relates to the provisions of the ToU and EULA and is therefore arbitrable.  See Telecom Italia, SPA, 248 F.3d at 1116.

Florida law is clear that FDUTPA claims may be submitted to arbitration.  See Orkin Exterminating Co. v. Petsch, 872 So. 2d 259, 263 (Fla. 2d DCA 2004); See also Aztec Med. Servs., Inc. v. Burger, 792 So. 2d 617, 620 (Fla. 4th DCA 2001).  A FDUTPA claim is subject to arbitration as long as the arbitration clause itself does not contravene one of the remedial purposes of the statute.  Fonte v. AT&T Wireless Services, Inc., 903 So. 2d 1019, 1024 (Fla. 4th DCA 2005).  Here, neither the ToU or EULA prohibit a statutory award of attorneys fees.  Compare id. (holding that an arbitration clause's prohibition on attorneys fees defeated FDUTPA's remedial purpose).  Furthermore, although the arbitration clause prohibits class-wide

arbitration, Florida courts have also found that this sort of class-wide arbitration prohibition does not defeat any of the FDUTPA's remedial purposes. See id. at 1024-25 (finding "arbitration clause's bar on class representation does not defeat any of the remedial purposes of FDUTPA" because "neither the text nor legislative history of FDUTPA suggests that the legislature intended to confer a non-waivable right to class representation"). Accordingly, there is no reason that Plaintiff's FDUTPA claims should not be subject to arbitration.

In Count V, Plaintiff contends generally, and without citing any specific statutes, that Defendants violated the consumer protection statutes of each of the remaining 49 states, the District of Columbia, and Puerto Rico, and brings a claim on behalf of purported classes. The purported class claim in Count V is based on the same allegations as Plaintiff's claim for violations of the FDUTPA in Count IV.[7]  Accordingly, it is also subject to arbitration and should similarly be stayed pending arbitration.

Plaintiff's claim in Count VI is labeled simply "Conspiracy," but is pleaded as a claim for conspiracy to breach the FDUTPA and other consumer protection statutes. Am. Comp., ¶¶ 77-80. Because a conspiracy claim cannot exist independent of the underlying alleged wrong, the same analysis above regarding Plaintiff's Count IV and V claims also applies to the conspiracy claim in Count VI. See Czarnecki v. Roller, 726 F. Supp. at 840.

### b.    Plaintiff's Tort Claims are Subject to Arbitration.

In Counts VII, VIII and IX, Plaintiff asserts causes of action for various torts based on the same basic underlying allegations as his breach of contract and statutory claims. It is well established that a party may not avoid broad language in an arbitration clause by attempting to

---

[7] The majority of state consumer protection statutes, like Florida's FDUTPA, are based on the federal statute prohibiting unfair and deceptive trade practices in the marketplace, 15 U.S.C. § 45.

cast its complaint in tort rather than contract. <u>McBro Planning and Dev. Co. v. Triangle Elec. Const. Co., Inc.</u>, 741 F.2d 342, 344 (11th Cir. 1984). The Eleventh Circuit has required arbitration of tort claims where the tort could not have occurred but for a breach of contract. <u>See Gregory v. Electro-Mechanical Corp.</u>, 83 F.3d 382, 384 (11th Cir. 1996) (requiring arbitration of fraud claim on the theory that the tort claim would never have arisen had the defendant honored the contract). Moreover, as noted above, where a claim arises as "a fairly direct result" of a contractual obligation, it will be subject to arbitration under an arbitration clause requiring disputes which "relate to" a contract to be arbitrated. <u>See Telecom Italia, SPA</u>, 248 F.3d at 1116.

Plaintiff's claim in Count VII asserts tortious interference with a business relationship against IGE US. Specifically, Plaintiff alleges that he and the other purported class members have a business relationship with Blizzard through their monthly subscriptions to WOW, and through their acceptance of the terms of the EULA and ToU. Am. Comp., ¶ 82. Plaintiff further alleges that IGE US has interfered with that relationship by allegedly selling WOW gold "in violation of the EULA and TOU." <u>Id.</u> at ¶ 84.

Plaintiff's claim for tortious interference in Count VII is directly related to the ToU and EULA, without which there would be no alleged duty not to sell WOW gold. Thus, Plaintiff's tortious interference with business relationship claim is subject to arbitration. <u>See Gregory</u>, 83 F.3d at 384 (requiring arbitration of the fraud claim where it would never have arisen had the defendant honored the contract). With respect to Plaintiff's claim in Count VIII for conspiracy to engage in tortious interference with business relationship, it also is subject to arbitration because the conspiracy claim cannot exist independent of the underlying tort claim.

Plaintiff's allegations in Count IX for trespass to chattel make clear that this claim is also directly related to alleged breaches of the ToU and EULA. Specifically, Plaintiff alleges that (1)

the ToU "specifically prohibits transmitting commercial solicitations for goods and services outside the *World of Warcraft* universe and sending unsolicited chat messages;" (2) the EULA "specifically prohibits any commercial use of the *World of Warcraft* game;" and (3) Defendants participated in such activities contrary to the agreements.  Am. Comp., ¶¶ 93-97.  Therefore, Plaintiff's claim for trespass to chattel is also subject to arbitration.

> **c.     Plaintiff's Ancillary Request for Injunctive Relief Should Be Stayed Pending Arbitration.**

The primary basis of this action is Plaintiff's claims for monetary damages.  Specifically, in his prayer for relief, Plaintiff seeks the recovery of compensatory damages, treble damages, punitive damages and disgorgement of profits in connection with each of his nine (9) causes of action.  Am. Comp., p. 29.  However, Plaintiff also asserts an ancillary request for the Court to enter judgment "[e]njoining Defendants from engaging in such unlawful acts and practices in the future."  Am. Id.  The arbitration provision in the ToU and EULA exclude from arbitration "any claim for injunctive relief."  However even if this provision means that the determination of Plaintiff's claim for a permanent injunction is non-arbitrable, for reasons of judicial economy and expediency, the Court should stay this one ancillary aspect of Plaintiff's claims pending arbitration of the substantive aspect of his claims.

Courts have discretion to stay non-arbitrable aspects of claims pending the determination of the arbitrable claims.  Klay v. All Defendants, 389 F.3d 1191, 1204 (11th Cir. 2004).  Such action is particularly appropriate if the arbitrable claims predominate in the lawsuit, or if the non-arbitrable claims are of questionable merit.  See Genesco, Inc. v. T. Kakiuchi & Co., Ltd., 815 F.2d 840, 856 (2d Cir. 1987).  In addition, where the determination of a non-arbitrable issue would depend on the determination of an arbitrable issue, a stay of the non-arbitrable issue is appropriate.  Summer Rain v. The Donning Co./Publishers Inc., 964 F.2d 1455, 1461 (4th Cir.

1992) ("[W]e are of the opinion that litigation on the non-arbitrable issues which depend on arbitrable issues should be stayed pending arbitration.").

In the factually similar case of <u>Eco Water Systems, LLC v. Kris, Inc.</u>, Case No. 0-06-cv-03105, 2007 WL 1231851, at *6 (D. Minn. May 4, 2007), in which the arbitration clause excluded claims for injunctive relief, the Court compelled arbitration for the non-injunctive claims, and stayed litigation on the claims for injunctive relief pending arbitration, because the Court found the arbitrable issues predominated and the outcome of the non-arbitrable claims would largely depend upon the decision of the arbitrator on the arbitrable claims.

In this case, the arbitrable issues predominate as it is only Plaintiff's ancillary request for a permanent injunction which would not come within the scope of the arbitration clause, while the substantive issues of all of Plaintiff's causes of action present arbitrable matters.  In addition, because Plaintiff's request to enjoin "Defendants from engaging in such unlawful acts and practices in the future" would depend on the arbitrator first finding that any of Defendants' actions were in fact "unlawful," the non-arbitrable issue of the permanent injunction depends upon the determination of the arbitrable issues.  Accordingly, as in <u>Eco Water Systems, LLC</u>, the Court should stay Plaintiff's claim for a permanent injunction pending arbitration.

> **B.    Alternatively, to the Extent Any of Plaintiff's Claims are Deemed Non-Arbitrable and Are Not Stayed, They Should be Dismissed for Improper Venue as Contrary to the Forum Selection Clause in the ToU and EULA.**

Again, for reasons of judicial economy, Plaintiff's claim for a permanent injunction should be stayed pending arbitration.  However, alternatively, if this issue is not stayed, or to the extent the Court finds any of Plaintiff's claims to be non-arbitrable and not subject to a stay pending arbitration, then all such claims should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(3) for improper venue.  <u>Lipcon v. Underwriters at Lloyd's, London</u>, 148 F.3d

1285, 1290 (11th Cir. 1998) (explaining that motions to dismiss premised upon forum selection clauses are properly brought pursuant to Rule 12(b)(3) as motions to dismiss for improper venue).[8]

The Eleventh Circuit analyzes forum selection clauses under a "mandatory/permissive" test, "enforcing only those clauses that unambiguously designate the forum in which the parties must enforce their rights under the contract." Florida Polk County v. Prison Health Servs., Inc., 170 F.3d 1081, 1084 n.8 (11th Cir. 1999).   A permissive clause authorizes jurisdiction in a designated forum but does not prohibit litigation elsewhere, while a mandatory clause "dictates an exclusive forum for litigation under the contract." Global Satellite Communication Co. v. Starmill U.K. Ltd., 378 F.3d 1269, 1272 (11th Cir. 2004).

The ToU and EULA both provide that "[a]ny Dispute not subject to arbitration (other than claims proceeding in any small claims court), or where no election to arbitrate has been made, shall be decided by a court of competent jurisdiction within the County of Los Angeles, State of California, United States of America, and you and Blizzard agree to submit to personal jurisdiction of that court." See ToU, ¶ 16E, EULA, ¶ 14E.  Because it uses the word "shall," the forum selection clause in this case is mandatory, and dictates that the County of Los Angeles is the exclusive forum.  See Global Satellite Communication Co., 378 F.3d at 1272 (holding forum selection clause providing that "[v]enue shall be in Broward County," is most reasonably interpreted to mandate venue in Broward County alone because it uses the imperative "shall").

Such a mandatory forum selection clause will be enforced unless: (1) its formation was induced by fraud or overreaching; (2) the plaintiff effectively would be deprived of its day in

---

[8] Again, as an alleged third-party beneficiary, Plaintiff must accept both the benefits and the burdens of the subject contracts, and is thus bound by the forum selection clause in the ToU and EULA.

court because of inconvenience or unfairness of the chosen forum; (3) the fundamental unfairness of the chosen law would deprive the plaintiff of a remedy; or (4) enforcement of the provision would contravene a strong public policy. Lipcon, 148 F.3d at 1292; Stewart Organization, Inc. v. Ricoh Corp., 810 F.2d 1066, 1069 (11th Cir. 1987).

None of these factors apply in this case. Specifically, there is no allegation that the forum selection clause at issue was induced by fraud or overreaching. Rather, Plaintiff voluntarily accepted these same terms of the ToU and EULA when he became a subscriber to WOW. Am. Comp., ¶ 82. Further, enforcement of the forum selection would not be unreasonably inconvenient or unfair. As Plaintiff purports to represent nationwide classes of individuals, to the extent that all or part of this action is not stayed pending arbitration, presumably, it would not be unreasonably inconvenient to bring the suit in California as it would in Florida. Moreover, Plaintiff alleges that Defendant, Internet Gaming Entertainment has an office in California. Am. Comp., ¶ 6. Also, as indicated in the ToU and EULA, Blizzard's office is located in Irvine, California. See ToU, ¶ 16A, EULA, ¶ 14A. Although Blizzard is a non-party, Plaintiff's claims are directly related to and founded upon the provisions of Blizzard's ToU and EULA. Presumably, the primary witnesses concerning the meaning of the terms of the Blizzard contracts also would be located in California. In addition, it is likely that Blizzard's subscriber records, and other documentary evidence necessary to any action, also are located in California. Accordingly, it would not be unreasonably inconvenient for any litigation to proceed in California as required by the forum selection clause.

WHEREFORE, Defendant IGE US, LLC moves the Court to stay this action pending arbitration of Plaintiff, Antonio Hernandez's claims, or alternatively, to dismiss for improper venue any non-arbitrable claims which are not stayed, together with such other and further relief as the Court deems just and proper.

**FOLEY & LARDNER LLP**


  /s/ Scott D. Richburg
Scott D. Richburg
Florida Bar No. 0064475
srichburg@foley.com
C. Ryan Maloney
Florida Bar No. 0652903
cmaloney@foley.com
Foley & Lardner LLP
One Independent Drive, Suite 1300
Jacksonville, FL 32202-5017
P. O. Box 240
Jacksonville, FL 32201-0240
Telephone: 904.359.2000
Facsimile: 904.359.8700

and

Richard S. Davis
Florida Bar No. 0991082
rdavis@foley.com
Foley & Lardner LLP
111 North Orange Avenue
Suite 1800
Orlando, FL 32801-2386
Phone: 407-423-7656
Fax: 407-648-1743

Attorneys for Defendant, IGE U.S., LLC

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed on this 25th

day of October, 2007, with the Clerk of the Court using the CM/ECF system which will send

notice of the electronic filing to:

C. Richard Newsome              Donald E. Haviland, Jr.
Newsome Law Firm               The Haviland law Firm, LLC
20 N. Orange Avenue, Suite 800      740 S. Third Street, Third Floor
Orlando, FL  32801              Philadelphia, PA  19147


            /s/  Scott D. Richburg
            Attorney