**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**Case No. 07-21403-Civ-COHN/SNOW**

ANTONIO HERNANDEZ, Individually and
on behalf of all others similarly situated,

           Plaintiff,

v.

INTERNET GAMING ENTERTAINMENT, LTD.,
a foreign corporation, and

IGE U.S. LLC.,
a Delaware corporation,

           Defendants.

_____/

**PLAINTIFFS' RESPONSE IN OPPOSITION TO IGE U.S., LLC'S MOTION TO
STAY THIS ACTION PENDING ARBITRATION, OR ALTERNATIVELY,
MOTION TO DISMISS ANY NON-ARBITRABLE CLAIMS
<u>FOR IMPROPER VENUE</u>**

      Plaintiff, ANTONIO HERNANDEZ, by and through undersigned counsel, hereby

responds in opposition to Defendant, IGE U.S., LLC n/k/a AFFINITY MEDIA HOLDINGS,

LLC's ("IGE US"), Motion to Stay this Action Pending Arbitration, or Alternatively, Motion to

Dismiss Any Non-Arbitrable Claims for Improper Venue.  In support, Plaintiff states as follows:

**I.**      <u>SUMMARY OF ARGUMENT</u>

      Plaintiffs' Amended Class Action Complaint asserts claims against IGE US primarily to

enjoin its gold farming activities, which Plaintiffs allege substantially impair the use, enjoyment

and satisfaction consumer-subscribers, like Mr. Hernandez, pay for to participate in the virtual

world called *World of Warcraft*®.[1]  Moreover, Plaintiffs allege that IGE US' gold farming activities violate the terms of the End User License Agreement ("EULA") and Terms of Use ("TOU") agreement Plaintiff and the Class entered into with Blizzard Entertainment to participate in *World of Warcraft*®.

In response to Plaintiffs' Amended Class Action Complaint, IGE US has moved to stay these proceedings pending arbitration, or alternatively, to dismiss Plaintiffs' claims for improper venue based on the arbitration and forum selection clauses included within the EULA and TOU.  In substance, IGE US' Motion attempts to invoke the subject arbitration and forum selection provisions without first agreeing to be bound by the terms of these agreements as a whole.

Notwithstanding the irony and inequity of IGE US' position that Plaintiffs are bound by the EULA and TOA but it is not, IGE US' Motion should be denied for the following reasons:

(1)  The claims included within Plaintiffs' Amended Class Action Complaint are expressly excluded from the arbitration clause contained in the EULA and TOU;

(2)  IGE US has not conceded or properly established the validity of the arbitration clause included within the EULA and TOU;

(3)  Plaintiffs' Statutory Consumer and computer fraud claims must be decided by this        Court to afford Plaintiffs the meaningful relief these statutes provide;

---

[1] *See* Plaintiffs' Amended Class Action Complaint [DE 5], filed August 17, 2007, for a detailed discussion of how *World of Warcraft*® works and how Defendants' activities injure Plaintiffs and the Class.

2

(4)  Plaintiffs' class claims are not arbitrable because Plaintiffs' agreement with

Blizzard Entertainment cannot be construed as a waiver of Plaintiffs' right to

prosecute class action claims against an entity, like IGE US, who violates the

terms of the EULA or TOU;

(5)  Plaintiffs' forum selection clause with Blizzard does not apply to Plaintiffs'

dispute with IGE US.

II.    **ARGUMENT**

A.    **Plaintiffs' Claims are Specifically Excluded from the Arbitration Clause**
**Contained in the EULA and TOU**

The arbitration clause IGE US seeks to enforce against Plaintiffs is not applicable to

Plaintiffs' claims; indeed, those claims are expressly and specifically excluded from the

application of those arbitration provisions.  Accordingly, Plaintiffs cannot be required to submit

to arbitration.  *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574,

582 (a party "cannot be required to submit to arbitration any dispute which he has not agreed so

to submit").

Defendants seek to assert the informal negotiation and arbitration clauses contained in

the *World of Warcraft*® contracts between Blizzard and Subscribers of *World of Warcraft*®.

There are three relevant clauses.  First, the Informal Negotiations clause provides, in pertinent

part:

> "To expedite resolution and control the cost of any dispute, controversy or claim
> related to this Agreement ("Dispute"), you and Blizzard agree to first attempt to
> negotiate any Dispute **(except those Disputes expressly provided below)**
> informally for at least thirty (30) days before initiating any arbitration or court
> proceeding."

*World of Warcraft*® EULA [DE 5 at Exhibit "A"] ¶ 14.a, *World of Warcraft*® TOU [DE 5 at Exhibit "B"] ¶ 16.A (emphasis added).  The Binding Arbitration clause provides, also in pertinent part:

> "If you and Blizzard are unable to resolve a Dispute through informal negotiations, either you or Blizzard may elect to have the Dispute **(except those Disputes expressly excluded below)** finally and exclusively resolved by binding arbitration."

EULA ¶ 14.b, TOU ¶ 16.B (emphasis added).  Finally, the third clause provides key limitations to the scope of the Informal Negotiations and Binding Arbitration clauses:

> "**You and Blizzard agree that the following Disputes are not subject to the above provisions concerning informal negotiations and binding arbitration**: (1) any Disputes seeking to enforce or protect, or concerning the validity of, any of your or Blizzard's intellectual property rights; **(2) any Dispute related to, or arising from, allegations of** theft, piracy, invasion of privacy or **unauthorized use**; and **(3) any claim for injunctive relief**." EULA ¶ 14.d, TOU ¶ 16.D (emphasis added).

> 1.    Plaintiffs' Claims, which are all premised upon IGE US' "unauthorized use" of *World of Warcraft*®, are expressly excluded from the Arbitration Clause.

As discussed below, each of Plaintiffs' nine (9) claims arise from allegations of IGE US' unauthorized use of *World of Warcraft*®.  Pursuant to the express term of the EULA and the TOU, such allegations of unauthorized use extinguish any right IGE US may have had to compel arbitration.

Claims I and II.  Plaintiffs' first two claims allege breach of third-party beneficiary contract and conspiracy to breach third-party beneficiary contract.  Amended Complaint ¶¶ 43-52.  These claims, like all the others, are predicated on allegations of IGE US' unauthorized use of *World of Warcraft*®.  Specifically, Plaintiffs allege that IGE US' use of the game is

unauthorized in light of the TOU prohibition against "sell[ing] items for 'real' money or otherwise exchang[ing] items for value outside of the Game." TOU ¶ 8. Because Plaintiffs allege unauthorized use, and because the informal negotiations and binding arbitration clauses do not apply to "any Dispute related to, or arising from, allegations of... unauthorized use," the clauses do not apply here.[2]

Claim III. Plaintiffs' third claim alleges that Defendants violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 ("CFAA"), by (i) knowingly and intentionally accessing Plaintiffs' computers without authorization and, with intent to defraud, causing damage; (ii) knowingly and intentionally causing transmission of information to Plaintiffs' computers without authorization and causing damage; and (iii) knowingly and intentionally accessing Plaintiffs' computers without authorization and recklessly causing damage. Amended Complaint ¶¶ 53-64. Specifically, Plaintiffs allege that IGE US' conduct was unauthorized because it violated both the TOU and the EULA.[3] Plaintiffs' CFAA claims clearly arise from unambiguous allegations of unauthorized use, and therefore the negotiation and arbitration clauses are inapplicable to this statutory claim.

---

[2] It is noteworthy that IGE US glosses over this important exception to the arbitration agreement by relegating its discussion to one line in a footnote. *See* IGE US Brief at 12, n. 6. While IGE US concedes that the Amended Complaint alleges "unauthorized use", it seeks to downplay these core allegations by claiming they relate to only isolated conduct by IGE US. The Amended Complaint is replete with discussion of IGE US' alleged "unauthorized conduct".

[3] *See* TOU ¶ 5.B.3 (Subscribers may not "post[] commercial solicitations and/or advertisements for goods and services available outside of the *World of Warcraft*® universe"); TOU ¶ 5.B.4 (Subscribers may not send "continuous advertisements to sell goods or services"); TOU ¶ 8 ("you may not sell items for 'real' money or otherwise exchange items for value outside the Game"); EULA ¶ 4.B.ii (Subscribers shall not "exploit the Game

Claims IV, V and VI.  Plaintiffs' fourth, fifth and sixth claims allege violations of Florida's Deceptive and Unfair Trade Practices Act and consumer protection statutes of the other states where members of the Class reside, as well as conspiracy to violate those statutes. Amended Complaint ¶¶ 65-80.  In particular, Plaintiffs' allege that "Defendants violated Blizzard Entertainment's EULA and TOU through the fraudulent scheme and conspiracy alleged herein, [and that] [t]his conduct constitutes unlawful, unfair, unconscionable, deceptive and fraudulent business practices within the meaning of consumer protection statutes…." Amended Complaint, ¶ 75.  Again, Plaintiffs' allegations of unauthorized use form the very basis of the claims and, as a result, the negotiation and arbitration clauses do not apply.  Moreover, because Plaintiffs expressly allege the "unconscionability" of IGE US' conduct in the context of the consumer contracts between Class Subscribers and Blizzard, such question must be resolved by the Court prior to allowing any arbitration of claims to proceed.  *See Algayer v. Health Center of Panama City, Inc*., 866 So. 2d 75 (Fla. 1st DCA 2003); *Romano ex rel. Romano v. Maor Care, Inc*., 861 So.2d 59 (Fla. 4th DCA 2003); *Chapman v. King Motor Co. of South Florida*, 833 So.2d 820 (Fla. 4th DCA 2002).

Claims VII and VIII.  Plaintiffs' seventh and eighth claims allege tortious interference with business relationship and conspiracy to commit same.  Amended Complaint ¶¶ 81-90.  In the Amended Complaint, Plaintiffs allege that IGE US interfered with the relationship between Plaintiffs and Blizzard "by engaging in a fraudulent scheme and conspiracy respecting the sale of *World of Warcraft*® gold in violation of the EULA and TOU…." Amended Complaint ¶ 84.

---

or any of its parts, including without limitation the Game Client, for any commercial purpose").

Plaintiffs also allege that "Defendants and their co-conspirators agreed to and in fact engaged in a wide range of activities, the purpose and effect of which was to violate Blizzard Entertainment's EULA and TOU to the disadvantage of Plaintiff and the Class."  Amended Complaint ¶ 88.  The foundation of these claims, as with all the others, is Plaintiffs' allegation of IGE US' unauthorized use.  Thus, the negotiation and arbitration clauses are inapplicable.

Claim IX.  Plaintiffs' final claim for trespass to chattel alleges that Defendants "used, trespassed on, and interfered with Plaintiffs' and the Class' property rights by engaging in the business of generating, marketing, distributing and selling *World of Warcraft*® gold for real money and the corresponding 'spam' advertisements to promote for this illicit sales scheme," in violation of both the TOU and the EULA.  Amended Complaint ¶¶ 93-95.  Because IGE US' unauthorized use of *Word of Warcraft* forms the basis of these claims, the arbitration clause is inapplicable.

Each of Plaintiff's nine claims arises from an allegation of IGE US' unauthorized use of *World of Warcraft*®.  Thus, regardless of whether IGE US has standing to otherwise assert a right to invoke the arbitration clauses contained in Blizzard's TOU and EULA, those contracts, on their face, do not allow for arbitration of Plaintiffs' claims.  "An arbitration clause, no matter how broadly construed, can extend only so far as the series of obligations set forth in the underlying agreement."  *Parfi Holding AB v. Mirror Image Internet, Inc.*, 817 A.2d 149, 156 (Del. 2002) (Regardless of any policy favoring arbitration, arbitration is "a mechanism of dispute resolution created by contract," and "does not trump basic principles of contract interpretation."); *see also SBC Interactive, Inc. v. Corp. Media Partners*, 714 A.2d 758, 761

(Del. 1998) ("A court will not compel a party to arbitrate… absent a clear expression of such an intent").[4]

## 2.    Plaintiffs' Claims for Injunctive Relief are likewise expressly excluded for the Arbitration Clause.

Defendants' Motion must also be denied because Plaintiffs seek injunctive relief as their primary remedy for the ongoing, irreparable harm they continue to suffer as a result of IGE US' unauthorized use of *World of Warcraft*®.  The informal negotiation and binding arbitration clauses in the EULA and TOU expressly exclude such claims.  *See* EULA ¶ 14d [at Exhibit "A" to Amended Complaint].  As quoted *supra*, both the EULA and TOU provide that the informal negotiation and binding arbitration provisions do not apply to "any claim for injunctive relief." Despite IGE US' repeated, self-serving statements to the contrary in its Brief,[5] Plaintiffs, as the masters of their Complaint in this case, seek declaratory and injunctive relief on a classwide basis to prevent Defendants from continuing their unlawful acts and practices.  Therefore, Plaintiffs' claims do not fall within the ambit of the EULA and TOU arbitration provisions.

Recognizing this flaw in their request for arbitration, IGE US asks the Court to stay the request for injunctive relief pending arbitration of the arbitrable claims.  *Klay v. All Defendants*, 389 F.3d 1191, 1204 (11th Cir. 2004).  Such a stay, however, is inappropriate where, as here, there are no arbitrable claims.

---

[4]  Delaware law is deemed the "governing law" under the terms of the EULA.  *See* EULA ¶ 14f [at Exhibit "A" to Amended Complaint].
[5]  Without any record support for the assertion, IGE US seeks to persuade this Court that the Plaintiffs' claim for declaratory and injunctive relief, and request for certification of a class under Fed.R.Civ.Proc. 23(b)(2), is simply "ancillary" to the "primary basis of this action, … money damages."  IGE US Brief at 16.

Defendants seek to bolster their argument by falsely characterizing Plaintiffs' prayer for injunctive relief as "ancillary." IGE US Brief at 16.[6] In fact, because Plaintiffs believe IGE US is still actively engaged in real money trade of *World of Warcraft*® gold, and because most members of the Class continue to subscribe to *World of Warcraft*®, effective injunctive relief – in the form of an order preventing IGE US from continuing to interfere with and diminish Plaintiffs' use and enjoyment of *World of Warcraft*® – looms large as the most important and central issue in this action. Staying indefinitely the request for declaratory and injunctive relief would permit IGE US to continue to profit at the expense of Plaintiffs, and prejudice Plaintiffs by denying them essential relief.

> Finally, despite IGE US claim, judicial economy would not be served by staying Plaintiffs' injunctive claim. Determining whether to grant injunctive relief would require this Court to review the same evidence as the arbitrator to assess the strength of Plaintiffs' claims, rendering partial arbitration inefficient compared to this Court conducting sole review. *See Wise v. Kidder Peabody & Co., Inc.*, 596 F. Supp. 1391, 1398 (D. Del. 1984) (denying motion to compel arbitration where, because arbitrator would have to consider same evidence as court and determine similar factual and legal questions, "any severance and partial arbitration… would be inefficient and duplicative").

**B.      IGE US' Motion to Compel Arbitration Should be Denied Because IGE US Disputes the Validity and Binding Nature of the EULA and TOU**

The Court of Appeals for the Eleventh Circuit has held that when the validity of a consumer agreement is in question, such as in the instant *Hernandez* case as it pertains to IGE US, the district court is required to determine the validity of the contract prior to submitting the case to arbitration. *See Chastain v. Robinson-Humphrey Co., Inc.* 957 F.2d 851 (11th Cir. 1992);

---

[6] IGE US fails to acknowledge that an entire section of the Amended Complaint is devoted to discussion of the "irreparable harm and impact cause by IGE US' illicit marketing and sales scheme and conspiracy." *See* Amended Complaint at Section "D".

s*ee also Cancanon v. Smith Barney, Harris, Upham & Co.*, 805 F.2d 998 (11th Cir. 1986) ("[W]here the allegation is one of fraud in the factum, *i.e*., ineffective assent to the contract, the issue is not subject to resolution pursuant to an arbitration clause contained in the contract documents. …Where misrepresentation of the character or essential terms of a proposed contract occurs, assent to the contract is impossible. In such a case there is no contract at all.").  This holding is consistent with longstanding precedent which limits the arbitration of disputes to the parties to a valid contract.  *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.* 388 U.S. 395, 87 S.Ct. 1801 U.S.N.Y. 1967 ("[P]arties cannot be forced to submit to arbitration if they have not agreed to do so.); *Morewitz v. West of England*, 62 F.3d 1356, 1363 (11th Cir. 1995) (*quoting In re Talbot Big Foot, Inc*., 887 F.2d 611, 612 (5th Cir. 1989)("We are unaware of any federal policy that favors arbitration for parties who have not contractually bound themselves to arbitrate their disputes.")).

Here, IGE US challenges the validity of the contract it seeks to enforce against Plaintiffs. IGE US has chosen its words very carefully in its brief so as not to concede that it is in any way bound by the terms of either the EULA or TOU.  *See, e.g.*, IGE US Brief at 3 (admitting only that "Plaintiff alleges that IGE US, along with (IGE Ltd), have agreed to the terms of the Blizzard EULA and TOU agreements…); 7-8 (Plaintiff, and the purported class members, have already specifically agreed to the dispute resolution and arbitration provisions in the TOU and EULA, albeit with Blizzard.  In addition, Plaintiff alleges that IGE US is a party to the TOU and EULA agreements with Blizzard.")  Such artful pleading – while it may be tactically prudent in IGE US' defense of the merits of the claim – does not suffice to carry its threshold burden of demonstrating the arbitrability of this dispute as to either Mr. Hernandez or any member of the

10

Class of *World of Warcraft*® Subscribers.[7]  Instead, IGE US must affirmatively demonstrate that

it is bound by the terms of a specific contract [or contracts] by which it seeks to bind Plaintiffs.[8]

      The Court of Appeals for the Eleventh Circuit recognizes a general rule that only parties

who agree to arbitrate may be compelled to do so.  *See, e.g., Sunkist Soft Drinks, Inc. v. Sunkist*

*Growers Inc.*, 10 F.3d 753 (11th Cir. 1993).  While there are three (3) limited exceptions to this

general rule,[9] IGE US fails to meet the criteria for any of them.[10]  *See MS Dealer Service Corp.*

---

[7] *See, e.g.*, *Scurtu v. International Student Exchange* WL 3086092, *3 -4 (S.D.Ala. 2007)
(holding that "[a]rbitration provisions are to be treated like any other contractual provision.
In that regard, a party seeking to compel arbitration must prove the existence of a contract
containing an arbitration agreement …").

[8] A further, unresolved issue presented by IGE US' Motion – which precludes staying this
action in favor of arbitration – is what version (or versions) of the *World of Warcraft*®
contract applies, if any, to the Plaintiffs' dispute with IGE US.  Because it is entirely possible
(if not likely) that the language of the *World of Warcraft*® contract changed over time since
the launch of *World of Warcraft*® in 2004, this Court must determine, after appropriate
discovery (including discovery of a third party, Blizzard), which claims of which Class
Plaintiffs are subject to a valid arbitration provision in a EULA or TOU.  *See Tolliver v.
True*, 2007 WL 1306459, *1 (D.Colo.,2007).  While IGE US notes that the agreements
attached to the Amended Complaint contain an arbitration clause, IGE US does not establish
that the claims of the many Class Subscribers since 2004 are bound by similar arbitration
language.  It cannot be presumed that all members of the putative Class are subject to the
exact same language of the 2007 EULA and TOU appended to Plaintiffs' Complaint and
relied upon by IGE US.  *See generally, Protective Life Ins. Corp. v. Lincoln Nat'l Life Ins.
Corp*., 873 F.2d 281 (11th Cir. 1989)(instructing that each party shall have individualized
arbitration).

[9] The three (3) exceptions are: (1) equitable estoppel, (2) agency or related principles
concerning signatory and nonsignatory defendants, and (3) third party beneficiary
relationships.  *MS Dealer*, 177 F.3d at 947.

[10] IGE US concedes, as it must, that the EULAs and TOUs at issue were agreements
between Plaintiffs and Blizzard, not Plaintiffs and IGE US.  *See* IGE US Brief at 7-8.  IGE
also concedes, as it must, that the intentions of the contracting parties control.  *Id*. at 8.
These concessions should be dispositive of the issue of the non-arbitrability of the Plaintiffs'
dispute with IGE US, given that IGE US does not concede that it is bound by any contract
with or without Plaintiffs.  Were this Court to order some or all of Plaintiffs claims to be
arbitrated on this record, it would be permitting IGE US to have its cake and eat it too by

*v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999).  First, IGE US does not demonstrate how the Plaintiffs should be equitably estopped from objecting to arbitration of their disputes with IGE US, even though they rely on certain provisions of the agreement with Blizzard to establish the wrongfulness of IGE US' conduct under select claims.[11]  *Id.* at 947 (*citing Sunkist*, 10 F.3d at 757).  Nowhere does IGE US' brief claim estoppel.

Second, no claim is made by IGE US that it has an agency relationship with Blizzard [a signatory to the EULA/TOU agreement] such that Plaintiffs may be forced to arbitrate their disputes with IGE US [a non-signatory].  Plus, Blizzard, a signatory, is not a defendant in this lawsuit, rendering this limited exception inapplicable.

Third, while IGE US does charge that Plaintiffs are bound by the EULA and TOU arbitration provisions as "non-signatory third-party beneficiaries", IGE US Brief at 9, IGE US misconstrues this exception to the general rule that only parties to arbitration agreements may be compelled to arbitrate.  Because IGE US fails to concede that it is a signatory to any EULA and TOU agreement with Blizzard [to which agreement Plaintiffs would stand as third party beneficiaries], it cannot seek to enforce any EULA and TOU arbitration agreement against any Plaintiff.

If IGE US is not a party to any arbitration agreement – as it contends – than it has no business seeking to stay this case in favor of arbitration.  It should seek to have the case against

---

invoking the EULA and TOU agreements to force Plaintiffs to arbitrate only to deny the applicability of the terms thereof to IGE US in arbitration.

[11]  In such a situation, there must be either a close relationship between nonsignatory and signatory defendants, or interdependence and concerted misconduct between nonsignatory and signatory defendants, neither of which exist here because Blizzard – the other signatory with Plaintiffs -- is not a defendant.

it dismissed on the merits.  However, because suspicion is raised by IGE US' refusal to concede threshold standing, this Court must safeguard against allowing IGE US to the enforce arbitration provisions of a contract it later expects to deny in arbitration.  Such a result would frustrate completely the Plaintiffs' right to equitable and legal remedies for the irreparable harm they have suffered, and continue to suffer, as result of the unauthorized use of *World of Warcraft*®.

**C.    Plaintiffs' Statutory Consumer Fraud and Computer Fraud Claims Must Be Adjudicated by this Court**

Apart from the fact that Plaintiffs' statutory consumer fraud and computer fraud claims are premised upon IGE US' "unauthorized use" of *World of Warcraft*® such that the claims are not arbitrable on the face of the EULA and TOU agreements, these claims must be adjudicated by this Court, not an arbitration panel, in order to afford Plaintiffs the meaningful relief these statutes provide.  *See Paladino v. Avnet Computer Technologies, Inc.*, 134 F.3d 1054, 1062 (11th Cir. 1998)("[T]he arbitrability of [statutory disputes] rests on the assumption that the arbitration clause permits relief equivalent to court remedies."); *Randolph v. Green Tree Financial Corp.*, 178 F.3d 1149 (11th Cir. 1999)(holding an arbitration clause unenforceable where plaintiff's statutory rights would not be vindicated), *rev'd in part*, *Green Tree Financial Corp. v. Randolph*, 531 U.S. 373 (2000).

Significantly, both statutes under which Plaintiffs have sued provide for injunctive relief.  *See* 18 U.S.C.A. § 1030 and Fla. Stat. § 501.203 (2006).  Plaintiffs have affirmatively pled the bases for the issuance of an injunction under both of these statutes.  *See* Amended Complaint ¶¶ 53-76.  Because the EULA and TOU agreements between Plaintiffs and Blizzard, which IGE US seeks to enforce, expressly excludes claims for injunctive relief [see discussion *supra*], any

arbitrator is powerless to provide Plaintiffs with the meaningful relief they would otherwise only achieve in this Court. For this reason, the arbitration clause should be stricken as between Plaintiffs and IGE US.[12]

Further, because Plaintiffs' specifically allege that IGE US engaged in "unconscionable" conduct business practices within the meaning of the Florida consumer protection statutes, *e.g.* Amended Complaint, ¶ 75, and such unconscionability would apply equally to the EULA/TOU agreement to the extent it might be construed, as IGE US suggests, to find that IGE US' real money trade was not an "unauthorized use", such questions of unconscionability in the context of the consumer contracts between Class Subscribers and Blizzard must be resolved by the Court prior to allowing any arbitration of claims to proceed. *See Algayer v. Health Center of Panama City, Inc.*, 866 So. 2d 75 (Fla. 1st DCA 2003); *Romano ex rel. Romano v. Maor Care, Inc.*, 861 So.2d 59 (Fla. 4th DCA 2003); *Chapman v. King Motor Co. of South Florida*, 833 So.2d 820 (Fla. 4th DCA 2002).

Further, while IGE US purports to cite cases for the proposition that Plaintiffs' CFAA claims are always arbitrable, it ignores precedents that hold the opposite. *See, e.g., Specht v. Netscape Communications Corp.*, 306 F.3d 17 (2nd Cir. 2002). Even the cases IGE US cites do not hold that CFAA claims are always arbitrable. *See Telecom Italia, SPA v. Wholesale Telecom Corp.*, 248 F3d 1109 (11th Cir. 2001) (wherein the Court denied a defense motion to arbitrate brought by a non-signatory to the arbitration agreement at issue, as here).

---

[12] This case arguably presents a stronger case for finding the arbitration clause unenforceable as between Plaintiffs and IGE US than that which was presented in *Randolph* because the arbitration agreement at issue in *Randolph* expressly granted the arbitrator the power to grant injunctive relief. *Randolph*, 178 F.3d at 1151.

**D.      Plaintiffs' Class Claims Against IGE US Are Not Arbitrable**

As with the Plaintiffs' claims for injunctive relief (which claims are expressly excluded from the arbitration provisions of the EULA and TOU agreements IGE US seeks to enforce), Plaintiffs' claims for classwide relief under Rules 23(b)(2) (for declaratory and injunctive relief) and Rule 23(b)(3) (for damages) are not governed by any arbitration agreement with IGE US. That the Plaintiffs agreed to have their remedies against Blizzard restricted does not enure to the benefit of IGE US.[13]  Plaintiffs have never agreed to surrender rights proceed on a classwide basis against *World of Warcraft*® Subscribers who blatantly violate the EULA and TOU. *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (a party "cannot be required to submit to arbitration any dispute which he has not agreed so to submit"); *World Crisa Corp. v. Armstrong*, 129 F.3d 71, 74 (2nd Cir. 1997) ("Arbitration is essentially contractual, however, and the parties may not be forced into arbitration if that was not their agreement").  Indeed, it can be presumed that the Plaintiffs – subscribers all who rely upon the express provisions of the EULA and TOU to protect their use and enjoyment of *World of Warcraft*® as defined by such agreements with Blizzard – would never expect Blizzard to not comply with the rules it created for the *World of Warcraft*®.  Consequently, IGE US has no basis for claiming that Plaintiffs waived the right to proceed in a class action in federal against

---

[13]  The EULA expressly restricts the arbitration between Plaintiffs and Blizzard as follows: "To the full extent permitted by law, (1) no arbitration shall be joined with any other; (2) there is no right or authority for any Dispute to be arbitrated on a class action basis or to utilize class action procedures; and (3) there is no right or authority for any Dispute to be brought in a purported representative capacity on behalf of the general public or any other persons."  *See* EULA, par. 14c at Amended Complaint, Attachment "A".  Nowhere does it say that such restriction applies to arbitration with IGE US.  Consequently, even were this

it.[14]

Such a construction of the EULA and TOU agreements would re-write the bargain struck between Plaintiffs and Blizzard, and would interject a provision that would cause the entire premise of the agreement to collapse under its own weight: by allowing a *World of Warcraft®* subscriber like IGE US, who violates the express terms of the EULA and TOU, to obtain a benefit from the class action waiver provision in arbitration which Plaintiffs agreed to give to Blizzard, and Blizzard alone, it would effectively deny Plaintiffs their day in court [or in arbitration].  Plaintiffs would be forced to seek individual remedies against a business that has already demonstrate in this case that it has the legal firepower and financial resources to make pursuit of a remedy under the EULA and TOU prohibitively expensive for individual subscribers, like Mr. Hernandez.

     **E.**    **IGE US' Motion to Dismiss for Improper Venue Based Upon a Forum Selection Clause Agreed to By Plaintiffs and Blizzard May Not be Enforced As to Plaintiffs' Dispute with IGE US**

IGE US' alternative request for relief – that the Court dismiss this case allegedly for improper venue and force Mr. Hernandez to litigate his claims more than 3,000 miles away in California – suffers from the same fatal flaw as its claim of a right to arbitration.  By refusing to admit that it is bound by the EULA and TOU agreements between Plaintiffs and Blizzard, which contain a forum selection clause respecting disputes that may arise between the contracting

---

Court to order arbitration, at a minimum, Plaintiffs should be permitted to proceed with their class action remedy in arbitration.

[14] *See, e.g., Parfi Holding AB v. Mirror Image Internet, Inc.*, 817 A.2d 149, 156 (Del. 2002)("An arbitration clause, no matter how broadly construed, can extend only so far as the series of obligations set forth in the underlying agreement."); *see also SBC Interactive, Inc. v.*

parties, IGE US loses any ability to claim a benefit from the agreement.  As discussed above, IGE US has a threshold burden to show that it has standing to assert the right to enforce provisions of the EULA and TOU agreements with Blizzard.  Its carefully worded Motion sidesteps the issue of whether IGE US itself is a signatory to any such agreement at every turn. Unlike with its argument in favor of arbitration, however, wherein IGE US sought to come within one of the limited, recognized exceptions to the general rule that arbitration agreements are enforceable only as between the contracting parties, IGE US fails to provide any legal basis for extending the forum selection clause to it in this case.

While some courts have held that non-signatories may invoke a forum selection clause, to do so, some further showing must be made that the non-signatory is "closely related" to one of the signatories.  *See Burrows Paper Corp. v. Moore & Associates*, 2007 WL 2089682, *3 (N.D.N.Y.,2007)*(citing Direct Mail Production Services Ltd. v. MBNA Corp.*, 2000 WL 1277597, *3 (S.D.N.Y.,2000)).  The court in *Direct Mail* explained the problem for a non-signatory as follows:

> The first difficulty defendants face in invoking the forum selection clause is the undisputed fact that none of the defendants was a signatory to the Agreement containing the clause. However, a non-party may nonetheless invoke such a clause if the non-party is "closely related" to one of the signatories. In particular, "[t]he relationship between the non-party and the signatory must be sufficiently close so that the non-party's enforcement of the forum selection clause is 'foreseeable' by virtue of the relationship between the signatory and the party sought to be bound. *In re Lloyd's Am. Trust Fund Lit.,* 954 F.Supp. 656, 670 (S.D.N.Y.1997), *certification granted,* No. 96 Civ. 1262, 1997 WL 458739, at 6-7 (S.D.N.Y. Aug. 12, 1997); *see Lipcon v. Underwriters at Lloyd's, London,* 148 F.3d 1285, 1299 (11th Cir.1998); *Hugel v. Corporation of Lloyd's,* 999 F.2d 206, 209 (7th Cir.1993); *Manetti-Farrow v. Gucci Am., Inc.,* 858 F.2d 509, 514 n. 5 (9th Cir.1988); *Coastal Steel Corp. v. Tilghman Wheelabrator, Ltd.,* 709 F.2d 190, 203 (3d

*Corp. Media Partners*, 714 A.2d 758, 761 (Del. 1998) ("A court will not compel a party to arbitrate… absent a clear expression of such an intent").

Cir.1983), *abrogated on other grounds, Lauro Lines v. Chasser,* 490 U.S. 495, 501 (1989); *Maritime Ins. Co. v. M/V "Sea Harmony",* No. 97 Civ. 3818, 1998 WL 214777, at 2 (S.D.N.Y. May 1, 1998).

In discerning whether parties are "closely related," the U.S. Court of Appeals for the Second Circuit has looked to whether the non-signatory "[is an] intended beneficiar[y] entitled to enforce" the clause in question. *Roby v. Corporation of Lloyd's,* 996 F.2d 1353, 1358 (2d Cir.1993) (alterations in original). "As Professor Corbin has said, a third party will have an enforceable right 'if the promised performance will be of pecuniary benefit to him and the contract is so expressed as to give the promisor reason to know that such benefit is contemplated by the promisee as one of the motivating causes of his making the contract." ' *Id.* at 1359 (quoting 4 Arthur L. Corbin, Corbin on Contracts § 776, at 18 (3d ed.1967)); *see also Lipcon,* 148 F.3d at 1299 (" '[W]hile ... third-party beneficiaries to a contract would, by definition, satisfy [this] requirement[ ] ..., a third-party beneficiary status is not required." ') (quoting *Hugel,* 999 F.2d at 209); *Coastal Steel,* 709 F.2d at 203."

*Direct Mail Production Services Ltd*., 2000 WL 1277597, *3. IGE US makes no attempt to show that it is either "closely related" to either Plaintiffs or Blizzard, the signatories to the agreements containing the forum selection clause, or an "intended beneficiary" of such agreements. Accordingly, it should not be permitted to claim any right to enforce such provision.

IGE US looks to steamroll over the issue of its presumptive lack of standing as a non-signatory to the agreement between Plaintiffs and Blizzard by focusing the Court's attention on whether the forum selection clause between Plaintiffs and Blizzard is mandatory or permissive. Respectfully, such argument places the cart well before the horse by simply assuming that IGE US has standing to assert a right to the venue provision in the first instance. IGE US has no such standing because Plaintiffs never entered into an agreement with IGE US with a forum selection clause. IGE US cites to the Court no principle of law that allows it to essentially piggyback on the venue provision agreed to between Plaintiffs and Blizzard. Further, such a construction of

the contract would violate fundamental principals of contract construction.

Even assuming *arguendo* that the forum selection clause IGE US deems "mandatory" would apply to Plaintiffs' dispute with IGE US, which Plaintiffs do not concede, IGE US should be found by this Court to have failed in its proof of the requisite elements for enforcement thereof. *See Lipcon v. Underwriter's at Lloyd's, London*, 148 F.3d 1285, 1292 (11th Cir. 1998) (cited by IGE US at IGE US Brief 18-19 and listing relevant factors). At the outset, IGE US acknowledges that Plaintiffs need only prove that one of the factors against enforcement of a forum selection clause apply, in order to cause the provision to be deemed unenforceable. IGE US Brief at 19. In this case, all of the factors apply.

If the Court were to construe the forum selection clause contained in the EULA and TOU agreements between Plaintiffs and Blizzard to apply to IGE US, a non-signatory and alleged violator of the express provisions of the agreements intended to safeguard the Plaintiffs' use and enjoyment of *World of Warcraft*®, than Plaintiffs would argue that each of the factors apply: (1)that the formation of the agreement to litigate in California was "induced by fraud or overreaching," (2) that the forum was both "inconvenient" and would effectively "deprive Mr. Hernandez of his day in court", and (3) that enforcement of the provision would "contravene the strong public policy" of having Florida consumer fraud adjudicated by Florida consumers in Florida courts. In the specific case of Mr. Hernandez, he never would have agreed to litigate his claims to enjoin the "unauthorized use" of *World of Warcraft*® against an offending Subscriber, like IGE US, in a remote California forum. Such a forum selection clause would impose serious hardship on any individual claimant looking to obtain an injunction against an elusive corporate defendant, like IGE US, which already has demonstrated an ability to marshal a costly,

19

protracted defense.  IGE US' analysis of the *Lipcon* factors from the vantage of Plaintiffs vis-à-vis Blizzard is wholly inapposite, since Blizzard is not a defendant and its interest are not at issue.  Accordingly, the forum selection clause agreed to between Plaintiffs and Blizzard should not be extended to IGE US.

**WHEREFORE**, Plaintiff, ANTONIO HERNANDEZ, respectfully requests the Court deny, Defendant, IGE U.S., LLC n/k/a AFFINITY MEDIA HOLDINGS, LLC's Motion to Stay this Action Pending Arbitration, or Alternatively, Motion to Dismiss Any Non-Arbitrable Claims for Improper Venue, and grant all such other relief it deems just and proper.

Respectfully submitted this 21<u>st</u> day of November, 2007.

s/ C. Richard Newsome
C. RICHARD NEWSOME, ESQUIRE
Florida Bar No.:  827258
Email: newsome@newsomelaw.com
Newsome Law Firm
20 N. Orange Ave., Suite 800
Orlando, Florida 32801
Telephone:  (407) 648-5977
Facsimile:  (407) 648-5282

DONALD E. HAVILAND, JR., ESQUIRE
Pennsylvania Bar No.: 66615
Email: haviland@havilandlaw.com
MICHAEL J. LORUSSO, ESQUIRE
Pennsylvania Bar No.: 203684
Email: lorusso@havilandlaw.com
The Haviland Law Firm, LLC
740 S. Third Street, Third Floor
Philadelphia, PA 19147
Telephone: (215) 609-4661
Facsimile: (215) 392-4400

Attorneys for Plaintiff,
Antonio Hernandez and the Class

20

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed on this 21st

day of November, 2007, with the Clerk of Court using the CM/ECF system which will send

notice of electronic filing to:

<table>
<tr>
<td>
Scott D. Richburg<br>
C. Ryan Maloney<br>
Foley & Lardner LLP<br>
One Independent Drive, Suite 1300<br>
Jacksonville, FL 32201-0240
</td>
<td>
Richard S. Davis<br>
Foley & Lardner LLP<br>
111 North Orange Avenue, Suite 1800<br>
Orlando, FL 32801-2386
</td>
</tr>
</table>

s/ C. Richard Newsome
Florida Bar No.: 827258
Newsome Law Firm