**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 07-21403-Civ-COHN/SNOW**

ANTONIO HERNANDEZ, Individually and
on behalf of all others similarly situated,

          Plaintiff,

v.

IGE U.S. LLC.,
a Delaware corporation,

          Defendant.
_____/

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR**
**CLASS CERTIFICATION**

**I.**    **INTRODUCTION**

        Plaintiff, Antonio Hernandez, submits this memorandum in support of his motion for

certification of a nationwide plaintiff class pursuant to Rule 23 of the Federal Rules of Civil

Procedure.[1]  This consumer fraud action arises from a fraudulent scheme and conspiracy to

reap substantial profits by knowingly interfering with, and substantially impairing and

diminishing the intended use and enjoyment associated with consumer agreements between

Blizzard Entertainment and subscribers to its virtual world called *World of Warcraft*®

(hereinafter "Subscribers").  Specifically, over the past several years, Defendant IGE U.S., by

_____

[1]Plaintiff is submitting this brief pursuant to the Court's Order Granting in Part Joint Motion
to Amend Scheduling Order, dated April 18, 2008.  As Defendant IGE U.S. has not
responded to Plaintiff's class discovery, Plaintiff is not now submitting any supporting expert
report(s) or affidavit(s).  Depending upon the course of class discovery and other factors,
Plaintiff may submit one or more expert statements in conjunction with his reply brief in
support of class certification.

Dockets.Justia.com

and through its employees, agents and affiliates, some of whom work in deplorable conditions in third world countries, has engaged in the deliberate selling of *World of Warcraft*® virtual property or currency (commonly referred to as "gold") through eBay or other industry websites. IGE U.S.'s practice is known as "gold farming," "real money trade" or "RMT," and it is expressly prohibited by Blizzard Entertainment's EULA and TOU to which all *World of Warcraft*® Subscribers agree (hereinafter, the "scheme"). *See* Amended Class Action Complaint ("Amended Complaint") at ¶¶ 1-3, 24-27.

This lawsuit seeks, *inter alia*, to stop IGE U.S. from violating the TOU and EULA of the *World of Warcraft*®. Once the unlawful conduct is stopped, the harm caused by the continuing violations of these agreements may be assessed, and appropriate damages awarded. But, because a cessation of the unlawful activity is the cornerstone of this lawsuit, Plaintiff seeks the certification of his claims for declaratory and injunctive relief on behalf of a Class of Subscribers of the *World of Warcraft*®. He also seeks certification of a Sub-Class of Subscribers who have succumbed to the internal pressures to compete by engaging in RMT. The "Class" consists of the following Subscribers[2]:

---

[2] The Class excludes the following: (a) Defendant and entities in which any Defendant has a controlling interest, their legal representatives, officers, directors, assignees and successors; (b) any co-conspirators, including any Subscribers who sold *World of Warcraft*® gold to IGE; and (c) Subscribers who purchased *World of Warcraft*® gold from Defendant for real money (as these parties are included in the Sub-Class). Also excluded from the Class are any judges or justices to whom this action is assigned, as well as any relative of such judge(s) or justice(s) within the third degree of relationship, and the spouse of any such person. *See* Amended Complaint at ¶ 33.

**The "Class"**

> All persons in the United States and its territories who, for purposes other than resale, purchased Blizzard Entertainment's *World of Warcraft*® software and paid subscription fees at any time from November 27, 2004 until the present.

The Sub-Class consists of the following:

**The "Non-Compliant Subscriber Sub-Class"**

> All persons in the United States and its territories who, for purposes other than resale, purchased Blizzard Entertainment's *World of Warcraft*® software and paid subscription fees at any time from November 27, 2004 until the present, and who bought any *World of Warcraft*® gold for real money.

This class action lawsuit clearly embodies the general rule announced by the Supreme Court -- and reflected in dozens of consumer fraud class actions certified by this Court and other federal district courts throughout the country -- that "[predominance (of common issues) is a test readily met in certain cases alleging consumer . . . fraud." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625 (1997). The common issue of establishing Defendant's liability for violating the *World of Warcraft*® TOU and EULA through its scheme and conspiracy to sell gold clearly predominates over any conceivable individual issues.[3] The central facts that each individual Class member must prove revolve around the existence and nature of that scheme and conspiracy.

There are no peculiar problems in this case that would undercut the superiority of class treatment of Plaintiff's consumer fraud claims. Moreover, class treatment is not only authorized by Rule 23 but, as a practical matter, is the *only* feasible way to vindicate the rights of the

---

[3]*See, e.g., Chevalier v. Baird Savings Ass'n.*, 72 F.R.D. 140, 149 (E.D. Pa. 1976) (the "existence vel non of a conspiracy has been recognized as an overriding issue common to plaintiff class.").

3

millions of Subscribers of *World of Warcraft*® who suffer as a result of IGE U.S.'s ongoing breaches of the integrity of *World of Warcraft's*® virtual world.

For these reasons and others, as more fully elaborated below, Plaintiff respectfully requests that the Court grant his motion and certify the proposed Class and Sub-Class under Rules 23(b)(1), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure.

## II.    <u>BACKGROUND</u>

As set forth in detail in the Amended Complaint, but summarized briefly herein, this case involves the virtual world known as the *World of Warcraft*® – variously referred to in the industry as a "massively populated persistent world," "synthetic world," or "massively multi player online role playing game"("MMORPG"). Such online computer-generated environments permit a large number of consumers to access them simultaneously. During the last ten (10) years, virtual worlds have grown from a relatively obscure internet phenomena into a multi-billion dollar industry with over twenty (20) million consumer-subscribers across the globe participating on a regular basis and more than 150 active virtual worlds in operation. As a result, this form of entertainment media has far surpassed expectations and is fast becoming a core component of internet use and enjoyment. *See* Amended Complaint at ¶ 12 (noting one prediction that 80 percent of active internet users (and Fortune 500 enterprises) will participate in virtual worlds by the end of 2011).

Blizzard Entertainment's virtual world, the *World of Warcraft*®, is one of the most popular and successful MMORPGs ever, claiming a subscriber base numbering in the millions worldwide. As a result, it has been the focus of efforts by entrepreneurial businesses, like IGE U.S., seeking to capitalize on its tremendous success. But, one of the keys to the success of

*World of Warcraft®* has been its ability to maintain its integrity as a highly-regulated, entertainment environment that is governed by a strict set of rules designed to ensure that the entertainment experience of all Subscribers is uniform, predictable and enjoyable for all.  *See, e.g.*, Amended Complaint at ¶¶ 13-23.  Central to the maintenance of such integrity is the express requirement that all Subscribers agree to be bound by the terms of Blizzard Entertainment's End User License Agreement ("EULA") and Terms of Use Agreement ("TOU"), copies of which are attached to the Amended Complaint as Exhibits "A" and "B." Amended Complaint at ¶ 14.  The terms of the EULA must be accepted before a Subscriber can install the *World of Warcraft®* proprietary software on their personal computer, and the terms of the TOU must be accepted before a Subscriber can create an account and access the *World of Warcraft®* virtual world.  *Id.*

As the Amended Complaint describes,

> "[c]entral to the design and operation of all major virtual worlds, like *World of Warcraft®*, is a property system that has all the familiar real world features, such as exclusive ownership, persistence of rights and a currency system to support trade.  As in the real world, property or resources are limited and scarce in virtual worlds.  The currency in *World of Warcraft®* is the virtual gold coin simply referred to as 'gold.'  With this gold, a Subscriber can purchase almost anything he or she needs, including skills, food, water, transportation, clothing and equipment.  A Subscriber earns gold by performing tasks or by collecting or making goods that are then sold to other subscribers or virtual vendors."

*Id.* at 18-19.  Because of the value of gold to the *World of Warcraft®* Subscriber, as the exclusive virtual currency by which virtual assets are exchanged, it is critical to establish certain policies respecting its promulgation and use, similar to monetary policy real-world governments typically set for real-world currencies.  One of the central tenets of such "monetary policy" for *World of Warcraft®* gold, as set forth in the EULA and TOU, is the express prohibition on the sale of gold

for real money.[4] "This prohibition protects the integrity of *World of Warcraft*®, ensures that the competitive playing field within *World of Warcraft*® is level, and makes certain that the time, energy and effort expanded by Subscribers is not diminished by others who use real money to purchase scarce and limited virtual resources." *Id*. at ¶ 22.

The Amended Complaint alleges that IGE U.S., by and through its agents, employees and affiliates, has sold massive quantities of *World of Warcraft*® gold for millions of dollars since *World of Warcraft*® was released on November 27, 2004. *Id*. at ¶ 26. Each such transaction violated the TOU and EULA. Because any virtual world derives its utility and benefit from the fact that it creates a unique entertainment experience, for which Subscribers are willing to pay a substantial portion of their discretionary entertainment income, IGE U.S.'s RMT impairs and diminishes the experience Subscribers pay for. Subscribers are thus deprived of the benefit of the bargain for which they contracted with Blizzard Entertainment. Such harm is irreparable due to the ongoing conduct of IGE U.S. and there is no adequate remedy at law to address it, thereby making declaratory and injunctive relief warranted.

## III.    ARGUMENT

The United States Supreme Court has made it clear that "[c]lass actions serve an important function in our system of civil justice." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 (1981). Consistent with this principle, in considering whether to certify a class, a court is not to be concerned with the merits of the action, or the question of who will prevail. *See Eisen v Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974); *Blackie v Barrack*, 524 F.2d 891, 901 (9th Cir. 1975), *cert. denied*, 429 U.S. 816 (1976)("[N]either the possibility that a plaintiff will be unable

---

[4] Specifically, the TOU states that "you may not sell items for 'real' money or otherwise exchange items for value outside of the [virtual world]."

to prove his allegations, nor the possibility that the later course of the suit might unforeseeably prove the original decision to certify the class wrong, is a basis for declining to certify a class which apparently satisfies the Rule."). "Accordingly, the standard for determining whether the class action prerequisites are met is rather lenient." *Spark v. MBNA Corp.,* 178 F.R.D. 431, 435 (D. Del.1998).

The late professor, Herbert B. Newberg, a leading commentator on class actions, has observed:

> [B]ecause the class action rule itself requires that the court make a class determination "as soon as practicable," and permits the court to alter or amend its order before the decision on the merits, many presumptions are fairly invoked to aid the court in reaching an early determination.
>
> Since Rule 23 is generally required to be liberally construed, these presumptions, arising at an early stage of the litigation, are invoked for the most part in favor of upholding the class.

2 HERBERT B. NEWBERG & ALBA CONTI, *NEWBERG ON CLASS ACTIONS*, § 7.17 at 7-62, 63 (3d ed. 1992) (footnotes omitted) (hereinafter "*NEWBERG*"). Thus, in conducting its analysis of the Rule 23 prerequisites to class certification in this case, the Court should be guided by the liberal, pro-certification policies underlying Rule 23.

The reasons for class action treatment of cases are plain. As the United States Supreme Court recently explained in *Amchem Products, Inc. v. Windsor,* 521 U.S. 591(1997) (Ginsburg, J.):

> The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.

*Id.* at 617 (*quoting Mace v. Van Ru Credit Corp.,* 109 F.3d 338, 344 (7th Cir. 1997). In this case, without class certification, the continuing wrongs committed by the Defendant, IGE U.S., on *World of Warcraft*® Subscribers may go without redress.

Employing the liberal interpretation called for by the Supreme Court, courts in this Circuit routinely have certified classes in consumer fraud cases, including cases involving Florida's Deceptive and Unfair Trade Practices Act ("FEDUPTA"). *See, e.g., Veal v. Crown Auto Dealerships, Inc.,* 236 F.R.D. 572 (M.D.Fla., 2006) (certifying a class of car buyers alleging, among other claims, violations of FDUPTA); *Miles v. America Online, Inc.,* 202 F.R.D. 297 (M.D.Fla., 2001) (class action certified under FDUPTA for Internet Service Provider's failure to disclose that "fixed" monthly fees for "unlimited" internet access would not include additional long distance telephone charges that most consumers would likely incur.); *Elkins v. Equitable Life Ins. Co.,* Civ. A. No. 96-296-CIV-T-17B, 1998 WL 133741 (M.D. Fla. Jan. 27, 1998)(certifying a nationwide class of insureds alleging, among other claims, fraudulent inducement and common law fraud); *Execu-Tech Business Systems Inc. v. New Oji Paper Co., Ltd.,* 752 So.2d 582 (Fla. 2000) (class action under FDUPTA to recover damages for price fixing); *W.S. Badcock Corp. v. Meyers,* 696 So.2d 776 (Fla. App. 1 Dist., 1996) (class certified under FDUPTA for claim that Badcock impermissibly charged consumers a seven dollar non-filing fee in connection with purchases of consumer goods it sold and financed).

Similarly, the federal courts in other Circuits have certified classes under various statutes which were designed to protect consumers, including FDUPTA. *See, e.g., In re Pharmaceutical Industry Average Wholesale Price Litig.,* 233 F.R.D. 229 (D. Mass. 2006)(certifying nationwide consumer class of pharmaceutical drug purchasers, including Florida consumers under

FDUPTA); *Clark v. Bonded Adjustment Co., Inc.,* 204 F.R.D. 662 (E.D. Wash. 2002) (certifying class of debtors who brought suit under Fair Debt Collection Practices Act); *Williams v. Weyerhaeuser Co.,* No. A093975, 2002 WL 373578 (Cal. Ct. Ap., 1st Dist., Div. 4 March 8, 2002)(certifying nationwide class of siding purchasers based upon violations of California consumer protection laws); *Rivera v. Wyeth-Ayerst,* 197 F.R.D. 584 (S.D. Tex.2000)(certifying nationwide class of buyers of prescription pain relief drug who sued drug manufacturers to recover economic damages for violations of state Deceptive Trade Practices Act, breach of implied warranty of merchantability and for unjust enrichment), *rev'd on other grounds,* 283 F.2d 315 (5th Cir.2002); *Avery v. State Farm Mut. Auto Ins. Co.,* 321 Ill. App.3d 267, 746 N.E.2d 1242, 254 Ill. Dec. 194 (2001)(affirming certification of nationwide class of insureds, alleging "ongoing course of conduct nationwide," and holding that nationwide application of state Consumer Fraud Act was appropriate); *Ballard v. Equifax Check Services, Inc.,* 186 F.R.D. 589,600 (E.D. Cal. 1999)("Class action certifications to enforce compliance with consumer protection laws are 'desirable and should be encouraged.'"); *Thomas v Charles Schwab & Co., Inc.* No. 66,700 (10th Jud. Dist. Ct., Parish of Natchitoches, La. Aug. 16, 1995)(certifying national fraud class for litigation purposes), *aff'd*, 683 So.2d 734 (La. Ct. App. 1996).

The certification of consumer fraud class actions by these many courts in these many cases demonstrates that consumer fraud cases, such as this one involving a nationwide scheme and conspiracy, can and should be certified readily.[5]

---

[5] Given the overarching nationwide conspiracy alleged in this case, this Court can and should look to the overwhelming precedents certifying conspiracy claims in the antitrust context for guidance. *See, e.g., In re Cardizem CD Antitrust Litig.,* 200 F.R.D. 297 (E.D. Mich. 2001); *In re Auction Houses Antitrust Litigation,* 193 F.R.D. 162 (S.D.N.Y. 2000); *In re Polypropylene Carpet Antitrust Litig.*, 93 F. Supp. 2d 1348, 1357 (N.D. Ga. 2000)*; In re NASDAQ Market Makers Antitrust Litig.*, 169 F.R.D. 493 (S.D. N.Y. 1996); *In re Commercial Tissue Prod.,* 183 F.R.D. 589 (N.D. Fla. 1998); *In re Plastic Cutlery Antitrust Litig.*, 1998 WL 135703 (E.D. Pa.

To maintain a class action, a plaintiff must satisfy the four requirements of Rule 23(a) of the Federal Rules of Civil Procedure – numerosity, commonality, typicality and adequacy of representation – and must demonstrate that any one of the three prongs of Rule 23(b) – Rule 23(b)(1), (b)(2) or (b)(3) – is satisfied.

### A.    The Requirements of Rule 23(a) Are Satisfied in This Case.

Rule 23(a) provides that in order to proceed as a class action:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a).  Each of these four criteria is satisfied here.

Accepting as true the factual allegations of the Amended Complaint, as this Court must, the prerequisites for class certification are satisfied easily. *See Blackie,* 524 F.2d at 901 n.17 ("The court is bound to take the substantive allegations of the complaint as true, thus necessarily making the class order speculative in the sense that the plaintiff may be altogether unable to

---

Mar. 20, 1998); *In re Medical X-Ray Film Antitrust Litig.,* 1997 U.S. Dist.  LEXIS 21936 (E.D. N.Y. Dec. 10, 1997); *In re Citric Acid Antitrust Litig.,* 1996 WL 655791 (N.D. Cal.  Oct. 2, 1996); *In re Amino Acid Lysine Antitrust Litig.,* 1996 WL 69699 (N.D. Ill.  Feb. 13, 1996); *In re Industrial Diamonds Antitrust Litig.,* 167 F.R.D. 374 (S.D. N.Y. 1996); *In re Disposable Contact Lens Antitrust Litig.,* 170 F.R.D. 524 (M.D. Fla. 1996).  *See also, e.g., In re Infant Formula Antitrust Litig.,* 1992 WL 503465 (N.D. Fla. Jan. 13, 1992); *In re Potash Antitrust Litig.,* 159 F.R.D. 682 (D.  Minn. 1995); *In re Brand Name Prescription Drugs Antitrust Litig.,* 1994 WL 663590 (N.D. Ill.  Nov. 18, 1994); *In re Catfish Antitrust Litig.,* 826 F. Supp. 1019 (N.D. Miss. 1993); *In re Carbon Dioxide Antitrust Litig.,* 149 F.R.D. 229 (M.D. Fla. 1993); *In re Domestic Air Transp.  Antitrust Litig.,* 137 F.R.D. 677 (N.D. Ga. 1991); *In re Workers' Compensation,* 130 F.R.D. 99 (D.  Minn. 1990); *In re Wirebound Boxes Antitrust Litig.,* 128 F.R.D. 268 (D.  Minn. 1989).

provide his allegations."). In making such determination, the Court may not decide the merits at this time. *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 177 (1974).[6]

**1.    The Class Is So Numerous That Joinder Is Impracticable.**

Under Rule 23(a), a plaintiff must demonstrate that the class is so numerous that joinder of all members is "impracticable".[7] The numerosity requirement need not detain the Court.

In this case, numerosity is readily established insofar as Plaintiff has alleged, and IGE U.S. has not disputed, that the Class contains more than two million members, the exact number being unknown to Plaintiff[8] because Defendant has so far refused to produce discovery in this case which will yield the information pertaining to its sales and will enable Plaintiff to estimate more accurately the number of Class members. Each year, millions of subscribers of *World of Warcraft®* are affected by IGE U.S.'s repeated, deliberate violations of the TOU and EULA.

---

[6] **Error! Main Document Only.**Likewise, a pre-determination of the merits of the defense of the suit is also inappropriate. *Philadelphia Elec. Co. v. Anaconda Am. Brass Co.*, 43 F.R.D. 452, 458 (E.D. Pa. 1968). "The invitation to pre-try the case through the vehicle of this [class certification] motion must be respectfully declined[.]" *Siegel v. Chicken Delight, Inc.*, 271 F. Supp. 722, 726 (N.D. Cal. 1967).

[7] "Impracticability" means difficulty or inconvenience in joining all members of the class as individual Plaintiffs. *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964); *Rodriguez v. Carlson,* 166 F.R.D. 465 (E.D. Wash. 1996). Whether joinder is impracticable depends on the facts and circumstances of each case, and does not require the existence of any specific minimum number of class members. *Arnold v. United Artists Theatre Circuit,* 158 F.R.D. 439, 448 (N.D. Cal. 1994).

[8] Plaintiffs are not required to precisely enumerate the members of the class. *See Cumberland Farms, Inc. v. Browning-Ferris Ind,* 120 F.R.D. 642, 645 (E.D. Pa. 1988)("No definite standard exists concerning a magic number satisfying the numerosity requirement, nor must Plaintiff allege the exact number or identity of class members.")*; Weinberger v. Thornton,* 114 F.R.D. 599,602 n.1 (S.D. Cal. 1986); *Schwartz v. Harp.* 108 F.R.D. 279, 281 (C.D. Cal. 1985); *Vernon J. Rockler & Co. v. Graphic Enters., Inc.,* 52 F.R.D. 335, 339 (D. Minn. 1971). The Plaintiffs also are not required to identify the individuals at the outset. *Grossman v. Waste Management, Inc,.* 100 F.R.D. 781, 785 (N.D. Ill. 1984). Instead, a reasonable estimate of the number of purported class members satisfies the numerosity requirement. *In re Badger Mountain Irrigation Dist. Sec. Litig.,* 143 F.R.D. 693, 696 (W.D. Wash. 1992).

The numerosity requirement is satisfied, as joinder of this many plaintiffs is impracticable.  *See, e.g.,* 1 *NEWBERG* § 3.05, at 3-25 (there is a presumption that numerosity should arise in cases involving 40 or more plaintiffs).

**2.    There Are Questions of Law and Fact Common to The Class.**

Rule 23(a)(2) requires that a question of law or fact be common to the class.  The commonality requirement has generally been permissively applied.  *See Blackie,* 524 F.2d at 904 (the standard for commonality is minimal because "all that is required is a common issue of law or fact").  As stated in the leading treatise on class actions:

> Rule 23(a)(2) does not require that all questions of law or fact raised in the litigation be common. The test or standard for meeting the Rule 23(a)(2) prerequisite is qualitative rather than quantitative –that is, there need only be a single issue common to all members of the class.  Therefore, this requirement is easily met in most cases.

1 *NEWBERG* § 3.10 at 48-50 (footnotes and citations omitted).  This requirement is satisfied easily here, as a common theory of liability is applicable to the entire Class: IGE U.S.'s participation in a common, fraudulent marketing and sales scheme and conspiracy to violate the *World of Warcraft*® TOU and EULA.

Moreover, underlying each Class member's claim lies a core of common issues of law and fact. These common questions include, but are not limited to, the following:

a.    Whether the Defendant engaged in the unlawful conduct, fraud and conspiracy as alleged herein;

b.    Whether the Defendant unlawfully violated the TOU and EULA of *World of Warcraft*®;

c.    Whether the Defendant unlawfully sold *World of Warcraft*® gold;

d.    Whether the Defendant conspired and agreed with

others to sell *World of Warcraft*® gold in violation
of the TOU and EULA;

e.  Whether conspiracy was implemented;

f.  Whether the Defendant violated the consumer
protection laws of Florida or other statutes;

g.  Whether the Defendant violated the Florida
common law;

h.  Whether Plaintiff and members of the Class are
entitled to declaratory and injunctive relief;

I.  Whether Plaintiff and the members of the Class are
entitled to compensatory damages, and, if so, the
nature of such damages; and

j.  Whether Plaintiff and members of the Class are
entitled to an award of punitive damages, reasonable
attorneys' fees, prejudgment interest, post-judgment
interest, costs of suit, and other appropriate relief
under the circumstances of this case.

Complete identity of the facts common to all members of the Class is not necessary.

*Blackie,* 524 F.2d at 902 (in assessing commonality "courts have taken the common sense

approach that the class is united by a common interest in determining whether a defendant's

course of conduct is in its broad outlines actionable, which is not defeated by slight differences

in class members' positions, and that the issue may profitably be tried in one suit."); *Yslava,* 845

F. Supp. at 712.  The determinative factors are whether this case presents a "common nucleus of

operative facts" and seeks to redress a common legal grievance which concern Defendant's

fraudulent marketing and sales scheme and conspiracy that has injured Antonio Hernandez and

the members of the Class.  *In re Asbestos School Litig.,* 104 F.R.D. 422, 429 (E.D. Pa. 1984).

When the class is united by a common interest in determining whether the defendant's course of

conduct is legal, differences in the impact of this conduct on individual class members (and other individual differences) do not defeat class certification. *Blackie,* 524 at F.2d 902. Thus, as stated above, "commonality" is qualitative rather than quantitative; that is, there need be only a single issue common to all members of the class. *NEWBERG.* § 3.10, at 3-50; *see also Sterling v. Velsicol Shem. Corp.,* 855 F.2d 1188, 1197 (6th Cir. 1988).

The commonality requirement of Rule 23(a)(2) is satisfied in this case.

### 3.    The Claims of Mr. Hernandez are Typical of the Claims of the Class.

Courts construe the typicality requirement liberally, holding that a representative's claim is typical so long as there is no express conflict between the representative's interests and those of the class. *See Buford v. H & R Block, Inc.,* 168 F.R.D. 340 (S.D.Ga., 1996) ("[T]his Court is of the opinion that the typicality threshold is a low one, and that the Rule 23(a)(3) criterion serves one simple purpose: 'to assure that the named representatives' interests are aligned with those of the class.'")(internal citations omitted). For this purpose, "typical" does not mean "identical." *See Staton v. Boeing Co.,* 313 F.3d. 447, (9th Cir. 2002); *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1020 (9th Cir. 1998)("Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical."); *accord,* 3 *NEWBERG* § 3.13.

The typicality requirement focuses on the similarity of the legal and remedial theories behind the claims of the plaintiff and the Class members. *Jenkins v. Raymark Indus. Inc.,* 782 F.2d 468, 472 (5th Cir. 1986). The late Professor Herbert B. Newberg summarized the concept of typicality as follows:

> Typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting

the class, so that the court may properly attribute a collective nature to the challenged conduct. In other words, when such a relationship is shown, a plaintiff's injury arises from or is directly related to a wrong to a class, and that wrong includes the wrong to the plaintiff. Thus, a plaintiff's claim is typical if it arises from the same event or practiceor course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory. When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of varying fact patterns which underlie individual claims.

1 *NEWBERG* § 3.13, AT 3-76 TO 3-77.

The relative degree of plaintiff's damages or injury vis-a-vis other Class members does not impair typicality. These and other factual differences are acceptable, provided the claim arises from the same event or course of conduct and is based on the same legal theory. *Brink v. First Credit Resources*, 185 F.R.D. at 570; *see also In re Federal Skywalk Cases,* 95 F.R.D. 483 (W.D. Mo.1982); *Jenkins,* 782 F.2d at 472; *Longden v. Sunderman,* 123 F.R.D. 547, 556-57 (N.D. Tex. 1988); *In re Texas Int'l Sec. Litig,.* 114 F.R.D. 33, 44 (W.D. Okla. 1987); *In re Asbestos School Litig.,* 104 F.R.D. 422, 429 (E.D. Pa. 1984) *aff'd in part, rev'd in part on other grounds,* 789 F.2d 996 (3d Cir.), *cert. denied,* 479 U.S. 852 (1986). Class members are not required to be clones.[9]

---

[9]As the court in *Broin v. Philip Morris Companies, Inc.,* 641 So.2d 888 (Fla. Dist. Ct. App. March 15, 1994) observed:

> It would be a perversion of the spirit behind [the class action rule] and the cases interpreting the rule, to hold, as Defendant urge, that Plaintiffs' class action allegations fail because Plaintiffs do not present identical claims. If class actions were dependent on class members presenting carbon copy claims, there would be few, if any, instances of class action litigation. It is virtually impossible to design a class whose members have identical claims. Even in the context of a mass disaster, each afflicted member experiences the impact differently, according to the member's relative location and proximity to the event. Defendant' proposed holding would nullify the class action rule, a course of conduct we decline to follow. 'The very purpose of a class suit is to save a multiplicity of suits, to reduce the expense of litigation, to make legal processes more

In this case, Mr. Hernandez claims that, through the same, common, fraudulent scheme and conspiracy employed by IGE U.S., he and the Class members were injured in their use and enjoyment of *World of Warcraft*®.  Accordingly, Mr. Hernandez and the Class seek declaratory and injunctive relief, and economic damages, as a result of their subscriptions to *World of Warcraft*®, making this case easily certifiable.[10]  All claims in the present case are similar because they emanate from the same legal theory. Nothing in the nature of the claims or injuries alleged by Mr. Hernandez could conceivably set him at odds with any other Class member. Thus, while the damages of Mr. Hernandez and members of the Class may vary in amount, these differences are immaterial, so long as the harm suffered is of the same type, which it is.  The typicality requirement is thus satisfied.

### 4.    Mr. Hernandez and His Counsel Will Adequately Represent the Class.

Courts generally consider two elements in determining whether the adequacy of representation requirement of Rule 23(a)(4) has been satisfied:

    a)    Plaintiff must not have interests antagonistic to those of the class; and

---

effective and expeditious, and to make available a remedy that would not otherwise exist.'...[I]f we were to construe the rule to require each person to file a separate lawsuit, the result would be overwhelming and financially prohibitive. Although Defendant would not lack the financial resources to defend each separate lawsuit, the vast majority of class members, in less advantageous financial positions, would be deprived of a remedy.  We decline to promote such a result.

*Id.* at 891-92 (citation omitted).

[10]The Class, by its definition, excludes those consumers who may have sustained personal injury. Thus, this case is similar to others that have been certified.  *See, e.g., In re Pharmaceutical Industry Average Wholesale Price Litig.,* 233 F.R.D. 229 (D. Mass. 2006)(certifying nationwide consumer class of pharmaceutical drug purchasers, including Florida consumers under FDUPTA); *Rivera v. Wyeth-Ayerst,* 197 F.R.D. 584 (S.D. Tex. 2000)(nationwide class certified of prescription drug purchasers seeking economic damage under state consumer fraud law), *rev'd on other grounds,* 284 F.3d 315 (5th Cir. 2002).

b)    Plaintiff's attorneys must be qualified, experienced and generally able to conduct the proposed litigation.

3 *NEWBERG* § 3.22.  The classic formulation of these elements was set forth by the Supreme

Court in *Eisen v Carlisle & Jacquelin:*

> What are the ingredients that enable one to be termed "an adequate representative of the class?"  To be sure, an essential concomitant of adequate representation is that the party's attorney be qualified, experienced and generally able to conduct the proposed litigation. Additionally, it is necessary to eliminate so far as possible the likelihood that the litigants are involved in a collusive suit or that plaintiff has interests antagonistic to those of the remainder of the class.

391 F.2d 555, 562 (2d Cir. 1968), *rev'd on other grounds,* 417 U.S. 156 (1974). As discussed

below, both prongs of the "adequacy" test are met here.

a.    The Class Representative is Adequate.

As demonstrated by the previous two sections regarding commonality and typicality, Mr.

Hernandez's interests are co-extensive and are not in conflict with the interests of other Class

members.  The fact that Mr. Hernandez's claims are "common" and "typical" of those of the

Class is evidence of the lack of conflict.  Mr. Hernandez is seeking redress for IGE U.S.'s

unlawful conduct on behalf of himself and a Class of consumers who subscribe to *World of

Warcraft*®.  Each member of the Class, including Mr. Hernandez, has an identical interest in

seeing liability established on the part of the Defendant.  Thus, no actual or potential conflict

exists between Mr. Hernandez and the Class.  *See Blackie,* 524 F.2d at 909 (regarding potential

conflicts, "courts have generally declined to consider conflicts, particularly as they regard

damages, sufficient to defeat class action status at the outset unless the conflict is apparent,

imminent, and on an issue at the very heart of the suit."); *General Tel. Co. v. Falcon,* 457 U.S.

147(1982), ("[a]dequacy of representation tends to be assured if the representative's individual interests are the same or similar to other class members."). To the extent his interests may diverge from other Subscribers with respect to his request for declaratory and injunctive relief, the issue has been properly addressed by the formation of a proposed Sub-Class of Subscribers who may have engaged in RMT in order to maintain their use and enjoyment of *World of Warcraft®* in view of IGE U.S.'s interference with the integrity of the virtual world.

Moreover, proof of the common questions of law and fact identified above, and the typicality of Mr. Hernandez's claims, establish his individual interest in the outcome of this litigation and the coincidence of that interest with the rest of the Class. Where the same evidence would be proffered by the plaintiff and members of the Class as to all of the fundamental liability issues, the plaintiff's interests are fully aligned with those of the Class he seeks to represent.

b.     <u>Class Counsel Is Experienced.</u>

The Plaintiff is represented by experienced trial counsel who are thoroughly familiar with complex consumer and class litigation. Mr. Hernandez has retained counsel with considerable trial experience and experience in handling complex commercial and consumer class action ligation. As such, this Court can conclude that class counsel satisfies the adequacy requirement.

**B.     The Class is Properly Certified Under Rule 23(b)(1) or Rule 23(b)(2).**

The requirements of Rule 23(a) being satisfied, the Court should finally consider whether the case can be certified under any one of the three prongs of Rule 23(b). Although this case also satisfies the requirements of Rule 23(b)(3), the cases recognize that it is preferable to certify under Rule 23(b)(1) or Rule 23(b)(2) because of the superior *res judicata* effects of the litigation as to all members of the Class. *See, e.g., Elliott v. Weinberger,* 564 F.2d 1219, 1229 n.14 (9th

18

Cir. 1977), *aff'd in part, rev'd in part on other grounds, sub nom. Califano v. Yamasaki,* 442 U.S. 682 (1979); *Yslava,* 854 F. Supp. at 713; *Stoetzner v. U.S. Steel Corp.,* 897 F.2d 115, 119 (3d Cir. 1990) (*citing Wetzel v. Liberty Mutual Ins. Co.,* 508 F.2d 239, 253 (3d Cir.), *cert denied,* 421 U.S. 1011 (1975)); *Specialty Cabinets and Fixtures, Inc. v. American Equitable Life Insurance Co.,* 140 F.R.D. 474, 477 (S.D. Ga. 1991). Although, in the alternative, the case also is appropriate for class treatment under Rule 23(b)(3), the decisions establish that it is equally permissible to certify the case under Rule 23(b)(1)(A), 23(b)(1)(B), and 23(b)(2).

> **1.    This Case Satisfies the Requirements of Rule 23(b)(1)(A) and (b)(1)(B).**

Rule 23(b)(1) authorizes class treatment where individual actions by class members would create a risk of:

> (A)    inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

> (B)    adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

Fed. R. Civ. P.23 (b)(1).

Given that Mr. Hernandez alleges a common course of conduct resulting in identical effects on all Class members and seeks injunctive relief directed at the Defendant's conduct as it relates to, *inter alia,* violations of the TOU and EULA and the manner in which IGE U.S. markets and sells *World of Warcraft*® gold, the cessation of this conduct could not possibly be

effectuated if injunctive relief were to be granted by some courts and denied by others. As such, certification under Rule 23(b)(1)(A) is proper.

For these same reasons, adjudication of even one Class member's claim may be dispositive of those not parties to the litigation. For example, a court's determination of whether IGE U.S.'s conduct violated FDUPTA could act as collateral estoppel with respect to those claims that may be brought in other cases. Thus, certification under Rule 23(b)(1) is appropriate.

### 2.    The Case Satisfies the Requirements of Rule 23(b)(2).

It is helpful once again to turn to Professor Newberg's explanation of the requirements under Rule 23(b)(2) of the Federal Rules of Civil Procedure:

> Subdivision (b)(2) sets forth two basic requirements for the maintenance of class actions thereunder. First, the party opposing the class must have acted or refused to act or failed to perform a legal duty, on grounds generally applicable to all class members....The second requirement for Rule 23(b)(2) classes is that "final relief of an injunctive nature or corresponding declaratory nature, setting the legality of the behavior with respect to the class as a whole [must be] appropriate.

NEWBERG § 4.11 (*quoting* Rules Advisory Committee Notes to 1966 Amendments to Rule 23, 39 F.R.D. 69, 102 (1966)(emphasis added)); *see also Baby Neal v. Casey,* 43 F.3d 48, 59 (3d Cir. 1994) (Rule 23(b)(2) "as 'designed specifically for civil rights cases seeking broad declaratory or injunctive relief for a numerous and often unascertainable or amorphous class of persons.'"). The key to certification under Rule 23(b)(2) is that the relief sought by the named plaintiff should benefit the entire class. *See Walters v. Reno*, 145, F.3d 1032, 1047 (9th Cir. 1998).

In this case, IGE U.S.'s misconduct necessarily affected all Class members. As discussed above, Mr. Hernandez alleges a common course of conduct involving the sale of *World of Warcraft*® gold in violation of the TOU and EULA that affected Class members in the identical

way - the Defendant's conduct interfered with the use and enjoyment of the *World of Warcraft*®
virtual world and resulted in gold being inflated to a level higher than it otherwise would have
been absent the scheme and conspiracy.  A determination that IGE U.S. violated the Florida
consumer fraud laws, and is liable to Mr. Hernandez and the Class under theories of common
law fraud, civil conspiracy, and unjust enrichment, among others, would necessarily also
constitute a determination that it is liable to all Class members and that the same relief should be
available to all of them.  Further, the fact that it may later be proven that some Class members
have not been injured does not bar certification under Rule 23(b)(2).  "All the class members
need not be aggrieved by or desire to challenge the defendant's conduct in order for some of
them to seek relief under Rule 23(b)(2)." *Walters,* 145 F.3d at 1047 (*quoting* 7A CHARLES
ALAN WRIGHT, et. al., *FEDERAL PRACTICE AND PROCEDURE* § 1775 (1986)).

        In addition, Mr. Hernandez's request for monetary relief is an insufficient basis for
refusing to certify a class under Rule 23(b)(2).  *See, e.g., Probe v. State Teachers' Ret. Sys.,* 780
F.2d 776, 780 (9th Cir. 1986)("Class actions certified under Rule 23(b)(2) are not limited to
actions requesting only injunctive or declaratory relief, but may include cases that also seek
monetary damages.").  The determining factor is whether the monetary damage sought is
incidental to the injunctive or declaratory relief.  *Id.*  That is clearly the situation in the case at
bar.  Under these circumstances, it is reasonable to conclude that the objective of this litigation is
to obtain a court order to enjoin IGE U.S.'s collusive conduct, and that the monetary relief
sought to compensate the Class for past losses is incidental.  *See, e.g., In re Visa
Check/Mastermoney Antitrust Litig.,* 192 F.R.D. 68, 88 (E.D.N.Y. 2000), *aff'd.* 280 F.3d 124 (2d
Cir. 2001)(even in light of plaintiffs' seeking large damages award, "damage claim will not

defeat maintenance of a class action under Rule 23(b)(2) when the requested injunctive relief is a significant component of the overall relief which plaintiffs seek"); *Bradford v. AGCO Corp.,* 187 F.R.D. 600, 605 (W.D. Mo. 1999)("Refusing to certify a Rule 23(b)(2) class action based on a request for monetary relief [would] defeat the possibility of ever maintaining an injunctive class action."); *In re NASDAQ Market-Makers Antitrust Litig.,*169 F.R.D. 493, 517 (S.D.N.Y. 1996) ("'more recent trends in Rule 23(b)(2) utilization appear to favor a broader application of equitable relief certification' even where damages also are sought"); *Morgan v. Laborers Pension Trust Fund,* 81 F.R.D. 669 691 (N.D. Cal. 1979)(holding that where monetary relief sought is "integrally related to and would directly flow from the injunctive or declaratory relief sought," courts are not precluded from certifying class under Rule 23(b)(2))(*quoting Souza v. Scalone,* 64 F.R.D. 654, 658 (N.D. Cal. 1974)).

The *NASDAQ* case provides a good example of a conspiracy class action case where injunctive and monetary relief were deemed appropriate. *NASDAQ* was an antitrust case alleging a conspiracy to fix the spread between the price at which a market-maker was willing to buy a security and the price at which a market-maker was willing to sell the security. In that case, the court held that, despite the prayer for treble damage, plaintiffs' demand for injunctive relief – seeking to stop Defendant' continuing conspiracy to widen these spreads – was "an important aspect of the overall relief sought." *In re NASDAQ,* 169 F.R.D. 516. Certification under Rule 23(b)(2) was therefore appropriate. "[U]nless enjoined and made subject to the appropriate equitable relief, Defendant's alleged conspiracy will continue to inflate spreads for the benefit of the Defendant and to the detriment of the Class." *Id.* Here too, if the Defendant is not enjoined

by this Court, it will continue to violate the TOU and EULA to the detriment of the Plaintiff and the Class.

### 3.    The Case Also Satisfies the Requirements of Rule 23(b)(3).

It is not necessary to determine whether the case also satisfies the requirements of Rule 23(b)(3) , because it should be certified under the provisions discussed above.  However, in the event that this Court declines to certify this action under Rule 23(b)(1) or 23(b)(2), the case would nevertheless satisfy Rule 23(b)(3)'s requirements that a class action be "superior" and that the common questions "predominate over any questions affecting only individual members." *See* Fed.R.Civ.P. 23(b)(3).

Florida courts have held, in keeping with their favorable use of the class action device, that the requirements under Rule 23 (b)(3) "should be liberally construed." *Walco Investments, Inc. v. Thenen*, 168 F.R.D. 315, 323 (S.D.Fla., 1996).  These requirements are satisfied in this case.

### a.    Common Questions of Law and Fact Predominate.

Common questions predominate over individual issues when the common issues "present a significant aspect of the case." *Hanlon,* 150 F.3d at 1022.  As was discussed above with respect to commonality and typicality, questions of law and fact are common to the Class, and they predominate over individual matters.

Mr. Hernandez's claim that the IGE U.S. engaged in a common, fraudulent scheme and conspiracy to violate the *World of Warcraft*® TOU and EULA involved a central predominating question: Did IGE U.S. engage in a common, coordinated scheme to market and sell *World of Warcraft*® gold in violation of the TOU and EULA, which violations caused the integrity of the

virtual world to be affected to the detriment of Mr. Hernandez and the Class?  The affirmative answer to this question would be establish liability and the fact of damage for the entire Class. Accordingly, this case should be certified as a class action to permit Mr. Hernandez to litigate this common, predominant question in one unified proceeding.

As noted previously, all issues need not be identical among all members of the Class, and individual questions of damage do not preclude class certification.[11]  Common questions do not have to be dispositive of the entire action; all that is required is that common questions predominate.[12]

In this case, a consumer fraud case, all Class members' claims arise from "a common nucleus of operative facts," and the same alleged course of conduct, *i.e.* IGE U.S.'s fraudulent scheme and conspiracy to violate the TOU and EULA through its sale of *World of Warcraft*® gold, which can be determined without reference to the individual circumstances of any Class member.[13]  Moreover, since the nature of Mr. Hernandez's claims and the claims of the Class

---

[11]*See Sterling v. Velsicol Chemical Cor.,* 855 F.2d 1188, 1197 (6th Cir. 1988)("The mere fact that questions peculiar to each individual member of the class remain after the common questions of Defendant's liability have been resolved does not dictate the conclusion that a class action is impermissible,"); *Gold Strike Stamp Co., v. Christensen,* 436, F.2d 791, 796 (10th Cir. 1970) ("[W]here the question of basic liability can be established readily by common issues, then it is apparent that the case is appropriate for class action.")

[12] *Blackie v. Barrack,* 524 F.2d 891, 902 (9th Cir. 1975)(holding that common interest of class in determining whether Defendant's course of conduct was actionable predominated despite fact that class members were allegedly defrauded over period of time by similar, but different misrepresentations.); *Lerch v. Citizens First Bancorp, Inc.,* 144 F.R.D. 247, 252 (D.N.J. 1992)(finding predominance requirement satisfied where Defendant's challenged activity was common course of conduct); *Zinberg v. Washington Bancorp, Inc,.* 138 F.RD. 397, 410 (D.N.J. 1990)("Where all class members are united in their desire to establish the Defendant' complicity and liability, individual issues, if they exist, are secondary."); *In re Western Union Sec. Litig.,* 120 F.R.D. 629, 637 (D.N.J. 1988).

[13] *See also re Prudential Ins. Co. Of Am. Sales Practice Litig.,* 962 F.Supp.450, 511-12 (D.N.J. 1997)(finding predominance requirement satisfied where Defendant's challenged activity was

involve exclusively economic injury, "it would be folly to force each [consumer] to prove the nucleus of the alleged fraud again and again." *In re American Continental Cor./Lincoln Savings and Loan Sec. Litig.,* 140 F.R.D. 425, 431 (D. Ariz. 1992).

The courts of this Circuit have found the predominance factor satisfied in numerous consumer fraud cases. *See, e.g., Miles v. America Online, Inc.,* 202 F.R.D. 297 (M.D.Fla., 2001)*; Veal v. Crown Auto Dealerships, Inc.*, 236 F.R.D. 572 (M.D.Fla., 2006); *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718 (11th Circuit, 1987).

> b.    The Class Action Device is Superior.

Rule 23(b)(3) provides four factors for consideration.  In considering these factors, the Court should  keep in mind that efficiency is the primary focus in determining whether a class action is the superior method for resolving the controversy presented.  *Eovaldi v. First Nat'l Bank,* 57 F.R.D. 545 (N.D. Ill. 1972); *Lerwill v. Inflight Motion Pictures, Inc.* 582 F.2d 507, 512 (9th Cir. 1978)(finding sound reasons why class action suit was superior: "Numerous individual actions would be expensive and time-consuming and would create the danger of conflicting decisions as to persons similarly situated.").  In light of these efficiency considerations, as the discussion below demonstrates, the proposed Class satisfies each of these factors.

> i.    *Individual Class Members Do Not Have a Significant Interest in Controlling the Prosecution of Separate Actions.*

---

common course of conduct, despite existence of individual issues; *Morris v. Transought Fin. Corp.,* 175 F.R.D. 694, 701 (M.D. ala. 1997)("This is a consumer case arising out of allegedly unlawful business practices.  In consumer cases...question of whether the Defendant engaged in an improper cause of conduct typically will be the same for all class members. As a result, common questions will predominate."); *Seidman v. American Mobile Sys.,* 157 F.R.D. 354, 366 (E.D. Pa. 1994)(finding Plaintiffs' allegations of Defendant's single, ongoing course of fraudulent behavior satisfied commonality and predominance requirements).

Individual Class members cannot be said to have a significant interest in controlling the prosecution of separate actions, since there are no other actions known to be pending against IGE U.S. for its conduct alleged in this case.  Indeed, fairness to the Class demands that they be given the opportunity to further their similar interests as a unified Class in this case, and to equalize their ability to litigate this case with that of IGE U.S., a substantial corporate defendant.  Wright & Millers' treatise on federal practice and procedure, highlighted the superiority of class actions in consumer fraud cases as follows:

> "Individual actions also may be an inferior alternative to class actions when the economics of the situation or other practical considerations make it impossible for the aggrieved members to vindicate their rights by separate actions. Thus a group composed of consumers or small investors typically will be unable to pursue their claims on an individual basis because the cost of doing so exceeds any recovery they might secure.  When this is the case it seems appropriate to conclude that the class action 'is superior to other available methods for the fair and efficient adjudication of the controversy.'  Of course, it must be recognized that the effect of making Rule 23(b)(3) available is to enable recourse to the courts in situations in which it otherwise would be unavailable. This is not troublesome when the action is predicated on a statutory mandate that        is designed to promote the private rectification of conduct thought undesirable or to effectuate some other expression of public policy."

7A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, *FEDERAL PRACTICE AND PROCEDURE* § 1775.[14]

---

[14]    With respect to "small claims" class actions in general, the United States Supreme Court has stated:

> The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.  A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.

*Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 617(1997)(*quoting Mace v. Van Ru Credit Corp.,* 109 F.3d 338, 344 (7th Cir. 1997)).

The substantial advantages to the parties and the Court of class certification in this case are undeniable. Yet, the Defendant surely will oppose certification, as it has opposed from the start every effort of the Plaintiff to expeditiously litigate this case. The instant Motion at last presents this Court with the opportunity to effectively manage this case, while, at the same time, effectively responding to the Defendant's cries for judicial economy.

ii.    *The Extent and Nature of Other Litigation Should Not Impede Certification of This Class.*

There is no other litigation involving the claims asserted in this case against the Defendant. Accordingly, this factor should not impede certification of a Class in this case.

iii.    *The Litigation Should Be Concentrated in This Forum.*

The Complaint is limited to allegations involving the violations of the Florida consumer fraud laws, Florida common law and certain federal claims. In light of Florida's strong interest in protecting its consumers through FDUPTA and otherwise, allowing the instant case to be brought here is vital. Because IGE U.S. is domiciled here, venue is proper in this District.

iv.    *The Proposed Class is Manageable.*

Plaintiff submits that the trial of this action, if certified, would be manageable. The application of the consumer fraud laws of Florida to the Class would be no different for one plaintiff, Antonio Hernandez - than it would be for millions of *World of Warcraft*® Subscribers situated across the country. The common, fraudulent scheme and conspiracy of the Defendant is the same as to all members of the Class. Mr. Hernandez has retained experienced trial counsel to ensue that this case is tried successfully to verdict, and it will be.

There are no difficulties likely to be encountered in litigating the claims or implementing relief. The potentiality of a large number of class members should not prevent the Court from

granting class certification. *See In re Domestic Air Transp. Antitrust Litig.,* 137 F.R.D. 677, 693 (N.D. Ga. 1991)(certifying class of domestic airline purchasers that plaintiff estimated at 12.5 million and defendant claimed could "involve over 400 million transaction"). A court "cannot deny certification.... merely because the number of plaintiffs makes the proceeding complex or difficult." *Id.* (*citing* 3 *NEWBERG*, § 18.37); *see also Zachary v. Chase Manhattan Bank, N. A.,* 52 F.R.D. 532 (S.D.N.Y. 1971)(class of over one million persons not unmanageable). Indeed, "difficulties in management are of significance only if they make the class action a less 'fair and efficient' method of adjudication than other available techniques." *Domestic Air Trans.,* 137 F.R.D. at 693 (citation omitted). Here, "if this case is not certified as a class action, a majority of Class members would likely abandon their claims: even if proof of Defendant's liability could be established. *Id* at 694. Consequently, class representation is the only way to afford relief to those whose claims are too small to permit them to bring individual suits. To deny class certification would be to "close[] the door of justice to small claimants. This is what we think the class suit practice was to prevent". *In re Copley Pharm., Inc.,* 161 F.R.D. 456, 466 (D. Wyo. 1995)(quoting *Weeks v. Bareco Oil Co.,* 125 F.2d 84, 90 (7th Cir. 1941). *See Sala v. National R.R. Passenger Corp.,* 120 F.R.D. 494, 500 (E.D. Pa. 1988). Under Florida law, and particularly the protections afford by the Florida consumer fraud laws, class certification should be deemed required here. Thus, the class action device is the superior method to litigate these claims.

IV.     **CONCLUSION**

For the foregoing reasons, Plaintiff Antonio Hernandez, by and through his counsel, respectfully submits that this action should be maintained as a class action.

Respectfully submitted this 19th day of May, 2008,

s/ Donald E. Haviland, Jr.
DONALD E. HAVILAND, JR., ESQUIRE
Pennsylvania Bar No.: 66615
Email: haviland@havilandlaw.com
MICHAEL J. LORUSSO, ESQUIRE
Pennsylvania Bar No.: 203684
Email: lorusso@havilandlaw.com
The Haviland Law Firm, LLC
740 S. Third Street, Third Floor
Philadelphia, PA 19147
Telephone: (215) 609-4661
Facsimile: (215) 392-4400

C. RICHARD NEWSOME, ESQUIRE
Florida Bar No.: 827258
Email: newsome@newsomelaw.com
ANDREW F. KNOPF, ESQUIRE
Florida Bar No.: 658871
Email: knopf@newsomelaw.com
Newsome Law Firm
20 N. Orange Ave., Suite 800
Orlando, Florida 32801
Telephone: (407) 648-5977
Facsimile: (407) 648-5282

CO-LEAD COUNSEL FOR THE PLAINTIFF,
ANTONIO HERNANDEZ, AND THE CLASS

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed on this <u>19</u><sup>th</sup>

day of May, 2008, with the Clerk of Court using the CM/ECF system which will send notice of

electronic filing to:

> James M. Miller
> Akerman Senterfitt
> 1 SE 3rd Avenue, Floor 28
> Miami, FL 33131-1715

<u>s/ Donald E. Haviland, Jr.</u>
Donald E. Haviland, Jr., Esquire
Pennsylvania Bar No.: 66615
The Haviland Law Firm, LLC
